**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HAITIAN BRIDGE ALLIANCE, et al., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) No. 1:21-cv-03317-EGS |
| JOSEPH R. BIDEN, PRESIDENT OF THE | ) |
| UNITED STATES, *in his official capacity* et al., | ) |
| | ) |
| *Defendants*. | ) |

**JOINT STATUS REPORT**

On March 4, 2022, this Court ordered both parties to submit a joint status report addressing whether this suit is related to *Huisha-Huisha v. Gaynor*, No. 21-cv-100, and *P.J.E.S. v. Wolf*, No. 20-cv-2245. Under Local Civil Rule 40.5, civil cases are "deemed related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction or (iv) involve the validity or infringement of the same patent."

The parties' positions are set out separately below.

**PLAINTIFFS' POSITION**

Relation between this suit and *Huisha-Huisha v. Gaynor*, No. 21-cv-100, and *P.J.E.S. v. Wolf*, No. 20-cv-2245, is warranted under Local Civil Rule 40.5 and this District's precedent. Each of these three cases challenges on a classwide basis the same Title 42 Process: the unprecedented use of public health powers to justify the immediate expulsion of asylum seekers

1

without any of the procedural protections guaranteed by Congress. [1]  Each case concerns whether

class members were afforded the safeguards expressly provided by the Immigration and

Nationality Act (INA) before class members were expelled under the Title 42 Process.  Each

seeks the same relief of enjoining the continued application of the Title 42 Process against class

members.  And each case will require this Court to assess the same administrative record

underlying the Title 42 Process.

Judicial economy would be served by relating this lawsuit to *Huisha-Huisha* and *P.J.E.S.*

under Local Civil Rule 40.5 for two key reasons.  First, all three cases are class actions that arise

out of the "same event or transaction," Local Civ. R. 40.5(a)(3)(iii): the agency regulations,

orders, and guidance that establish and implement the Title 42 Process.  Second, all three cases

involve multiple "common issues of fact," Local Civ. R. 40.5(a)(3)(ii), including the

development of, rationale for, and continued implementation of the Title 42 Process and whether

class members had access to non-refoulement safeguards and procedures under the INA before

they were expelled through the Title 42 Process.  Each case also seeks the same relief—an

injunction of the Title 42 Process—on behalf of classes of affected individuals, and each case

requires an assessment of the same administrative record underlying the creation and

implementation of the Title 42 Process.  Although cases are generally randomly assigned,

relation here would serve the interests of judicial economy, and these interests "outweigh the

fundamental interests served by the random assignment rule."  *Doe v. Von Eschenbach*, No. 06-

---

[1]  *See* Complaint, *Haitian Bridge Alliance v. Biden*, No. 1:21-cv-03317, ¶¶ 7, 52-58 (D.D.C. Dec. 20, 2021), ECF No. 1 (hereinafter "*HBA* Complaint"); Second Amended Complaint, *Huisha-Huisha*, No. 21-cv-100, ¶ 3 (D.D.C. Feb. 14, 2022), ECF No. 131 (hereinafter "*Huisha-Huisha* SAC"); Complaint, *P.J.E.S.*, No. 20-cv-2245, ¶ 2 (D.D.C. Aug. 14, 2020), ECF No.1 (hereinafter "*P.J.E.S.* Complaint").

CV-2131 (EGS), 2007 WL 1655881, at *1 (D.D.C. June 7, 2007); *see also Lucas v. Barreto*, No. 04-1262 (EGS), 2005 WL 607923, at *3 (D.D.C. Mar. 15, 2005).

> **Same Event or Transaction.**  This case, *Huisha-Huisha*, and *P.J.E.S.* fundamentally "grow out of the same event or transaction." Local Civ. R. 40.5(a)(3)(iii).  Each of these three cases challenges the same agency action: the Title 42 Process.  *See HBA* Complaint, ¶¶ 55-57, 318-81; *P.J.E.S.* Complaint, ¶¶ 43-36, 114-46; *Huisha-Huisha* Complaint, ¶¶ 30-60, 74-102; *see also Huisha-Huisha* SAC, ¶¶ 33-67, 81-111.  All three cases assert that the Title 42 Process is unauthorized by the public health laws that Defendants have invoked, contrary to the INA and the protections Congress expressly established for asylum seekers, and violative of the Administrative Procedure Act ("APA").  Each case also challenges the regulations, orders, and guidance that created and implemented the Title 42 Process.  Although the instant lawsuit also challenges additional actions by Defendants that Plaintiffs allege specifically targeted Haitian and presumed Haitian nationals, a large part of the claims of the plaintiffs and class members of each case "stem from a unitary course of conduct—expulsion of unaccompanied non-citizen [individuals] from the United States under the Title 42 Process—and are based on the same legal theories."  *P.J.E.S.*, 2020 WL 6670508, at *24, *report & recommendation adopted, id.* at *7; *see also Huisha-Huisha v. Mayorkas*, No. 21-cv-100, 2021 WL 4206688, at *10 (D.D.C. Sept. 16, 2021) (noting that plaintiffs' injuries "derive from a unitary course of conduct by a single system" as the "proposed class face[s] the same injury: the threat of expulsion pursuant to the Title 42 Process").

