# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HAITIAN BRIDGE ALLIANCE, *et al.*,

    *Plaintiffs*,

    v.

JOSEPH R. BIDEN, *et al.*,

    *Defendants*.

Civil Action No. 1:21-cv-03317 (JMC)

## MEMORANDUM OF LAW OF AMICUS CURIAE IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Christopher J. Hajec (DC Bar No. 492551)
Gina M. D'Andrea (DC Bar No. 1673459)
Immigration Reform Law Institute
25 Massachusetts Avenue NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
gdandrea@irli.org

Attorneys for *Amicus Curiae* Immigration
Reform Law Institute

## CORPORATE DISCLOSURE STATEMENT

The Immigration Reform Law Institute is a 501(c)(3) nonprofit corporation. It does not have a parent corporation and does not issue stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................................ii

TABLE OF CONTENTS ............................................................................................ iii

TABLE OF AUTHORITIES.............................................................................................iv

INTEREST OF AMICUS CURIAE...........................................................................1

INTRODUCTION .....................................................................................................2

ARGUMENT ............................................................................................................3

    I.    The CDC's Title 42 Order does not violate the Fifth Amendment. ....................................3

        A.    The Title 42 Order does not violate the Equal Protection component of the Fifth Amendment's Due Process Clause.........................................................................................4

        B.    The Title 42 Order does not violate substantive due process. ..........................................6

        C.    The Title 42 Order does not violate procedural due process. ..........................................7

    II.    The CDC's Title 42 Order does not violate the Administrative Procedure Act................10

        A.    Defendants have not withheld or delayed agency action. ..............................................10

        B.    The alleged "Haitian Deterrence Policy" is not reviewable under the APA. ................12

CONCLUSION .......................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Abdelfattah v. United States Dep't of Homeland Sec.*, 787 F.3d 524 (2015) ................................6

*Adarand Constructors v. Pena*, 515 U.S. 200 (1995) ....................................4

*Air All. Hous. v. United States Chem. & Safety Hazard Investigation Bd.*, 365 F. Supp. 3d 118 (D.D.C. 2019) ................................................................10

*Ali v. Trump*, 959 F.3d 364 (D.C. Cir. 2020) ................................6

*Bark v. United States Forest Serv.*, 37 F. Supp. 3d 41 (D.D.C. 2014) ..........................................14

*Bhd. of Locomotive Eng'rs & Trainmen v. FRA*, 972 F.3d 83 (D.C. Cir. 2020)..........................13

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001)........................................10

*Connecticut v. United States DOI*, 344 F. Supp. 3d 279 (D.D.C. 2018)......................................12

*Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11 (D.D.C. 2017).............................10, 12

*Demore v. Hyung Joon Kim*, 538 U.S. 510 (2003)........................................................7

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) .........................5

*Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020) ........................................7

*FOP Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141 (2004) ........................................6

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113 (D.D.C. 2015) ..10, 13

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ....................................................13, 14

*Gomez v. Trump*, 485 F. Supp. 3d 145 (D.D.C. 2020) ..................................................3

*Hampton v. Mow Sun Wong*, 426 U.S. 88 (1976) ........................................................4

*Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940 (D.C. Cir. 2012)..........................13

*Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (2022) .............................................8, 9, 11

*In re Aiken Cty.*, 645 F.3d 428 (D.C. Cir. 2011) ........................................................11

*Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir. 2009)....................................................3

*M.M.V. v. Garland*, 1 F.4th 1100 (D.C. Cir. 2021). ....................................................7

*Mathews v. Diaz*, 426 U.S. 67 (1976)....................................................................7

*Pub. Citizen v. United States Trade Representative*, 5 F.3d 549 (D.C. Cir. 1993) .....................13

*Rangel v. Boehner*, 20 F. Supp. 3d 148 (D.D.C. 2013)..................................................8

*Rasul v. Myers*, 563 F.3d 527 (D.C. Cir. 2009)..........................................................3

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726 (D.C. Cir. 2003)...................................................................................................................13

