IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HAITIAN BRIDGE ALLIANCE *et al.*,

          *Plaintiffs*,

   v.

JOSEPH R. BIDEN, President of the United States, *et al.*,

          *Defendants*.

Case No. 1:21-cv-03317 (JMC)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXTEND DEADLINE TO FILE MOTION TO DISMISS REPLY**

     Plaintiffs, by and through undersigned counsel, hereby oppose Defendants' Motion to extend the deadline to file their Reply in Support of Motion to Dismiss until September 2, 2022. Though Plaintiffs would not oppose a reasonable two-week extension, for the reasons set forth below, Defendants' request for a lengthy extension should be rejected for lack of good cause.

     1.     Seven months ago, on December 20, 2021, Plaintiffs filed the Complaint in this action. ECF No. 1. In March 2022, Defendants sought and received a 45-day extension of their deadline to answer or otherwise respond to Plaintiffs' complaint until April 28, 2022. ECF No. 19; Mar. 17, 2022 Minute Order. In April 2022 Defendants again sought, and in May 2022 received, another extension, extending their deadline to answer or otherwise respond to Plaintiffs' complaint by more than another six weeks. ECF No. 23; May 2, 2022 Minute Order.

     2.     On June 10, 2021, Defendants moved to dismiss Plaintiff's Complaint in its entirety. ECF No. 28. Having received a three-week extension to their deadline to oppose

1

Defendants' attempt to dispose of this litigation, ECF No. 32, Plaintiffs filed an opposition brief on July 15, 2022. ECF No. 38. Defendants now seek a six-week extension to the one week allotted by the rules to file an optional reply brief. ECF No. 39.

3. In response to Defendants' request for consent to this lengthy extension, Plaintiffs informed Defendants that they would consent to a reasonable, two-week extension that is more than proportionate to the modest extension Plaintiffs sought and received, but not to an unreasonable six-week extension. See ECF No. 39 at 5 (Ex. A). In lieu of replying to Plaintiffs' proposed compromise, Defendants filed their Motion. ECF No. 39.

4. If a party requests an extension of time before the filing deadline has passed, as Defendants have here, the court may enlarge the time period "for good cause," Fed. R. Civ. P. 6(b)(1). The "good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite [its] diligence.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011) (citations omitted). Defendants' Motion fails to address the applicable standard, let alone attempt to explain why two attorneys' busy schedules suffice to show that counsel for the Defendants (the United States Department of Justice and the United States Attorney's Office for the District of Columbia) (1) have attempted to meet the deadline, (2) with all diligence, and (3) that they still are unable to do so. Defendants' Motion does not satisfy Rule 6(b)'s good cause standard.

5. First, Defendants made no showing as to their diligence to attempt to meet the existing deadline. *See* ECF 39. Nor did Defendants persuasively show why, despite such diligence, they remain unable to meet the deadline—much less why they require an extension that multiplies by seven the default time allotted for their (optional) reply brief. *See* LCvR 7(d) ("Within seven days after service of the memorandum in opposition the moving party may serve and file a reply memorandum."). Rather, while Defendants have identified two attorneys' "deadlines and obligations" in other litigation, ECF. No. 39 ¶ 5, the reply deadline in this matter is also one of

Defendants' existing deadlines, and they put forth no persuasive reason why the obligations in this case should be de-prioritized in favor of others, or why Defendants took no steps to secure alternate or additional counsel to ensure they could cover their existing deadlines in this matter. LCvR 7(d). Defendants' Motion falls short of demonstrating that they cannot reasonably reply in support of their own Motion absent seven weeks to do so.