Precedent from courts in this District establishes that similar challenges to the same agency regulation, order, or guidance are related under Local Civil Rule 40.5(a)(3)(iii).  In *Autumn Journey Hospice v. Sebelius*, for example, the Court found that six separate challenges to

the same Department of Health and Human Services regulations were related, even though each challenge was brought by a different hospice care provider. 753 F. Supp. 2d 135, 140 (D.D.C. 2010). Because each of the challenges presented the same "issues for resolution: whether the regulation impermissibly conflicts with the underlying statute and, if so, what relief should be afforded the plaintiff hospices," the Court held that the cases arose "out of a common event or transaction—namely, the promulgation of the hospice cap reimbursement regulation and the calculation of the plaintiff hospices' cap repayment obligations." *Id.* Accordingly, the Court determined that the cases were related and "judicial economy would be served by having these matters resolved by the same judge." *Id.*; *see also Singh v. McConville*, 187 F. Supp. 3d 152, 155-56 (D.D.C. 2016) (finding relation between two cases where plaintiffs challenged the same Department of Defense and Army regulations governing requests for religious accommodations).

The cases Defendants cite do not hold to the contrary. In *Natural Resources Defense Council, Inc. v. Oliver*, the two cases under consideration for relation challenged *different* agency orders. *See* No. 20-cv-1150, (D.D.C. July 27, 2020), ECF No. 16 (finding the cases not related because the second case challenged a "new decision, which relied on new evidence and new analysis" not at issue in the earlier case). The original case in *Oliver*, moreover, had already had final judgment entered and was no longer pending on the merits—a requirement for relation under Local Civil Rule 40.5(a)(3) that is clearly met here.[2] Similarly, *Keepseagle v. Glickman* rejected relation of a case alleging discrimination against Native Americans to an earlier case alleging discrimination against African Americans because the earlier filed case was no longer

---

[2] Indeed, the language on which Defendants rely is part of the Court's analysis of potential relation under Local Civil Rule 40.5(a)(4), allowing relation for a narrow set of cases that are no longer pending. *See Oliver*, No. 20-cv-1150 (D.D.C. July 27, 2020), ECF No. 16 (order denying relation). That rule is not at issue here.

pending on the merits.  194 F.R.D. 1, 1-3 (D.D.C. 2000).  But even if the earlier filed case had

been pending on the merits, the Court found the two cases had "no common events or

transactions out of which the cases could grow" because the alleged discrimination "occurred as

the result of the acts of county commissions in entirely different regions of the country" and

"none of these acts would be at issue in both cases."  *Id.* at 3.  The dicta in *Oliver* and

*Keepseagle*, examining challenges to *different* agency actions, should not control here.

   The fact that this lawsuit asserts unique claims challenging the Haitian Deterrence Policy

in addition to challenging the Title 42 Process is not an impediment to relation.  *P.J.E.S.*, for

example, asserts a claim unique to unaccompanied children, based on the Trafficking Victims

Protection Reauthorization Act, which *Huisha-Huisha* does not.  *P.J.E.S.* Complaint, ¶¶ 108-13.

In addition, the example of the related and partially consolidated cases of *Gomez v. Trump*, No.

20-cv-1419; *Mohammed v. Pompeo*, No. 20-cv-1856; *Panda v. Wolf*, No. 20-cv-1907; *Aker v.

Trump*, No. 20-cv-1926; *Fonjong v. Trump*, 20-cv-2128; and *Kennedy v. Trump*, No. 20-cv-

2639, is instructive.  Although these six cases asserted a wide variety of different statutory and

constitutional claims on behalf of different classes and groups of individual plaintiffs,[3] they all

asserted APA claims challenging different provisions of Presidential Proclamation 10052,

"Suspension of Entry of Immigrants and Nonimmigrants Who Present a Risk to the United States

---

[3] For example, *Mohammed*, *Aker*, *Fonjong*, and *Kennedy* brought claims only on behalf of
certain winners of the diversity visa lottery in Fiscal Year 2020 (FY2020).  *Gomez* brought
classwide claims on behalf of certain winners of the FY2020 diversity visa lottery, but also on
behalf of individuals seeking to sponsor family members for immigrant visas, as well as
corporations seeking to sponsor individuals for employment-based non-immigrant visas.  *Panda*
brought claims on behalf of individuals with approved H-1B non-immigrant petitions seeking
adjudication of their DS-160 visa applications.  *Mohammed*, *Aker*, *Fonjong*, *Kennedy*, and
*Gomez* shared common facts and claims relating to diversity visa lottery winners and the
applicable provisions of Proclamation 10052.  *Gomez* and *Panda* shared common facts and
claims relating to H-1B visa applicants and the applicable provisions of Proclamation 10052.

Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak," 85 Fed. Reg. 38263 (June 22, 2020).  Based on these common APA claims challenging components of the same executive action, the Court related these cases, finding that they "involve common issues of fact" and "grow out of the same event or transaction" under Local Civil Rule 40.5(a), and further partially consolidated them, finding that they "involve a common question of law or fact" under Fed. R. Civ. P. 42(a).  *See Gomez*, No. 20-cv-1419 (D.D.C. Aug. 7, 2020) (minute order consolidating *Gomez*, *Mohammed*, *Aker*, and *Fonjong*); *Gomez*, No. 20-cv-1419 (D.D.C. Aug. 13, 2020) (minute order further consolidating *Panda* with *Gomez* and the four other already-consolidated cases); *Kennedy*, No. 20-cv-2639 (D.D.C. Sept. 18, 2020) (docket entry assigning *Kennedy* to the same judge considering *Gomez* and the other related and partially consolidated cases).  The fact that some of these six different cases also raised additional, non-overlapping claims did not undermine the judicial economy afforded by relation.

Moreover, Plaintiffs' claims relating to the Del Rio CBP Encampment and how the named Plaintiffs and putative class members were treated while they were processed and expelled under the Title 42 Process also arise out of the enforcement of the Title 42 Process, which was created by the same agency regulations and guidance challenged in *Huisha-Huisha* and *P.J.E.S.*  Accordingly, all three cases "grow out of" the establishment of the Title 42 Process. Judicial economy favors relation, especially given that this Court has already closely examined the Title 42 Process, including the various regulations, orders, and guidance establishing that process, and has already issued reasoned opinions regarding its lawfulness as applied to unaccompanied children, *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492 (D.D.C. 2020), and families with minor children, *Huisha-Huisha*, 2021 WL 4206688.

***Common Issues of Fact.*** Key issues of fact common to this case, *Huisha-Huisha*, and *P.J.E.S.* also support relation in the interests of judicial economy. Here, all three cases are class actions that raise common questions as to the development of, rationale for, and continued implementation of the Title 42 Process and whether class members were granted the non-refoulement safeguards and processes expressly provided for by the INA before they were subjected to the Title 42 Process. All three cases seek the same relief in the form of an injunction against the application of the Title 42 Process to affected class members, and accordingly, all three cases require the Court to consider the same administrative record underlying the establishment and implementation of the Title 42 Process. In fact, the very violations at issue in this lawsuit—the unlawful expulsion of Haitians at the Del Rio CBP Encampment and the increase in expulsion flights to Haiti—appear to have been prompted by this Court's preliminary injunction decision and subsequent temporary stay in *Huisha-Huisha*. *See HBA* Complaint, ¶¶ 122-25. As a result, this case shares a "substantial nexus with the central allegations" of *Huisha-Huisha* and *P.J.E.S* that weighs in favor of relation. *See Tripp v. Exec. Office of the President*, 194 F.R.D. 340, 343 (D.D.C. 2000); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 2018 WL 11241286, at *3 (D.D.C. Nov. 16, 2018) (Brown-Jackson, J.) (describing how court ordered "cases challenging different aspects . . . [of] three executive orders consolidated because, among other things, the claims in each case ar[ose] from a common nexus of fact").

This case, *Huisha-Huisha*, and *P.J.E.S.* raise common factual questions because all three cases fundamentally revolve around the same central allegations: the process by which Defendants adopted and implemented the Title 42 Process, and the denial of plaintiffs' rights under the INA when subjected to the Title 42 Process. All three cases also seek an injunction of

the Title 42 Process as applied to the named plaintiffs and class members of each case.  *Huisha-Huisha* SAC, ¶¶ c-e (prayer); *P.J.E.S.*, ¶¶ c-e (prayer).  Accordingly, like the related cases in *Singh*, which challenged the same agency regulations on the same grounds, this case, *Huisha-Huisha*, and *P.J.E.S.* require the Court to make the same "factual determinations related to the defendants' regulations and policies, and their administration of those regulations and policies, which are common to [the] cases."  *Singh*, 187 F. Supp. 3d at 157; *see also Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157 (D.D.C. 2002) (finding relation when, among other things, the two cases sought the same relief based on an alleged violation of the same statute and defendants' implementation of the statute's requirements).  The common factual questions in these cases are underscored by today's order from the D.C. Circuit Court of Appeals remanding *Huisha-Huisha* for "ultimate resolution of the merits, including the Plaintiffs' claim that the § 265 Order is arbitrary and capricious." *Huisha-Huisha v. Mayorkas*, No. 21-5200 (D.C. Cir. Mar. 4, 2022) (order affirming preliminary injunction in part).