*Save Our Sch.-Southeast & Ne. v. D.C. Bd. of Educ.*, No. 04-01500 (HHK), 2006 U.S. Dist. LEXIS 45081 (D.D.C. July 3, 2006) ...........................................................................7

*Smith v. United States*, 277 F. Supp. 2d 100 (D.D.C. 2003) .......................................6, 8

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ................................................3

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977). ...............5

*Yates v. District of Columbia*, 324 F.3d 724 (2003).........................................................6

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ..........................................................................7

*Zaman v. United States Dep't of Homeland Sec.*, Civil Action No. 19-3592 (ABJ), 2021 U.S. Dist. LEXIS 221499 (D.D.C. Nov. 16, 2021) .................................................10

**Statutes**

42 U.S.C. § 265 ...................................................................................................................8

5 U.S.C. § 551(1).................................................................................................................12

5 U.S.C. § 555(b)...........................................................................................................10, 11

5 U.S.C. § 701(b)(1)...........................................................................................................12

5 U.S.C. § 704 .....................................................................................................................13

8 U.S.C. § 1231, note ..........................................................................................................11

8 U.S.C. § 1231(b)(3)(A) ....................................................................................................11

**Other Authorities**

Capio Memo, p. 4, available at https://www.documentcloud.org/documents/6824221-COVID-19-CAPIO.html.................................................................................................................12

**Rules**

Centers for Disease Control and Prevention, Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 56,424 (Sept. 11, 2020).............2

Centers for Disease Control and Prevention, Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17,060 (Mar. 26, 2020) ....................................2

Centers for Disease Control and Prevention, Public Health Reassessment and Order Suspending
the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable
Disease Exists, 86 Fed. Reg. 42,828 (Aug. 5, 2021)....................................................................2

Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons
Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85
Fed. Reg. 16,559 (Mar. 24, 2020) ...............................................................................................2

**Constitutional Provisions**

U.S. Const. amend. V ....................................................................................................................3

## INTEREST OF AMICUS CURIAE

*Amicus curiae* the Immigration Reform Law Institute ("IRLI") seeks the Court's leave to file this brief for the reasons set forth in the accompanying motion.[1] IRLI is a not for profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. For more than twenty years the Board of Immigration Appeals has solicited supplementary briefing, drafted by IRLI staff, from the Federation for American Immigration Reform, of which IRLI is a supporting organization. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); *United States v. Texas*, 136 S. Ct. 2271 (2016); *Arizona Dream Act Coal. v. Brewer*, 818 F.3d 101 (9th Cir. 2016); *Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 74 F. Supp. 3d 247 (D.D.C. 2014); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir. 2019); *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016); and *Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010). IRLI has also represented a wide variety of plaintiffs in immigration matters, ranging from American workers who have been displaced by foreign workers to foreign workers who have not been paid by their employers. Consequently, IRLI is dedicated to assisting the courts in maintaining a rational immigration system for the benefit of its clients.

---

[1] Consistent with Fed. R. App. P. 29(a)(4)(E), counsel for *amicus curiae* authored this brief, and the motion it accompanies, in whole, and no counsel for a party authored the brief in whole or in part, nor did any person or entity, other than the *amicus* and its counsel, make a monetary contribution to preparation or submission of the brief.

## INTRODUCTION

In March of 2020, the Department of Health and Human Services ("HHS") issued an interim final rule that empowered the Director of the Centers for Disease Control and Prevention ("CDC") "to suspend the introduction of persons into the United States" because of the global Covid-19 pandemic. Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 16,559, 16,563 (Mar. 24, 2020). Two days later, the CDC issued an order barring certain "covered aliens" from entering the United States from either Mexico or Canada "regardless of their country of origin." Centers for Disease Control and Prevention, Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17,060, 17,061 (Mar. 26, 2020) (the "Interim Final Rule"). The Interim Final Rule included a thirty-day period for public comment. *Id*. A final rule implementing the Interim Final Rule was issued in September 2020. HHS explained that the September Rule "is critical to protecting U.S. public health" during the Covid-19 pandemic. Centers for Disease Control and Prevention, Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 56,424 (Sept. 11, 2020) (the "September Rule").