6. Moreover, attorneys' busy schedules alone have repeatedly been found not to constitute "good cause" for delay. *See*, *e.g.*, *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1030–31 (7th Cir. 1998) (denying a request for extension of time premised upon counsel's busy trial schedule, stating that "a good judge sets deadlines, and the judge has a right to assume that deadlines will be honored."); *Mendez v. Banco Popular de Puerto Rico*, 900 F.2d 4, 6 (1st Cir. 1990) ("many calendar commitments" do not amount to good cause for an enlargement of time); *Acosta v. Hovensa, LLC*, No. 2008-089, 2012 WL 1848391, at *2 (D.V.I. May 21, 2012) ("That counsel's busy schedule, by itself, is not good cause for an extension of time under Rule 6 of the Federal Rules of Civil Procedure is hardly a novel proposition"); *Darrah v. Virgin Islands ex rel. Juan F. Luis Hosp.*, No. 2009-068, 2011 WL 6181352, at *6 (D.V.I. Dec. 13, 2011) (same); *McLarty v. STD, Inc.,* No. 1:06CV077-D-A, 2007 WL 2579970, at *3 (N.D. Miss. Sept. 4, 2007) ("'While the balance of life and work keeps everyone busy, … the defendants' explanation'—counsel's busy schedule—"does not rise to the level of good cause."); *United States v. United States Fid. & Guar. Co.*, No. 2:01CV00597, 2005 WL 1528374, at *2 (N.D. Ind. June 24, 2005) ("[a] counsel's busy trial schedule has been determined to fall short of establishing good cause."). Defendants' stated reasoning thus falls short of the good cause standard.[1]

---

[1] Defendants' argument that the "conflicts [were] created, in part, by Plaintiffs' extension of their opposition deadline, which the government did not oppose" (ECF No. 39 ¶ 6) is not well-taken, as Defendants evidently knew of those conflicts at the time the Parties conferred as to Plaintiffs' requested modest extension but nonetheless chose not to alert Plaintiffs' counsel that

3

7. Additionally, it is within the power of the U.S. Attorney's Office for the District of Columbia and the United States Department of Justice to add attorneys to their team to deal with an entirely predictable and admittedly foreseeable work crunch. *See, e.g., Mississippi v. Turner*, 498 U.S. 1306, 1306 (1991) (suggesting the State of Mississippi should hire more attorneys because "counsel's overextended caseload is not 'good cause shown,' unless it is the result of events unforeseen and uncontrollable by both counsel and client" (citation omitted)); *McIntyre v. Nevada*, No. 2:20-cv-00848-GMN-NJK, 2022 WL 717614, at *1 (D. Nev. Mar. 10, 2022) (granting a "one-time courtesy" extension, while stating "it is not clear why sufficient steps have not been taken during this time to hire additional attorneys so that cases can be staffed properly"). Indeed, Defense counsel's purported busyness is even less compelling where they have already cited their busy dockets to request and receive a lengthy extension in the resolution of the pleadings in this case. *See* ECF No. 19 ¶ 2 (stating that Assistant U.S. Attorneys Tepe and Valdivia "both require additional time to integrate this new matter into their extremely heavy caseloads with numerous existing and conflicting deadlines."). There is no reason to believe Defense counsel will become less busy or would prioritize this in the future case if work on other matters constitutes "good cause" for lengthy delay here. If that were the case, counsel's ever-busy schedules would always provide reason to postpone justice for Plaintiffs and the thousands of putative class members who seek relief from grave harm and ongoing injury. *See* ECF Nos. 1, 38. This case certainly requires no less diligence in resolution than any other matters on defense counsel's dockets. *See* Fed. R. Civ. P. 1 (requiring the "just, speedy, and inexpensive determination of every action and proceeding.").

8. Good cause is even less persuasive in this case where, after having already sought and received two extensions of their deadline to respond to the Complaint, extending that period

---

their requested extension would create such conflicts, and also took no steps to ensure that alternative counsel for the Defendants would be able to cover the Defendants' reply brief deadline in this matter. See Ex. A, Declaration of Esther Sung.