    Here, when assessing the central allegations of the three suits, the court will necessarily have to delve into the same set of regulations, orders, and guidance that underlie the Title 42 Process—a "uniform policy or practice that affects all class members" of the classes alleged in all three cases.  *P.J.E.S.*, 502 F. Supp. 3d at 509.  The court will also have to make the same factual determinations about how Defendants promulgated and implemented the Title 42 Process and whether these actions complied with the requirements of the APA.  *See* 5 U.S.C. §§ 706(1), 706(2)(A).  This factual inquiry includes an assessment of the factors Defendants relied on, whether the Defendants provided a reasoned explanation for the policy, whether Defendants relied on improper considerations and factors Congress did not intend, and whether Defendants failed to consider important aspects of the policy.  *See* 5 U.S.C. § 706(2)(A); *Motor Vehicle*

*Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).[4]  The Court will also have to examine whether the Title 42 Process results in the unlawful withholding or unreasonable delay of agency action that would otherwise give the class members of all three cases the meaningful opportunity to seek asylum or to access the statutory protections provided by the INA.  5 U.S.C. § 706(1).  These inquiries are common across all three cases.  *See also Tripp*, 194 F.R.D. 340 (finding common issues of fact between two related cases by examining similarities across the central allegations, the reasons behind the alleged privacy violations, and the overlap in evidence of the government's allegedly unlawful conduct).

In addition, this case, *Huisha-Huisha*, and *P.J.E.S.* all ask the Court to make the same factual assessment as to whether the Defendants' creation, implementation, and enforcement of the Title 42 Process unlawfully deprives class members of the rights and protections that the INA expressly provides to individuals seeking asylum.  *See, e.g.*, *Huisha-Huisha*, No. 21-5200, slip op. at 21 (D.C. Cir. Mar. 4, 2022) ("Section 1158(a)(1) entitles aliens — even those who enter the country illegally — to apply for asylum before they are expelled. According to the Plaintiffs, the Executive violates § 1158(a)(1) when it expels aliens before allowing them an opportunity to apply for asylum. That argument deserves attention from the District Court when it considers the merits.")  This determination requires the court to inquire into the safeguards granted to asylum seekers under the INA and how the defendant agencies treat class members when applying the Title 42 Process to them.  Importantly, the rule for relatedness does not demand that the underlying facts of the individual plaintiffs' asylum claims in this case be the same as the plaintiffs' and class members' asylum claims in *Huisha-Huisha* and *P.J.E.S.*—and indeed, the

---

[4] *See also HBA* Complaint ¶¶ 341-54; *Huisha-Huisha* SAC ¶¶ 81-111; *P.J.E.S.* Complaint ¶¶ 108-46.

personal details of P.J.E.S.'s circumstances and journey to the United States played very little role in this Court's decision to grant a preliminary injunction in that case. *See generally P.J.E.S.*, 2020 WL 6770508. The instant lawsuit, *Huisha-Huisha*, and *P.J.E.S.* share extensive factual questions, including the assessment of identical administrative records relating to the Title 42 Process.

Defendants' reliance on *G.Y.J.P.* and Judge McFadden's recent order denying relation to *J.B.B.C.* is misplaced. *See G.Y.J.P. v. Wolf*, No. 1:20-cv-01511, 2020 WL 4192490 (D.D.C. July 21, 2020). While *G.Y.J.P.* focused on the different experiences of the individual plaintiffs in *G.Y.J.P.* and *J.B.B.C.*, the court did not address the overlap in the administrative records for those cases, nor whether that overlap required relation under Local Civil Rule 40.5(a)(3)(ii).[5] Moreover, the fact that this case, *Huisha-Huisha*, and *P.J.E.S.* all seek an injunction of the Title 42 Process on a classwide basis further distinguishes them from *G.Y.J.P.* and *J.B.B.C.* In holding that *G.Y.J.P.* and *J.B.B.C.* did not present common facts, despite raising the same legal issues, the Court reasoned that "the factfinder will need to evaluate the distinct facts of each case to determine whether the Defendants inappropriately applied the Title 42 Process to each Plaintiff." *G.Y.J.P.*, 2020 WL 4192490, at *2. Here, however, the particular facts of any individual's experience being subjected to the Title 42 Process have less import for the resolution of the class claims in any of the three cases challenging the Title 42 Process, because those claims "stem from a unitary course of conduct—expulsion of [individuals] from the United States under the Title 42 Process," *P.J.E.S.*, 502 F. Supp. 3d at 532, and challenge the