At issue in this case is the version of the rule issued in August 2021. The CDC promulgated this order continuing the prohibition of "covered aliens" entering the United States from either Mexico or Canada. *See* Centers for Disease Control and Prevention, Public Health Reassessment and Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42,828 (Aug. 5, 2021) (the "Title 42

Order"). Plaintiffs allege that the Title 42 Order violates the Administrative Procedure Act as well as the Fifth Amendment to the U.S. Constitution. IRLI's brief supports Defendants' arguments that the actions of HHS and CDC in closing the borders in response to the Covid-19 pandemic did not violate either the Fifth Amendment or the APA.

## ARGUMENT

### I. The CDC's Title 42 Order does not violate the Fifth Amendment.

The Due Process clause of the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Plaintiffs assert both equal protection and due process violations.

These claims, however, run afoul of the well-established precedents that aliens outside of the United States are not entitled to the protections of the Fifth Amendment. *See, e.g., United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) ("Indeed, we have rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States."); *Rasul v. Myers*, 563 F.3d 527, 531 (D.C. Cir. 2009) ("The long line of cases dealing with constitutional rights of both lawful resident aliens and illegal aliens establishes only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country.") (citation and quotation marks omitted); *Gomez v. Trump*, 485 F. Supp. 3d 145, 188 (D.D.C. 2020) ("At the threshold, the Fifth Amendment's equal protection clause does not protect any Plaintiff outside the United States, so they have no constitutional claim."); *Kiyemba v. Obama*, 555 F.3d 1022, 1026 (D.C. Cir. 2009) ("Decisions of the Supreme Court and of this court—decisions the district court did not acknowledge—hold that the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States."), *vacated and remanded*, 559 U.S. 131

(2010), *reinstated in relevant part*, 605 F.3d 1046 (D.C. Cir. 2010), *cert. denied*, 563 U.S. 954 (2011).

Plaintiffs' claims fail for this reason alone. Even if that were not so, they also would fail because Plaintiffs fail to allege that any violation of equal protection, substantive due process, or procedural due process actually occurred.

### A. The Title 42 Order does not violate the Equal Protection component of the Fifth Amendment's Due Process Clause.

While the Supreme "Court has always understood th[e] [Due Process] Clause to provide some measure of protection against *arbitrary* treatment by the Federal Government, it is not as explicit a guarantee of *equal* treatment as the Fourteenth Amendment[.]" *Adarand Constructors v. Pena*, 515 U.S. 200, 213 (1995) (emphasis in original). In other words, the Due Process Clause requires that "[t]he federal sovereign, like the States, must govern impartially." *Hampton v. Mow Sun Wong*, 426 U.S. 88, 100 (1976). Still, "there may be overriding national interests which justify selective federal legislation that would be unacceptable for an individual State." *Id.* Thus,

> [w]hen the Federal Government asserts an overriding national interest as justification for a discriminatory rule which would violate the Equal Protection Clause if adopted by a State, due process requires that there be a legitimate basis for presuming that the rule was actually intended to serve that interest. If the agency which promulgates the rule has direct responsibility for fostering or protecting that interest, it may reasonably be presumed that the asserted interest was the actual predicate for the rule. That presumption would, of course, be fortified by an appropriate statement of reasons identifying the relevant interest.

*Id*. at 103. As stated, the "overriding national interest" in this case is the global Covid-19 pandemic. Thus, even if Defendants' actions were found to be discriminatory, the explanation provided is sufficient to override a potential Fifth Amendment equal protection violation.