by almost thirteen weeks, *see* ECF Nos. 19, 23, Defendants' requested delay would harm Plaintiffs and potential class members whose need for relief is time-sensitive. As long as Defendants' challenged policies continue to prevent Plaintiffs and the proposed class from accessing the lawful process to seek asylum in the United States, many of them remain in danger and face daily hardship. *See* ECF No. 1 ¶ 210. Good cause does not exist to inject unnecessary and unreasonable delay in favor of Defense counsel's other caseloads while Plaintiffs face this harm. Moreover, Defendants' argument that Plaintiffs would not be prejudiced by additional delay because "most Plaintiffs have been granted humanitarian parole into the United States" (ECF No. 39 ¶ 7) is particularly cavalier as to the lives and safety of the four named Plaintiffs who are still in danger (*see* Declaration of Nicole Philips, ECF No. 38-1), not to mention the thousands of putative class members who currently face grave harm in Haiti and whose rights may be redressed through efficient resolution of this litigation. ECF No. 1. "The immediate problem is a breakdown in security on the streets of the Haitian capital, Port-au-Prince, and elsewhere. Massacres, rapes, shootouts and attacks — including a recent one on the nation's largest courthouse by a notorious criminal gang — have terrorized Haitians, hastened the economy's collapse and contributed to an outflow of refugees." Washington Post Editorial Board, *A Year After Its President's Assassination, Haiti Is in Turmoil*, WASHINGTON POST, July 7, 2022, https://www.washingtonpost.com/opinions/2022/07/07/jovenel-moise-haiti-assassination-anniversary-turmoil/. *See also* Ahmad Hemingway, *Gang Violence, Inflation, Food Insecurity Deepen Haiti Crisis*, ABC NEWS, July 17, 2022, https://abcnews.go.com/International/gang-violence-inflation-food-insecurity-deepen-haiti-crisis/story?id=86941317 (discussing "extremely high levels of gang violence and other criminal activities, including kidnappings and homicides, and sexual and gender-based violence, as well as ongoing impunity for perpetrators").

9. Finally, Defendants' request is particularly unreasonable in the context of a reply brief, which is necessarily limited in scope to the set of arguments Defendants raised in their

5

Motion to Dismiss. *See D.L. v. District of Columbia*, 450 F.Supp.2d 11, 20 n.6 (D.D.C. 2006) ("Defendants should have included this argument in their motion to dismiss, rather than waiting to raise it in their Reply."); *Presbyterian Med. Ctr. of the Univ. of Pa. Health Sys. v. Shalala*, 170 F.3d 1146, 1152 (D.C. Cir. 1999) (a court need not consider an argument first raised in a reply brief). Defendants fail to explain why—beyond merely prioritizing other matters—they would require seven weeks to reply in support of their own motion.

10. Ultimately, while limited, reasonable extensions are understandable when necessary, the Government has not shown here that it diligently tried and still "cannot" meet its deadline without an additional six weeks; nor is such delay reasonable under these circumstances. For the reasons stated above, the Court should either reject Defendants' Motion to Extend and maintain the current deadline, or grant them a more appropriate extension of two weeks that would allow this case to proceed at a judicious pace.

DATED: July 20, 2022

**Stephen Manning** (OR0024)
stephen@innovationlawlab.org
**Tess Hellgren** (OR0023)
tess@innovationlawlab.org
**Trillium Chang** (NY0483)
trillium@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 922-3042
Facsimile: +1 503-882-0281

**Nicole Phillips** (*pro hac vice* forthcoming)
nphillips@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4265 Fairmount Avenue, Suite 280
San Diego, CA 92105
Telephone: +1 949 603-5751

Respectfully submitted,

/s/ *Esther H. Sung*
**Esther H. Sung** (CA00132)
esther.sung@justiceactioncenter.org
**Lauren M. Wilfong** (NJ0014)*
lauren.wilfong@justiceactioncenter.org
**Jane Bentrott** (DC Bar No. 1029681)
jane.bentrott@justiceactioncenter.org
**Karen C. Tumlin** (CA00129*)*
karen.tumlin@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944
Facsimile: +1 323 450-7276

*\*Not admitted to practice law in California*

**Stanley Young** (CA00146)
syoung@cov.com
**Matthew E. Delgado** (CA Bar No. 306999) (*pro hac vice* forthcoming)
mdelgado@cov.com
COVINGTON & BURLING, LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: +1 650 632-4704

**Alexander L. Schultz** (DC Bar No. 1618410)
aschultz@cov.com
COVINGTON & BURLING, LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: +1 424 332-4788

7