---

[5] Nor did *G.Y.J.P.* address whether challenging precisely the same agency action and the same agency documents satisfies the independent rule directing relation of cases that "grow out of the same event or transaction." Local Civil Rule 40.5(a)(3)(iii). Indeed, *G.Y.J.P.* contains no mention of *Autumn Journey* or its holding that such cases are related. 753 F. Supp. 2d at 140.

"lawfulness of the Title 42 Process, which is a uniform policy that applies to each Plaintiff and all members of the proposed class," *Huisha-Huisha*, 2021 WL 4206688, at *9. In addition, unlike the plaintiff in *G.Y.J.P.*, the named plaintiffs in this suit have all expressed an intent to return to the United States to seek asylum, at which point they would be subject to the Title 42 Process once again. The central facts at stake across all three cases thus remain the same: they all concern the process by which Defendants adopted and implemented the Title 42 Process and the denial of plaintiffs' rights under the INA when subjected to the Title 42 Process.

Finally, since all three cases request the same relief—an injunction of the Title 42 Process as to the proposed class in each case—all three cases require review of the same administrative record underlying the establishment and implementation of the Title 42 Process. This Court is already familiar with the various agency documents that establish the Title 42 Process challenged in each of the three cases, and the relation rule established by Local Civil Rule 40.5(a)(3)(ii) contemplates exactly the type of judicial efficiency accorded by the same judge in this District assessing the same administrative record for compliance with the APA.

Because all three cases arise out of the "same event or transaction" and involve "common issues of fact," relation between this suit and *Huisha-Huisha v. Gaynor*, No. 21-cv-100, and *P.J.E.S. v. Wolf*, No. 20-cv-2245, is warranted under Local Civil Rule 40.5 and would further the interests of judicial economy.

### DEFENDANTS' POSITION

Defendants object to the designation pursuant to Local Civil Rule 40.5(b)(2) of this case as related to either *Huisha-Huisha v. Gaynor*, Civ. A. No. 21-0100 (EGS) or *P.J.E.S. v. Wolf*, Civ. A. No. 20-2245 (EGS).

For the reasons set forth below, the Court should sustain Defendants' objection and, pursuant to Local Civil Rule 40.5(c)(1), transfer this action to the Calendar and Case Management Committee for reassignment.

**Background**

Plaintiffs are the Haitian Bridge Alliance, a "community-based nonprofit organization," and eleven Haitian citizens that crossed the border from Mexico into the United States in mid-September 2021, in the midst of the COVID-19 pandemic, allegedly to seek asylum. ECF No. 1 ("Compl.") ¶¶ 11, 15-22. The individual Plaintiffs include Mirard Joseph and his wife Madeline Prospere; Mayco Celon and his wife Veronique Cassonell; and seven other individuals proceeding under "Doe" pseudonyms. *Id*. ¶¶ 16-22. At present, all Plaintiffs are located outside of the United States, with five currently located in Mexico, three in Haiti, and three in Chile. *Id*.

Plaintiffs contend that prior to their expulsion from the United States they were subjected to "abusive treatment" in a U.S. Customs and Border Protection ("CBP") Encampment in Del Rio, Texas—treatment that they contend violated their rights under the Fifth Amendment (Equal Protection, Substantive Due Process, and Procedural Due Process). *Id*. ¶¶ 11, 283-340.

Plaintiffs also contend that they were denied the ability to seek asylum and access certain statutory protections for asylum seekers under the Immigration and Nationality Act as a consequence of an emergency public health order issued pursuant to regulations implementing a provision of the Public Health Service Act. As a consequence of the COVID-19 pandemic, in March 2020, then-Director of the Centers for Disease Control and Prevention ("CDC") Robert Redfield invoked his authority under Sections 362 and 365 of the Public Health Service Act, 42 U.S.C. §§ 265, 268 to temporarily prohibit the introduction of certain noncitizens who are without valid travel documents into the United States from Canada and Mexico [hereinafter the "Title 42