Intentional discrimination analysis "demands a sensitive inquiry into such circumstantial and direct evidence as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Such evidence includes "[t]he impact of the official action," "the historical background of the decision . . . particularly if it reveals a series of official actions taken for invidious purposes," "the specific sequence of events leading up to the challenged decision," "[d]epartures from the normal procedural sequence," and "[t]he legislative or administrative history" of the challenged rule. *Id.* at 266-68. Thus, an action by the federal government "will not be held unconstitutional solely because it results in a racially disproportionate impact. Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id*. at 264-65 (internal citation and quotation marks omitted). Such intent or purpose is often lacking in immigration cases. For example, as the Supreme Court has acknowledged, "because Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program. Were this fact sufficient to state a claim, virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915-16 (2020).

Plaintiffs allege that the Title 42 Order that closed the border to migrants due to the global Covid-19 pandemic violated their right to equal protection because it was "motivated at least in part by discriminatory purpose based on race and presumed national origin." Complaint, Doc. 1 at ¶ 287. Yet each iteration of the CDC's orders under Title 42 has been facially neutral and generally applicable to all illegal aliens without regard to race or national origin. Furthermore, Plaintiffs' complaint contains no evidence that HHS or the CDC acted with the intent to single out

those of Haitian descent for exclusion under the Title 42 Order. Plaintiffs' unsupported determination that the Executive crafted a "Haitian Deterrence Policy" is wholly insufficient to show discriminatory intent under *Arlington Heights*, and should be rejected by this Court.

### B. The Title 42 Order does not violate substantive due process.

The substantive component of the Fifth Amendment's Due Process Clause is activated "only when a fundamental right is involved, thus ensuring that the government does not unjustifiably infringe on that right." *Smith v. United States*, 277 F. Supp. 2d 100, 105 (D.D.C. 2003). Rights are fundamental when they "are implicit in the concept of ordered liberty." *Id*. at 106 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). These substantive protections "bar[] certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Ali v. Trump*, 959 F.3d 364, 369 (D.C. Cir. 2020) (citation and quotation marks omitted). It is clearly established in this circuit that "[o]nly government action that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience qualifies as arbitrary for the purposes of substantive due process." *Id*. (citations and quotation marks omitted). *See also Yates v. District of Columbia*, 324 F.3d 724, 725 (2003) ("Only the most egregious official conduct rises to the level of a substantive due process violation.") (citation and quotation marks omitted); *FOP Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141, 1145 (2004) ("The conscience-shock inquiry is a threshold question in a due process challenge to executive action."). Although there is no "precise threshold for alleging an executive action violates substantive due process rights . . . the bar is high." *Abdelfattah v. United States Dep't of Homeland Sec.*, 787 F.3d 524, 542 (2015) (citations omitted).

Plaintiffs' substantive due process claim fails to meet this high standard. First, their complaint fails to allege that Defendants have violated a recognized fundamental right.

Accordingly, as this Court has recognized, "[w]hen a fundamental right is not implicated, as here, substantive due process merely prohibits government action that results in a deprivation of a protected interest when the action fails to have some rational basis." *Save Our Sch.-Southeast & Ne. v. D.C. Bd. of Educ.*, No. 04-01500 (HHK), 2006 U.S. Dist. LEXIS 45081, at *54 (D.D.C. July 3, 2006). Plaintiffs fail to identify any such protected interest in their complaint. And, even if they had done so, the actions taken by HHS and the CDC would easily pass rational basis review in light of the need to protect the American public during the years-long, worldwide Covid-19 pandemic.

**C. The Title 42 Order does not violate procedural due process.**

Supreme Court precedent makes clear that aliens "ha[ve] only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1983 (2020). The D.C. Circuit has acknowledged as much, explaining that "aliens apprehended while trying to enter the country have no due process rights beyond what Congress has provided by statute." *M.M.V. v. Garland*, 1 F.4th 1100, 1107 (D.C. Cir. 2021). Accordingly, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976). This "fundamental premise of immigration law" gives Congress wide latitude to regulate the admission and removal of aliens. *Demore v. Hyung Joon Kim*, 538 U.S. 510, 521 (2003). Importantly, there is a legally recognized "distinction between an alien who has effected entry into the United States and one who has never entered. . . . It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (internal citations omitted).