process"].  *Id*. ¶ 56.  The CDC Director determined that a suspension of the right to introduce such noncitizens is necessary "to 'protect' the public 'during the COVID-19 public health emergency.'" *Id*. (quoting 86 Fed. Reg. 42,828 (Aug. 5, 2021)).  If covered noncitizens without proper travel documents are encountered after crossing the border, CBP is authorized to determine if the noncitizens are subject to the Title 42 process, and if so, such noncitizens are expelled as quickly as possible.  *Id*. ¶ 57.  Plaintiffs allege that Defendants' issuance, administration, and application of the Title 42 process is not in accordance with law, in excess of statutory authority, and arbitrary and capricious, all in violation of the Administrative Procedure Act ("APA").  *Id*. ¶¶ 318-54. Finally, Plaintiffs allege that Defendants unlawfully withheld or unreasonably delayed their inspection of Haitian asylum seekers in Del Rio and provision of certain "procedural protections" regarding removal procedures under the INA and FARRA, also in violation of the APA.  *Id*. ¶¶ 355-66.  Plaintiffs purport to bring their claims on behalf of a class of similarly situated persons defined as "all Haitian, or presumed Haitian, individuals who (1) sought access to the U.S. asylum process in or around the CBP Encampment near the Del Rio Port of Entry between September 9 and 24, 2021, and (2) were denied access to the U.S. asylum process."  *Id*. ¶ 271.

## Argument

### I.    Random Assignment is the Default Rule

"The general rule governing all new cases filed in this courthouse is that they are to be randomly assigned."  *Tripp v. Exec. Office of President*, 196 F.R.D. 201, 202 (D.D.C. 2000).  The "fundamental rationale" of random assignment is "to ensure greater public confidence in the integrity of the judicial process."  *Id.*  Random case assignment "guarantees fair and equal distribution of cases to all judges, avoids public perception or appearance of favoritism in assignments, and reduces opportunities for judge-shopping."  *Id.*; *see also Natural Resources*

*Defense Council, Inc. v. Oliver*, Civ. A. No. 20-1150 (RDM), ECF No. 16 at 3 (D.D.C. July 27, 2020).

The "related-case" rule set forth in Local Civil Rule 40.5 stands as a limited *exception* to the general rule of random assignment of cases in the District Court. *Dale v. Exec. Office of the President*, 121 F. Supp. 2d 35, 37 (D.D.C. 2000) (quoting *Tripp*, 196 F.R.D. at 202)). New cases are deemed "related" under Local Civil Rule 40.5(a)(3) only when (1) "the earliest is still pending on the merits in the District Court" and (2) the cases either (i) "relate to common property," (ii) "involve common issues of fact," or (iii) "grow out of the same event or transaction." Local Civ. R. 40.5(a)(3). The plain language of the local rule makes clear that "[i]t is the factual, not the legal, similarities" that control the relatedness determination under Local Civil Rule 40.5(a)(3). *In re Tobacco/Gov'tl Health Care Costs Litig.*, 76 F. Supp. 2d 5, 9 n.5 (D.D.C. 1999).

As the party "seeking to avoid random assignment," Plaintiff "bears the burden of showing that the cases are related" under the local rule. *Autumn Journey Hospice v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010) (citation omitted). "The burden on the party claiming relation is heavy as random assignment of cases is essential to the public's confidence in an impartial judiciary." *Dakota Rural Action v. U.S. Dep't of Agric.*, Civ. A. No. 18-2852 (BAH), 2019 WL 1440134, at *1 (D.D.C. Apr. 1, 2019); *see also Oliver*, Civ. A. No. 20-1150, at 4 (moving party's burden is heavy to "prevent this narrow exception from undermining the essential purposes of random assignment"). Here, Plaintiffs seek to avoid the default rule and the judicial integrity policies underlying that rule. Nonetheless as explained below, Plaintiffs cannot satisfy the criteria for the limited exception to the rule of random case assignment.

## II.    Neither *Huisha-Huisha* Nor *P.J.E.S.* Contain Sufficient Common Issues of Fact to be Related to This Case Under Local Civil Rule 40.5(a)(3)

Plaintiffs cannot meet their substantial burden of showing that this case is related to either *Huisha-Huisha* or *P.J.E.S.*  According to Plaintiffs' Notice, this case "involves common issues of fact" and "grows out of the same event or transaction."  ECF No. 7.  A comparison of the three cases shows this is not correct.