To succeed on a procedural due process challenge, plaintiffs must allege "a legitimate claim of entitlement to [a life, liberty, or property] interest." *Smith*, 277 F. Supp. 2d at 106. As this Court has explained, "[i]t is the deprivation of a liberty or property interest itself that triggers procedural due process requirements, and that deprivation is the Article III injury. The deprivation is what needs to be redressed; the failure to meet the requirements of due process is what makes that deprivation redressable." *Rangel v. Boehner*, 20 F. Supp. 3d 148, 166 (D.D.C. 2013) (internal citations omitted).

Plaintiffs allege a property interest in the right to seek protection from removal, including asylum and withholding of removal. Complaint ¶ 313 ("By denying Individual Plaintiffs access to the asylum process and access to other relief from removal, Defendants' conduct violates procedural due process."). Whether such an interest is created by the INA, however, is not determinative in this case. The plain language of the Public Health Services Act reflects Congress's intention that the Executive have the authority to close the borders in case of a public health emergency. Therefore, Plaintiffs' procedural due process claims must fail because the protected interest to apply for asylum is derived from the INA, which is superseded by the Executive's authority under the PHSA. 42 U.S.C. § 265 (providing the President with the discretion to order the "*suspension* of the right to introduce" and "the power to prohibit, in whole or in part, the introduction of *persons*" for public health purposes.) (emphasis added).

Indeed, earlier this year the D.C. Circuit held that the Executive, pursuant to its authority under 42 U.S.C. § 265, likely could exclude illegal aliens from the asylum process altogether. *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 731 (2022) ("It's true that the § 265 Order forecloses more than just a grant of asylum; it also forecloses the statutorily mandated procedures that aliens

use to apply for asylum. But if the asylum decision has already been made—by the § 265 Order—then those procedures would be futile.").

In any event, even were the asylum statute operative, the complaint does not allege that any plaintiff indicated an intention to apply for asylum and was refused. Additionally, the complaint indicates that "8,000 Haitian asylum seekers," including several of the named plaintiffs, left the U.S. border area at Del Rio for Mexico. Compl. ¶ 129. Plaintiffs cannot claim an injury from the government's failure to adhere to procedures when they willingly removed themselves from the U.S. border.

The D.C. Circuit also held that "under § 1231(b)(3)(A) and the Convention Against Torture, the Executive cannot expel aliens to countries where their life or freedom would be threatened on account of their race, religion, nationality, membership in a particular social group, or political opinion or where they will likely face torture." *Huisha-Huisha*, 27 F.4th at 733. Plaintiffs' complaint does not allege that any of the above eligibility requirements for withholding of removal or CAT protection was met. Plaintiffs cite feeling unsafe, lack of stability, a decades old murder of a family member, fear of kidnapping, poor conditions in Chile, and gang violence among the reasons for seeking asylum or protection from removal to Haiti. Compl. ¶¶ 16-22. While the complaint references the crime and violence in Haiti, none of the Plaintiffs indicated a fear of torture should they be returned to Haiti. The closest the complaint comes to satisfying this requirement is the allegation of persecution in Chile based on Haitian descent, but none of the individual Plaintiffs was expelled to Chile.

For all of these reasons, Plaintiffs' claims of procedural due process violations should be dismissed.