*Huisha-Huisha* concerns a class of families subject to expulsion pursuant to Title 42. *Huisha-Huisha*, ECF No. 1, ¶ 4.  Named Plaintiff Huisha-Huisha is an indigenous woman who left her South American country allegedly as a result of a debt-related threat and crossed into the United States from Mexico in late December, 2020.  *See* Declaration of Nancy Gimena Huisha-Huisha, *Huisha-Huisha,* ECF No. 4-1 ¶¶ 1, 4, 9.[6]  A second family consists of Josiane Pereira-De Souza and her children: 16-year-old H.N.D.S., 14-year-old E.R.P.D.S., 11-year-old M.E.S.D., and 7-year-old H.T.D.S.D.S.  *Huisha-Huisha,* ECF No. 1, ¶ 15.  Ms. Pereira-De Souza crossed the border from Mexico in mid-December, 2020, after departing her South American country allegedly because members of the family had been subjected to various criminal incidents. *Huisha-Huisha*, ECF No. 4-2, Declaration of Josiane Pereira-De Souza ¶¶ 4-6.  Plaintiff Valeria Macancela Bermejo and her four-year-old child B.A.M.M. are the third family.  *Huisha-Huisha,* ECF No. 1, ¶ 16.  Ms. Bermejo crossed the border in 2021 from Mexico, after fleeing her South American country allegedly because of physical and sexual abuse.  *Huisha-Huisha,* ECF No. 4-3, Declaration of Valeria Macancela Bermejo ¶¶ 4, 6.  At the time of filing of the *Huisha-Huisha* complaint, they were all in the custody of Immigration and Customs Enforcement ("ICE") at the same family residential center after crossing the southern border without valid travel documents.

---

[6]    Because the declarations of the *Huisha-Huisha* Plaintiffs have been filed under seal, Defendants have used generalized language.  Defendants refer the Court to the cited paragraphs for the specific, distinct facts averred by the *Huisha-Huisha* Plaintiffs.

*P.J.E.S.* concerns a putative class of minors who were subject to expulsion pursuant to Title 42. Plaintiff in *P.J.E.S.* is a minor from Guatemala who entered the United States from Mexico in August 2020 unaccompanied by an adult. *P.J.E.S.*, ECF No. 1, ¶ 16. He was apprehended by CBP and detained in McAllen, Texas. *P.J.E.S.*, ECF No. 65 (Report and Recommendation) at 13.

In contrast, the putative class definition does not reference Title 42 explicitly and is focused instead on a certain population (Haitian migrants) crossing at a certain location (Del Rio) near a certain CBP "encampment" and at a certain time (between September 9 and 24, 2021) that were allegedly denied access to the asylum process and expelled. Compl. ¶ 271.

Admittedly, this case, *Huisha-Huisha*, and *P.J.E.S.* share some common issues of law, but the local rule quite plainly does not define cases with common legal issues as "related." A recent ruling in this District demonstrates this distinction persuasively. In *G.Y.J.P. v. Wolf*, Civ. A. No. 20-1511 (TNM), the Court denied a motion to designate that case as related to *J.B.B.C. v. Wolf*, Civ. A. No. 20-1509 (CJN). ECF No. 31 (July 21, 2020). In both cases, plaintiffs sought to challenge Defendants' use of Title 42 with regard to unaccompanied minors encountered at the southern border. Even though those cases shared a common litigation purpose, brought largely identical legal challenges, and were asserted against the same defendants, those similarities are "not enough to make the cases related." *Id*. at 3. The Court recognized that those cases were "factually distinct" and thus not related cases. *Id*. So too here. The facts of Plaintiffs' departures from their home countries, their apprehension at the border, the Government's alleged mistreatment of Plaintiffs at the Del Rio Encampment, the Government's assessment of Plaintiffs pursuant to Title 42, and their subsequent expulsion to Haiti are all distinct from the facts in *Huisha-Huisha* and *P.J.E.S.* For similar reasons, Plaintiffs cannot establish that this action and either *Huisha-Huisha* or *P.J.E.S.* grew out of the "same event or transaction."

16

The fact that this case, *Huisha-Huisha*, and *P.J.E.S.* challenge—at least in part—the same policy—the Title 42 process—is insufficient to overcome the general rule of random case assignment. Courts in this District recognize that challenging the same government policy does not mean the facts and events underlying the challenges are common or the same, as required by the local rule. *See Oliver*, Civ. A. No. 20-1150, at 4 (noting that it is "not enough . . . for the party seeking related-case treatment to show that the earlier- and later-filed cases both involved efforts . . . to protect a particular species."); *see also Keepseagle v. Glickman*, 194 F.R.D. 1, 3 (D.D.C. 2000) (ruling that two cases involving discrimination arising from the same policies did not involve common issues of fact where "the discrimination in this case allegedly occurred as a result of the acts of county commissions in entirely different regions of the country than were at issue in Pigford").