## II. The CDC's Title 42 Order does not violate the Administrative Procedure Act.

### A. Defendants have not withheld or delayed agency action.

Agencies are required, "within a reasonable time . . . to conclude a matter presented to it." 5 U.S.C. § 555(b). Where the agency "fail[s] to do so, the APA authorizes courts to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Zaman v. United States Dep't of Homeland Sec.*, Civil Action No. 19-3592 (ABJ), 2021 U.S. Dist. LEXIS 221499, at *6-7 (D.D.C. Nov. 16, 2021) (quoting 5 U.S.C. § 706(1)). *See also Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 119 (D.D.C. 2015) ("A person adversely affected by agency action, including failure to act, is entitled to judicial review under the APA"). As this Court has recognized, "[t]o compel agency action that is 'unlawfully withheld,' a plaintiff must demonstrate 'that an agency failed to take a *discrete* agency action that it is *required to take*.'" *Air All. Hous. v. United States Chem. & Safety Hazard Investigation Bd.*, 365 F. Supp. 3d 118, 131 (D.D.C. 2019) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)) (emphasis original). *See also Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 21 (D.D.C. 2017) ("A plaintiff who asks a court to compel agency action . . . unreasonably delayed under § 706(1) must pinpoint an agency's failure to take an action that is *both* discrete *and* mandatory.") (citation and quotation marks omitted) (emphasis original). Once a plaintiff establishes that an agency was required to act, "[a]s a general rule, Section 706 of the APA leaves in the courts the discretion to decide whether agency delay is unreasonable." *Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001) (citation and quotation marks omitted).

The first mandatory action that Plaintiffs allege was unlawfully withheld or unreasonably delayed was their ability to access the asylum process. Compl. ¶ 360 ("By refusing to allow asylum seekers . . . a meaningful opportunity to apply for asylum or to access any statutory and procedural

protections . . . Defendant CBP has unlawfully withheld and unreasonably delayed discrete agency actions mandated by statute").  As explained above, however, the D.C. Circuit has held that those actions likely were not mandated by statute because the § 265 Order operated as a blanket denial of asylum, making asylum applications futile.  *Huisha-Huisha*, 27 F.4th at 731.  Also, nowhere in their complaint do the Plaintiffs who were returned to Haiti (or those who chose to go to Mexico) indicate that they alerted CBP officials of their intention to seek asylum.  Plaintiffs cannot hold CBP accountable for withholding relief that was not requested.  Rather, action can only be compelled on "a matter presented to" an agency.  5 U.S.C. § 555(b).

Plaintiffs also allege that Defendants failed to follow the procedures in the INA related to withholding of removal ("WOR") and the Convention Against Torture ("CAT").  This claim must also fail.  First, 8 U.S.C. § 1231 and the note to § 1231 addressing CAT protection do not contain any procedures.  The statute, entitled "Detention and removal of aliens ordered removed," merely instructs the government where aliens with final orders of removal may be removed to.  The provision states that aliens may not be removed to a country where "the alien's life or freedom would be threatened . . . because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  Therefore, Defendants "ha[ve] not failed to take any discrete agency action that Congress ordered it to take.  Petitioners' general complaints" about the Title 42 process "are simply not justiciable."  *In re Aiken Cty.*, 645 F.3d 428, 437 (D.C. Cir. 2011).

Plaintiffs' claims regarding CAT protection must also fail.  Again, the statute does not provide procedures to follow regarding CAT protection, but merely codifies the U.S.'s policy under certain international agreements.  8 U.S.C. § 1231, note ("It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country

in which there are substantial grounds for believing the person would be in danger of being subjected to torture."). While true that Plaintiffs expressed fears of general violence and poor conditions in Haiti, none claimed to fear torture. Additionally, Defendants did have a policy in place to ensure compliance with CAT obligations. Compl. ¶ 57 (citing to the "Capio Memo"). This policy guides officers to refer to USCIS "[a]liens that make an affirmative, spontaneous and reasonably believable claim that they fear being tortured in the country they are being sent back to." Capio Memo, p. 4, available at https://www.documentcloud.org/documents/6824221-COVID-19-CAPIO.html. Defendants' are not responsible for Plaintiffs' failure to make such a claim.

Where, as here, "a complaint that contains a claim brought under § 706(1) fails to identify a discrete and mandatory agency duty, the court must grant the defendant's Rule 12(b)(6) motion and dismiss the claim." *Ctr. for Biological Diversity* 260 F. Supp. 3d at 21. *See also Connecticut v. United States DOI*, 344 F. Supp. 3d 279, 295 (D.D.C. 2018) ("However, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.") (citation and quotation marks omitted). Plaintiffs' claims regarding agency action unlawfully withheld or unreasonably delayed should be dismissed.