And even if challenging the same policy were enough, there must be sufficient judicial economy to "outweigh the fundamental interests served by the random assignment rule." *Doe v. Von Eschenbach,* Civ. A. No. 06-2131 (EGS), 2007 WL 1655881, at *1 (D.D.C. June 7, 2007). Plaintiffs cite to the cases consolidated with *Gomez v. Trump*, Civ. A. No. 20-1419, but those cases, despite differences in visa categories at issue, all sought to challenge an alleged refusal to process and issue visas pursuant to Presidential Proclamation 10014 and Presidential Proclamation 10052. *See Gomez v. Trump*, 485 F. Supp. 3d 145, 157 (D.D.C. 2020) ("Plaintiffs in these five consolidated actions are approximately 1,076 visa applicants, visa sponsors, and their derivative beneficiaries who represent various immigrant and nonimmigrant visa categories that are subject to the Proclamations' suspension of entry."). Here, in contrast, Title 42 is but one policy being challenged in a case that is focused on the treatment of Haitian migrants specifically, and the case for judicial economy that was present in the cases consolidated with *Gomez* does not exist here.

Plaintiffs make the conclusory argument that "judicial economy" favors relation of the cases but fail to explain what "economy" would be gained. Plaintiffs state merely that all three cases would require review of the same Title 42 administrative record, yet only *one* of Plaintiffs' eight claims challenge the Title 42 process as arbitrary and capricious agency action. The "essential purposes of random assignment[,]" including the "public's confidence in an impartial judiciary[,]" would be undermined if some commonality of government policies or laws in cases focused on challenging other policies and events, as here, were sufficient to deem cases "related" before the same judge.

Ultimately, while Plaintiffs not surprisingly rely on their copy-cat challenge to Title 42, it is at the expense of most of what is alleged in their own Complaint. A majority of Plaintiffs' claims and the bulk of the allegations purportedly arise from Plaintiffs' treatment at the Del Rio Encampment in September 2021 (Compl. ¶¶ 59-152, 209-261), an encampment that was not at issue in either of the allegedly related cases, resulting from a so-called "Haitian Deterrence Policy" (mentioned 96 times in the Complaint), a policy that also was not at issue in either of the allegedly related cases. The Complaint alleges a history of anti-Haitian immigration policies (*id*. ¶¶ 36-51) and that "discriminatory intent based on race and national origin" "drove the treatment of Haitian asylum seeks in Del Rio" (*id*. at 45). Plaintiffs further alert the Court to the possibility that they will seek to "amend this Complaint to add [Federal Tort Claims Act] claims" related to the events in Del Rio, further demonstrating that this case does not arise from the same "event" as *Huisha-Huisha* or *P.J.E.S.* Compl. ¶ 209 n.14. Indeed, some of the claims (*e.g*., Count I) in the Complaint are premised on alleged disparate treatment of Haitian migrants compared to migrants from other parts of the world or crossing at other parts of the border or at other times (*see id*. ¶¶ 163-178) thereby underscoring how *un*related this case is to *Huisha-Huisha* and *P.J.E.S.*

## Conclusion

For the foregoing reasons, Defendants respectfully request that this Court reject Plaintiffs' erroneous related case designation and transfer this action to the Calendar and Case Management Committee for reassignment.


Dated:  March 4, 2022                                    Respectfully submitted,

By:  */s/ Karen C. Tumlin*                               By:  */s/ Sean M. Tepe*
KAREN C. TUMLIN (CA00129*)*                              SEAN M. TEPE D.C. Bar #1001323
ESTHER H. SUNG (CA00132)                                 DIANA V. VALDIVIA, D.C. Bar #1006628
JANE BENTROTT (DC Bar # 1029681)                         Assistant United States Attorney
LAUREN WILFONG (NJ0014)                                  555 Fourth Street, N.W.
JUSTICE ACTION CENTER                                    Washington, D.C. 20530
P.O. Box 27280                                           Phone: (202) 252-2533; (202) 252-2545
Los Angeles, CA 90027                                    sean.tepe@usdoj.gov
Telephone: +1 323 316-0944                               diana.valdivia@usdoj.gov
Facsimile: +1 323 450-7276
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org                      MATTHEW M. GRAVES, D.C. Bar #481052
jane.bentrott@justiceactioncenter.org                    United States Attorney
lauren.wilfong@justiceactioncenter.org
                                                         BRIAN P. HUDAK
                                                         Acting Chief, Civil Division
STEPHEN MANNING (OR0024)
TESS HELLGREN (OR0023)                                   *Counsel for Defendants*
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 922-3042
Facsimile: +1 503-882-0281
stephen@innovationlawlab.org
tess@innovationlawlab.org


NICOLE PHILLIPS (*pro hac vice
forthcoming*)
HAITIAN BRIDGE ALLIANCE
4265 Fairmount Avenue, Suite 280
San Diego, CA 92105
Telephone: +1 949-603-5751
nphillips@haitianbridge.org


*Counsel for Plaintiffs*