## B. The alleged "Haitian Deterrence Policy" is not reviewable under the APA.

In addressing claims under the Administrative Procedure Act ("APA"), a threshold inquiry is whether the challenged action or policy is a reviewable agency action. Congress, in the APA, defined an "agency" as "each authority of the Government of the United States, whether or not it is subject to review by another agency, but does not include (A) the Congress; (B) the courts of the United States; (C) the governments of the territories or possessions of the United States; (D) the government of the District of Columbia." 5 U.S.C. §§ 701(b)(1), 551(1). Importantly, although

"[t]he President is not explicitly excluded from the APA's purview, . . . he is not explicitly included, either." *Franklin v. Massachusetts*, 505 U.S. 788, 800 (1992). Due to this failure to "expressly allow review of the President's actions, we must presume that his actions are not subject to [APA] requirements." *Id*. at 801.

Furthermore, absent statutory grants of review, only agency actions that are "final" may be reviewed under the APA. 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."). *See also Fort Sill Apache Tribe*, 103 F. Supp. at 122 ("Judicial review under Section 706(2) is precluded because there has been no final agency action"); *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) ("The APA, however, only provides a right to judicial review of *final* agency action for which there is no other adequate remedy in a court.") (citation and quotation marks omitted) (emphasis original); *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731(D.C. Cir. 2003) ("If there was no final agency action here, there is no doubt that appellant would lack a cause of action under the APA."); *Pub. Citizen v. United States Trade Representative*, 5 F.3d 549, 551 (D.C. Cir. 1993) ("The central question in this appeal then is whether Public Citizen has identified some agency action that is final upon which to base APA review."). According to court precedent, "[a]gency actions qualify as final if they 'mark the consummation of the agency's decisionmaking process' and 'legal consequences' flow from them." *Bhd. of Locomotive Eng'rs & Trainmen v. FRA*, 972 F.3d 83, 99 (D.C. Cir. 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). *See also Pub. Citizen*, 5 F.3d at 551 ("To determine whether an agency action is final, 'the core question is whether the agency has completed its decisionmaking process, *and* whether the result of that process is one

that will directly affect the parties.'") (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)) (emphasis original).

The alleged Haitian Deterrence Policy does not meet these requirements. First, Plaintiffs do not provide any support for the allegation that this so-called policy was an "agency" action. As explained, the president is not an "agency" within the meaning of the APA and thus is not a proper defendant in APA cases. *Franklin*, 505 U.S. at 800. While true that this count of the complaint is made against DHS and not the president, the complaint describes the supposed policy as "devised by White House senior officials" following "a series of discrete decisions made by President Biden's senior advisors." Compl. ¶ 61. Simply naming DHS without specifying how (or if) it was involved in developing the policy or how it came to adopt the alleged policy is insufficient to establish agency action.

Second, Plaintiffs cannot point to a final agency action because Plaintiffs themselves invented this alleged "policy" and outlined its supposed parameters. *See, e.g.,* Compl. ¶¶ 60, 61. As this court has explained, Plaintiffs cannot simply "attach[] a 'policy' label to their own amorphous description of" agency actions because "a final agency action requires more." *Bark v. United States Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014). Without "written rules, orders, or even guidance documents of the [agency] that set forth the supposed policies challenged here," Plaintiffs have merely made a "generalized complaint about agency behavior that gives rise to no cause of action." *Id*. at 50-51. Plaintiffs cannot create a policy and impute it to an agency in order to meet the final agency action requirement.

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should grant Defendants' Motion to Dismiss.

Dated: June 17, 2022

Respectfully submitted,

 /s/ *Gina M. D'Andrea*

Christopher J. Hajec (DC Bar No. 492551)
Gina M. D'Andrea (DC Bar No. 1673459)

Immigration Reform Law Institute
25 Massachusetts Avenue NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
gdandrea@irli.org

Attorneys for *Amicus Curiae* Immigration
Reform Law Institute