**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HAITIAN BRIDGE ALLIANCE *et al.*,
*Plaintiffs*,

v.

JOSEPH R. BIDEN, President of the United States, *et al.*,
*Defendants.*

Civil Action No. 1:21-cv-03317 (JMC)

**PLAINTIFFS' RESPONSE TO THE COURT'S MAY 12, 2023 ORDER TO SHOW CAUSE**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. This Case Is Not Moot Because the Court Can Still Grant Effectual Relief to Plaintiffs. ........ 1

1. Plaintiffs Will Benefit from an Order Facilitating Their Return to the United States. ........ 3

2. Plaintiffs Will Benefit from an Order Enjoining the Haitian Deterrence Policy. ........ 3

3. Plaintiffs Will Benefit from an Order Requiring the Government to Afford Them the Statutory and Procedural Protections that They Are Due and Would Have Received Absent the Wrong They Suffered. ........ 7

B. Even If This Case Were Technically Moot in Some Respects, a Mootness Exception Applies Such That It Remains Justiciable ........ 10

1. Voluntary Cessation ........ 10

2. Capable of Repetition, Yet Evading Review ........ 12

III. CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelfattah v. U.S. Dep't of Homeland Sec.*,
787 F.3d 524 (D.C. Cir. 2015) .......... 13

**Almaqrami v. Pompeo*,
933 F.3d 774 (D.C. Cir. 2019) .......... *passim*

*Asai v. Castillo*,
593 F.2d 1222 (D.C. Cir. 1978) .......... 3

*Burlington Northern R.R. Co. v. Surface Transp. Bd.*,
75 F.3d 685 (D.C. Cir. 1996) .......... 12

**Chafin v. Chafin*,
568 U.S. 165 (2013) .......... 1

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982) .......... 11

*Clarke v. United States*,
915 F.2d 699 (D.C. Cir. 1990) .......... 9

*Decker v. Nw. Env'tl Def. Ctr.*,
568 U.S. 597 (2013) .......... 8

*Del Monte Fresh Produce Co. v. United States*,
570 F.3d 316 (D.C. Cir. 2009) .......... 12

*Doe v. Harris*,
696 F.2d 109 (D.C. Cir. 1982) .......... 2, 8, 12

*Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 10

*Grace v. Whitaker*,
344 F. Supp. 3d 96 (D.D.C. 2018) .......... 9

**Haitian Refugee Center v. Civiletti*,
503 F. Supp. 442 (S.D. Fla. 1980) .......... 4, 6, 7, 9

*Holt Civic Club v. City of Tuscaloosa*,
439 U.S. 60 (1978) .......... 7

*Huisha-Huisha v. Mayorkas*,
Case 1:21-cv-00100-EGS (D.D.C. Aug. 31, 2022) ....................11

*Igiebor v. Barr*,
981 F.3d 1123 (10th Cir. 2020) ....................3

*Int'l Union of Bricklayers & Allied Craftsmen v. Meese*,
761 F.2d 798 (D.C. Cir. 1985) ....................2, 6

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) ....................12

*Jibril v. Mayorkas*,
20 F.4th 804 (D.C. Cir. 2021) ....................4

*Leonardson v. City of East Lansing*,
896 F.2d 190 (6th Cir. 1990) ....................13

*Lightfoot v. D.C.*,
355 F. Supp. 2d 414 (D.D.C. 2005) ....................9

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conf. of the United States*,
264 F.3d 52 (D.C. Cir. 2001) ....................12

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
139 S. Ct. 1652 (2019) ....................6

*Motor & Equip. Mfrs. Ass'n v. Nichols*,
142 F.3d 449 (D.C. Cir. 1998) ....................10

*N. Am. Butterfly Ass'n v. Wolf*,
977 F.3d 1244 (D.C. Cir. 2020) ....................1, 2, 6, 12

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
138 S. Ct. 617 (2018) ....................3

*Ramirez-Chavez v. Holder*,
No. 11-72297 (9th Cir. 2012) ....................9

**Roman Cath. Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (U.S. Nov. 25, 2020) ....................11, 12, 13

*Sadat I. v. Nielsen*,
2019 WL 108854 (D.D.C. Jan. 4, 2019) ....................10, 11

*Schnitzler v. United States*,
761 F.3d 33 (D.C. Cir. 2014) ....................2, 3

**Trinity Lutheran Church of Columbia, Inc. v. Comer*,
582 U.S. 449 (2017) ........ 11

*United States v. Concentrated Phosphate Exp. Ass'n*,
393 U.S. 199 (1968) ........ 10

*United States v. W. T. Grant Co.*,
345 U.S. 629 (1953) ........ 10

*WildEarth Guardians v. Env'tl Prot. Agency*,
830 F.3d 529 (D.C. Cir. 2016) ........ 8

*Ying Fong v. Ashcroft*,
317 F. Supp. 2d 398 (S.D.N.Y. 2004) ........ 9

**Zukerman v. United States Postal Serv.*,
961 F.3d 431 (D.C. Cir. 2020) ........ 1, 8

**Statutes and Regulations**

42 U.S.C. § 265 ........ 11

42 U.S.C. § 268 ........ 11

42 C.F.R. § 71.40 ........ 11

**Other Authorities**

Fed. R. Civ. P. 15 ........ 7

Fed. R. Civ. P. 54 ........ 7, 8

# I. INTRODUCTION

This case is not moot. For numerous reasons, it is not "impossible" for this Court to grant Plaintiffs "any effectual relief whatever,'" *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)), and the simple fact that the Court "could in principle grant [at least some Plaintiffs] concrete, tangible relief," *Zukerman v. United States Postal Serv.*, 961 F.3d 431, 444 (D.C. Cir. 2020) (quotation omitted), means this case remains alive and justiciable. This is true even as to Plaintiffs' claims challenging the Title 42 Process (as distinct from the Haitian Deterrence Policy). Even if those claims were technically moot (they are not), they are subject to a mootness exception under either the "voluntary cessation" or the "capable of repetition yet evading review" doctrines.

# II. ARGUMENT

All of Plaintiffs' claims remain live, not moot, as the Court can still grant effectual relief to Plaintiffs. That is all that is required to keep this case alive; although this Court is fully empowered to award Plaintiffs their requested relief, it need not definitively rule on the precise contours of its authority in order to conclude that this case is not moot. Finally, even if Plaintiffs' claims challenging the Title 42 Process, in particular, were technically moot (they are not), a mootness exception applies such that they remain justiciable.

## A. This Case Is Not Moot Because the Court Can Still Grant Effectual Relief to Plaintiffs.

"[A] case becomes moot only if, assuming the plaintiff prevails, 'it is impossible for a court to grant [the plaintiff] any effectual relief whatever.'" *Almaqrami*, 933 F.3d at 779 (quoting *Chafin*, 568 U.S. at 172). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin*, 568 U.S. at 172 (quoting *Knox v. Service Employees*, 567 U.S. 298, 307–08 (2013)); *see also N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1258 (D.C. Cir. 2020) (to render a case moot, "events subsequent to the filing of the complaint [must] 'have so transpired that the decision will neither presently affect the parties' rights nor have

a more-than-speculative chance of affecting them in the future'" (quoting *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 978 (D.C. Cir. 2016))).

To evaluate whether a case is moot, the Court should "assume that the plaintiff will prevail" and that "the relief sought is legally available"—and "if there is 'any chance' that relief will be effective in securing what [the plaintiff] seeks," then the dispute is not moot. *Almaqrami*, 933 F.3d at 779 (cleaned up) (first quoting *Chafin*, 568 U.S. at 174, then quoting *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019)). Put otherwise, the Court "should *assume* that the alleged wrong was committed and that the alleged harm occurred, and ask only whether intervening events completely dispel the harm that plaintiff alleges." *Doe v. Harris*, 696 F.2d 109, 113 n.7 (D.C. Cir. 1982); *see also id.* (explaining that "mootness must be determined solely by reference to the allegations of the complaining party" (quotation omitted)). Establishing mootness is thus a "high bar"—and a party contending that a case is moot bears a "heavy burden" of proving that no live controversy exists. *N. Am. Butterfly*, 977 F.3d at 1259 (first quoting *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016), then quoting *Hardaway*, 843 F.3d at 979).

"[M]ootness" thus "turns on whether [the plaintiffs'] injury . . . can be properly recompensed by the relief requested." *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 805 (D.C. Cir. 1985). Here, for at least three reasons, Plaintiffs continue to request relief that, if granted, would benefit them—such that it is not "impossible for [the] court to grant [Plaintiffs] any effectual relief whatever." *Almaqrami*, 933 F.3d at 779 (cleaned up) (quoting *Chafin*, 568 U.S. at 174). Accordingly, for each and every one of the reasons below, Plaintiffs' claims are not moot. *See, e.g.*, *id.* at 783 (notwithstanding expiration of challenged executive order, case was not moot in light of "the potential viability of Plaintiffs' theories of relief"); *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (dispute was not moot as the plaintiff "has not yet received all the relief he sought in his lawsuit").

**1. Plaintiffs Will Benefit from an Order Facilitating Their Return to the United States.**

*First*, three Individual Plaintiffs who remain outside the United States will benefit from an "order allowing each of the Individual Plaintiffs and [proposed] class members to return to the United States and requiring Defendants to facilitate return, . . . so that Individual Plaintiffs may pursue their asylum claims in the United States." Complaint (Dkt. 1) ("Compl.") (prayer) at 84 ¶ h; *see also* July 13, 2022 Decl. of Nicole Phillips (Dkt 38-1) ¶ 8. As a precondition to such relief, these Individual Plaintiffs also seek an order declaring unlawful the manner in which Plaintiffs were expelled and/or deported from the United States. *See* Compl. (prayer) at 84 ¶ c–d. Because "there is some chance that this relief would be effective at securing plaintiffs' immigration to the United States, th[e] suit remains live." *Almaqrami*, 933 F.3d at 784 (quotation omitted); *see also, e.g.*, *Igiebor v. Barr*, 981 F.3d 1123, 1130 (10th Cir. 2020) (holding that the mere "potential [that a migrant could] be restored to his pre-removal condition"—even if that "potential" is not a "guarantee"—is "sufficient to prevent the [migrant's] case from being moot"); *Asai v. Castillo*, 593 F.2d 1222, 1224 n.2 (D.C. Cir. 1978) (case was not moot insofar as the relief requested "might affect [immigrants'] future status with respect to re-entry into the United States under the immigration laws").

**2. Plaintiffs Will Benefit from an Order Enjoining the Haitian Deterrence Policy.**

*Second*, Plaintiffs stand to separately benefit from an order "enjoining Defendants from applying the Haitian Deterrence Policy to Plaintiffs and [proposed] class members." Compl. (prayer) at 84 ¶ g. Although Title 42 has terminated, the Haitian Deterrence Policy is separate and distinct, *see id.* ¶¶ 60, 179, and the government has offered no basis to conclude that the Haitian Deterrence Policy has likewise been terminated, rescinded, or modified (nor are Plaintiffs aware of any reason to reach such a conclusion). *See Almaqrami*, 933 F.3d at 783 (expiration of challenged executive order did not moot separate challenge to guidance memo, where the record did not conclusively establish that guidance memo "expired by its own terms along with [the

challenged executive order]"); *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 627 n.5 (2018) ("Because the [challenged rule] remains on the books for now, the parties retain 'a concrete interest' in the outcome of this litigation, and it is not 'impossible for a court to grant any effectual relief . . . to the prevailing party.'" (quoting *Chafin*, 568 U.S. at 172, 133 S. Ct. 1017))); *cf. also Jibril v. Mayorkas*, 20 F.4th 804, 812 (D.C. Cir. 2021) ("[E]ven if a party receives relief on a particular claim, this does not moot the party's challenge to [a distinct] policy or practice that gave rise to the lawsuit").

This court has already recognized that one core aspect of "this case challenges the Haitian Deterrence Policy and how it was applied to Haitian asylum seekers at the Del Rio Encampment," June 14, 2022 Mem. Opinion & Order (Dkt. 29) at 8, which is an issue separate from Plaintiffs' challenges to the Title 42 Process. While Plaintiffs in part allege that Defendants used the Title 42 Process to further the Haitian Deterrence Policy (*see, e.g.*, Compl. ¶ 8), "[r]ather than challenging the [Title 42] regulations which were [terminated] by the defendants, the plaintiffs here rely [only] in part on those regulations to challenge [the] practices of the defendants," *Haitian Refugee Center v. Civiletti*, 503 F. Supp. 442, 466 (S.D. Fla. 1980), *judgment modified*, *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023 (5th Cir. 1982). Despite President Biden's promises to restore dignity and compassion to the U.S. asylum system, senior White House and Department of Homeland Security officials created the Haitian Deterrence Policy to weaponize the immigration enforcement system against Haitian migrants to suppress the growing number of Haitians arriving at the border and to deter them from seeking protection in the United States in the future. *See* Compl. ¶¶ 60, 72, 124. This Haitian Deterrence Policy was applied to Haitian asylum seekers in Del Rio, where the government subjected individuals to deplorable conditions while in government custody, was deliberately indifferent to humanitarian concerns, and focused on expelling Haitian asylum seekers as quickly as possible. *See id.* ¶¶ 79–121, 124. Pursuant to that policy, U.S. officials refused to prepare sufficient infrastructure, personnel, and resources in Del Rio to provide for migrants' basic necessities, and they also directed the expedited, mass expulsions of migrants to deter other Haitians from seeking asylum in the United States. *See id.* ¶¶ 68–72, 122–27.

In other words, while Defendants' application of the Title 42 Process at Del Rio in 2021 did harm Plaintiffs insofar as it caused their detention and summary expulsion from the United States, "U.S. officials' abuse of Haitians in Del Rio did not stop with the Title 42 Process." Compl., ¶ 8. Many of Defendants' actions in Del Rio were not part of the Title 42 process, but rather were implemented as part of the Haitian Deterrence Policy to deter Haitians from coming to the border to seek asylum. *See id.* ¶ 72. "[B]lock[ing] efforts to prepare for the arrival of thousands of Haitian asylum seekers in Del Rio, including ensuring the presence of sufficient infrastructure, personnel, and resources to meet Haitians' basic needs and provide adequate screenings for relief required by law," *id.*, was not part of Title 42, but was part of the Haitian Deterrence Policy. Moreover, there is no indication that the Haitian Deterrence Policy has terminated.

The new asylum procedures recently promulgated by Defendants in fact auger a continuation of the Haitian Deterrence Policy. A final rule called "Circumvention of Lawful Pathways," recently adopted by the Department of Homeland Security ("DHS") and the Department of Justice following a short notice-and-comment period, is expressly designed to address the "concern about the possibility of a surge in irregular migration upon, or in anticipation of" the end of Title 42 and the potential for increased migrants from Haiti, among other countries.[1] The rule, which is now being enforced, imposes a "rebuttable presumption of asylum ineligibility" to noncitizens who enter the United States without authorization at the southwest border as well as "adjacent coastal borders."[2] In other words, the proposed regulation would enable Defendants

[1] *See* Federal Register, "Circumvention of Lawful Pathways," at pp. 31,316, 31,319, 31,341–42 (May 11, 2023) (available at https://www.federalregister.gov/documents/2023/05/16/2023-10146/circumvention-of-lawful-pathways).

[2] Federal Register, "Circumvention of Lawful Pathways," *supra*, at pp. 31,317. Notably, the "adjacent coastal borders" language was not in the *proposed* rule, and its inclusion in the *final* rule will have a disproportionate impact of Haitians who, along with Cubans, constitute the largest population of asylum-seekers attempting to reach the United States by sea. *Compare id., with* Federal Register, "Circumvention of Lawful Pathways," at pp. 11705–06, 11708 (Feb. 23, 2023) (available at https://www.federalregister.gov/documents/2023/02/23/2023-03718/circumvention-

to continue the same methods of deterring Haitian asylum seekers, even without Title 42. *See Haitian Refugee Center*, 503 F. Supp. at 465 (holding that challenge to a prior administration's "systematic program designed to deport Haitians without regard to the merits of their individual asylum claims" was not moot as the same policy could "easily be transferred to the new asylum procedures" recently promulgated by the defendants).

Thus, the termination of Title 42, without more, "does not conclusively put an end to all of [the government's] challenged conduct," *N. Am. Butterfly*, 977 F.3d at 1258, as there is no basis to conclude that the Haitian Deterrence Policy has similarly been terminated. *See also Int'l Union of Bricklayers*, 761 F.2d at 806 (holding that litigation was not moot where the challenged policy "has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests" of Plaintiffs (quoting *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1974))). And, because of the nature of the Haitian Deterrence Policy, "a court order instructing the government to stop implementing" it would aid Plaintiffs' effort in "securing their immigration to the United States" to at least some degree. *Almaqrami*, 933 F.3d at 779-80; *see also id.* at 784 (even assuming, *arguendo*, that "the court's order would almost certainly have no real world consequences" a case is not moot so long as "there is some chance that th[e] relief would" aid some plaintiff (quoting *Del. Riverkeeper Network v. FERC*, 857 F.3d 388, 397 (D.C. Cir. 2017))); *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1661 (2019) (explaining that "courts often adjudicate disputes whose 'practical impact' is unsure at best" (quoting *Chafin*, 568 U.S. at 175)).

---

of-lawful-pathways). The inclusion of this language in the final rule is also striking in light of a new effort by DHS to expressly *exclude* Haitians interdicted at sea from eligibility for a recently announced parole process for Haitians. *See* Federal Register, "Implementation of a Change to the Parole Process for Haitians," at pp. 26,328 (Apr. 28, 2023) (available at https://www.federalregister.gov/documents/2023/04/28/2023-09014/implementation-of-a-change-to-the-parole-process-for-haitians).

### 3. Plaintiffs Will Benefit from an Order Requiring the Government to Afford Them the Statutory and Procedural Protections that They Are Due and Would Have Received Absent the Wrong They Suffered.

*Third*, the Individual Plaintiffs also stand to benefit from an order "affording them the statutory and procedural protections to which they are eligible under the U.S. asylum process and applicable laws." Compl. (prayer) at 84 ¶ h. As with a previous litigation four decades ago, "the essence of the complaint in this case is that . . . defendants adopted a systematic program designed" to deny Haitians proper adjudication of "the merits of their individual asylum claims." *Haitian Refugee Center*, 503 F. Supp. at 465; *see, e.g.*, Compl. ¶ 60; Pls. Opp'n to Defs.' MTD (Dkt. 38) at 2–7. And, the constitutional and statutory "rights which the plaintiffs seek to vindicate have not been in any manner extinguished" by the expiration of Title 42. *Haitian Refugee Center,* 503 F. Supp. at 465. The "mere fact" that Defendants have put in place a new process by which some migrants may be able to seek asylum (if they surmount a number of new hurdles erected by Defendants),[3] "does not indicate that the defendants have abandoned any plan to effect deportation of Haitians despite their assertedly valid asylum claims; [instead,] the plaintiffs may properly suspect that defendants have merely shifted the focus of their plan to a new setting." *Id.* at 465–66. Accordingly, Plaintiffs would benefit from an injunction securing their statutory and procedural rights, including to claim and apply for asylum, without unlawful subversion by the Defendants.

For similar reasons, Plaintiffs would also benefit from an injunction requiring Defendants to "submit for the court's approval a detailed plan providing for the orderly, case-by-case, nondiscriminatory and procedurally fair []processing of the plaintiffs' asylum" claims, and,

[3] The "Circumvention of Lawful Pathways" regulation proposes new barriers for entry to avoid the rebuttable presumption of asylum ineligibility—including requiring migrants to secure appointments (of which there are a limited number available) through a "CBP One" mobile application, or to establish that the asylum seeker sought asylum in another country on their way to the United States and received a final decision denying the application. *See* Federal Register, "Circumvention of Lawful Pathways," *supra*, at pp. 31,314–17.

further, prohibiting Defendants from attempting to expel or deport Plaintiffs "until such time as the court has approved the defendants' plan." *Id.* at 532–33; *see also* Compl. (prayer) at 84 ¶ k (seeking an "order granting such further relief as the Court deems just, equitable, and proper").[4]

In short, this case is a far cry from one in which the Defendants have "already done all that a court might otherwise have ordered [them] to do." *Doe v. Harris*, 696 F.2d at 114 n.9. Because this Court "could in principle grant [plaintiffs] concrete, tangible relief," it is "not *impossible* for the court to provide 'any effectual relief whatever.'" *Zukerman*, 961 F.3d at 444 (quoting *Knox*, 567 U.S. at 307). Equally, there is no basis to conclude that Defendants, should they contend that this case is moot, can "carry [their] 'heavy' burden to demonstrate mootness." *WildEarth Guardians v. Env'tl Prot. Agency*, 830 F.3d 529, 538 (D.C. Cir. 2016) (quotation omitted)).[5]

Whether this court has "the authority to award plaintiffs relief is a merits question" that is generally irrelevant to whether a case is moot. *Almaqrami*, 933 F.3d at 776; *see also, e.g.*, *id.* at 781 (explaining that any "argument which goes to the legal availability of a certain kind of relief

[4] The Court may award Plaintiffs this relief even though it is not specifically requested in the complaint. *See Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 66 (1978) ("[O]missions [in a prayer for relief] are not in and of themselves a barrier to redress of a meritorious claim"); *see also* Fed. R. Civ. P. 15(a)(2) (providing that a court should "freely" grant leave to amend a complaint where "justice so requires"); Fed. R. Civ. P. 54(c) (providing that a party's failure to demand particular relief "in its pleadings" does not automatically preclude the party from seeking that relief later in the litigation); 10 Wright & Miller, Fed. Prac. & Proc. Civ. § 2662 (4th ed. Apr, 2023 Update) (explaining that the "liberal amendment policy of Rule 15, combined with Rule 54(c)," mean that a party can still "secur[e] a remedy other than that demanded in the pleadings").

[5] For these reasons, none of the claims set forth in the Complaint are moot. On June 16, 2023, or as soon thereafter as possible, Plaintiffs also intend to move for leave to file a supplemental complaint that will address material intervening developments both in immigration policy more generally as well as in the lives of the Individual Plaintiffs, which will further crystallize the ways in which the instant dispute is not moot. To be clear, while Plaintiffs believe that the supplemental complaint will be helpful to the Court, this Court need not await Plaintiffs' motion for leave to file the supplemental complaint to determine that this case is not moot. Further, while a court may permissibly take into account allegations in a "supplemental complaint" to determine whether a plaintiff's "injury persists and can be relieved by an appropriate court order," *Zukerman*, 961 F.3d at 443, a court may not "place on [the plaintiff] the burden of proving harm to avoid dismissal of his claims as moot," *Doe v. Harris*, 696 F.2d at 113 n.7.

confuse[s] mootness with the merits" (cleaned up) (quoting *Chafin*, 568 U.S. at 174)); *Decker v. Nw. Env'tl Def. Ctr.*, 568 U.S. 597, 609 (2013) ("The District Court, it is true, might rule that [certain] arguments lack merit, or that the relief [sought] is not warranted on the facts . . . . That possibility, however, does not make the cases moot."); *Doe v. Harris*, 696 F.2d at 112 ("[W]hether injunctive relief should be granted is a question distinct from mootness."). Regardless, should Plaintiffs prevail on their claims, Plaintiffs submit that they will be able to establish entitlement to at least some of their requested relief. "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad[.]" *Haitian Refugee Ctr.*, 503 F. Supp. at 467 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15–16 (1971))). And particularly in the wake of a constitutional violation (such as the Government's Equal Protection and Due Process violations alleged in this case), "the Court's remedy . . . [should] place Plaintiffs in the same position had the constitutional violation not occurred." *Lightfoot v. D.C.*, 355 F. Supp. 2d 414, 439 (D.D.C. 2005).[6]

[6] Numerous courts addressing violations of immigrants' rights have awarded relief akin to what Plaintiffs are requesting here. *See, e.g.*, *Grace v. Whitaker*, 344 F. Supp. 3d 96, 105 (D.D.C. 2018) ("order[ requiring] the government to return to the United States the plaintiffs who were unlawfully deported and to provide them with new credible fear determinations consistent with the immigration laws"); *Ramirez-Chavez v. Holder*, No. 11-72297 (9th Cir. Order of April 10, 2012) (requiring the government to "make substantial . . . attempts to locate [an unlawfully deported immigrant] and to return him to this country" and to file regular status reports that "describe[] in detail all efforts made . . . to locate and return [them], using every contact and address at their disposal"); *Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 404–05 (S.D.N.Y. 2004) ("Fong should promptly be returned to the jurisdiction of this court, to comply with the Order of this court."); *Almaqrami*, 933 F.3d at 59 (requiring the government "to do what [i]s necessary to issue" a visa or a green card to a noncitizen plaintiff (citing *Marcetic v. INS*, 1998 WL 173129, at *2 (N.D. Ill. Apr. 6, 1998))); *Haitian Refugee Ctr.*, 503 F. Supp. at 467, 532 (awarding "injunctive relief [that] would contribute to the proper processing of Haitian asylum applications," including relief that would require "a rehearing of asylum claims before immigration judges" or the submission of "a detailed plan providing for the orderly, case-by-case, nondiscriminatory and procedurally fair reprocessing of the plaintiffs' asylum applications," and "declaratory relief [recognizing that t]he plaintiffs' constitutional, statutory, treaty, and administrative rights were violated").

### B.  Even If This Case Were Technically Moot in Some Respects, a Mootness Exception Applies Such That It Remains Justiciable.

Even if Plaintiffs' claims as to the Title 42 Process were technically moot (they are not), the sunsetting of Title 42 does not render those claims nonjusticiable pursuant to either of two related exceptions to mootness: the voluntary cessation exception and the exception for actions "capable of repetition yet evading review." *Clarke v. United States,* 915 F.2d 699, 703 (D.C. Cir. 1990). Although the Title 42 Process has sunset and is no longer being enforced, Defendants have not sustained their "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (cleaned up). The recent cessation of the Title 42 Process occurred due to President Biden's decision to allow the expiration of the COVID-19 public health emergency declaration, which constituted the public health basis upon which the order purported to rest. Because, as the U.S. Centers for Disease Control and Prevention ("CDC") has *admitted*, Defendants could re-implement the Title 42 Process against Plaintiffs if the public health landscape changes, the Title 42 claims should not be dismissed.

#### 1.  Voluntary Cessation

"Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) (cleaned up). Where, as here, the defendants voluntarily discontinue some of the conduct at issue, the case is mooted as to that conduct only if the defendants show that "(1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998) (quotation omitted); *see also Sadat I. v. Nielsen*, 2019 WL 108854, at *4 (D.D.C. Jan. 4, 2019) (citing cases holding that "temporary relief does not moot a challenge to an immigration-related policy where the plaintiffs may be re-exposed to that policy"). Defendants' burden to demonstrate that a wrong will not be repeated "is a heavy one." *United States v. W. T. Grant Co.*,

345 U.S. 629, 633 (1953). As discussed *supra* at Part II.A, Plaintiffs' claims are not moot because the Court can still grant effectual relief to Plaintiffs to redress the harms they suffered because of the Title 42 Process. Additionally, Defendants cannot establish that there is no reasonable expectation that the Title 42 Process could not be promulgated again. To the contrary, the CDC has stated that "[i]f, for example, there is a substantial change in the public health situation with respect to the pandemic, such as due to new and particularly concerning SARS-CoV-2 variants, CDC could determine a new order under 42 U.S.C. §§ 265, 268 and 42 C.F.R. § 71.40 is necessary."[7] *See also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (concluding that challenge to pandemic-related restrictions was "clear[ly] . . . not moot" where government had eased restrictions due to the evolving circumstances surrounding the virus underlying COVID-19 (citing *Laidlaw*, 528 U.S. at 189)). Moreover, Defendants persist in their position that they retain lawful authority to employ Title 42 against Plaintiffs and the proposed class in the future. *See* Defs.' Opp'n to Pls.' Mot. for Partial Summary Judgment, *Huisha-Huisha v. Mayorkas*, Case 1:21-cv-00100-EGS (D.D.C. Aug. 31, 2022), ECF No. 142 at 9–12 (arguing that "Congress committed the decision to issue, modify, or terminate a Title 42 order to CDC's discretion" and "to the CDC Director's judgment").

Because Defendants have not (and cannot) carry their burden to establish that there is "no expectation" of the Title 42 Process being reintroduced in the future (since, as the CDC has admitted, it may very well be re-implemented depending on evolving public health conditions), the current cessation of the policy does not moot Plaintiffs' claims. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017) (applying mootness exception in the

---

[7] CDC, "Public Health Determination and Order Regarding the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exist" (Apr. 1, 2022) (*available at* https://www.cdc.gov/media/releases/2022/s0401-title-42.html); *accord* Federal Register, "Public Health Determination and Order Regarding Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists," at pp. 19,955 (Apr. 6, 2022) (available at https://www.federalregister.gov/documents/2022/04/06/2022-07306/public-health-determination-and-order-regarding-suspending-the-right-to-introduce-certain-persons).

context of shifting public health circumstances related to the virus underlying COVID-19, as "there is no clearly effective barrier that would prevent the Department from reinstating its policy in the future" (cleaned up)); *see also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) (applying mootness exception where repeal of the challenged language "would not preclude [the city] from reenacting precisely the same provision"); *Sadat I.*, 2019 WL 108854, at *3 (applying mootness exception to immigration detention case where "Defendants have submitted no evidence that they have permanently halted or altered the alleged policy, and they have repeatedly admitted" that the policy could be invoked again).

**2. Capable of Repetition, Yet Evading Review**

The Title 42 Process challenged by Plaintiffs is sufficiently short in duration to evade review: it expired approximately three years after it was enacted and less than two years since its application to Plaintiffs and the proposed class in Del Rio. *See McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conf. of the United States*, 264 F.3d 52, 55 (D.C. Cir. 2001) ("Both the Supreme Court and this court have held that 'orders of less than two years' duration ordinarily evade review,'" and assuming the same would apply to an order of three years' duration (quoting *Burlington Northern R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996))). The nature of the Title 42 Process is also inherently transitory, as its purported rationale is based on the presence of particular public health circumstances—circumstances that are temporary, unpredictable, and could (as the CDC has recognized) reasonably arise again. *See J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019) (concluding that challenged government action can be inherently transitory even if it lasts for longer than a year); *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 68.

There is also a reasonable expectation that Defendants could re-promulgate Title 42, particularly in light of the CDC's statement reflecting that the ever-evolving virus underlying COVID-19 might, in the government's view, warrant re-implementing Title 42. *See supra* Part II.B.1; *see also, e.g.*, *N. Am. Butterfly*, 977 F.3d at 1258 (finding case not moot where DHS maintained its authority to continue the challenged conduct); *Doe v. Harris*, 696 F.2d at 110

("Since the defendants stand on the legality of their conduct, it seems probable that they would follow the same course. . . . Thus, we think there is a reasonable expectation that this plaintiff will again be subjected to conduct he alleges to be unlawful."); *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324–25 (D.C. Cir. 2009) (applying mootness exception where there was a reasonable expectation that the legal wrong at issue, the agency's violation of a federal statute, could recur). Because Plaintiffs and the proposed class have a reasonable expectation that Defendants could subject them to the Title 42 Process again, their claims challenging the policy are not moot.[8]

## III. CONCLUSION

For the foregoing reasons, the Court should conclude that none of Plaintiffs' claims are moot, discharge the May 12, 2023 Order to Show Cause, and proceed to rule on Defendants' Motion to Dismiss.

[8] The reasonable expectation of recurrence of Title 42 means that Plaintiffs stand to benefit from an order "enjoining Defendants from applying the Title 42 Process to Individual Plaintiffs and [proposed] class members." Compl. (prayer) at 84 ¶ g. For this additional reason, the dispute is not moot to begin with. *See also supra* Part II.A. Because "the threat remains" that the unlawful Title 42 Process may be reintroduced—and thus "lead to future deprivation of [Plaintiffs'] rights"—Plaintiffs' request for an injunction against the application of Title 42 Process to Plaintiffs remains a "live controversy." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 534–35 (D.C. Cir. 2015); *see also, e.g.*, *Leonardson v. City of East Lansing*, 896 F.2d 190, 194 (6th Cir. 1990) (despite expiration of challenged ordinance, Plaintiffs' request for an injunction was not moot because "a similar event could cause its reenactment"); *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 68 (similar, in the context of a challenge to an executive order imposing (and then removing) restrictions due to the virus underlying COVID-19).

DATED: June 2, 2023

Respectfully submitted,

/s/ *Alexander L. Schultz*
Alexander L. Schultz

**Stephen Manning** (OR0024)
stephen@innovationlawlab.org
**Tess Hellgren** (OR0023)
tess@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 922-3042
Facsimile: +1 503-882-0281

**Nicole Phillips** (*pro hac vice*)
nphillips@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4265 Fairmount Avenue, Suite 280
San Diego, CA 92105
Telephone: +1 949 603-5751

**Lauren M. Wilfong** (NJ0014)*
lauren.wilfong@justiceactioncenter.org
**Esther H. Sung** (CA00132)
esther.sung@justiceactioncenter.org
**Jane Bentrott** (DC Bar No. 1029681)
jane.bentrott@justiceactioncenter.org
**Karen C. Tumlin** (CA00129*)*
karen.tumlin@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944
Facsimile: +1 323 450-7276

**Stanley Young** (CA00146)
syoung@cov.com
**Matthew E. Delgado** (CA Bar No. 306999) (*pro hac vice*)
mdelgado@cov.com
COVINGTON & BURLING, LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: +1 650 632-4704

**Alexander L. Schultz** (DC Bar No. 1618410)
aschultz@cov.com
COVINGTON & BURLING, LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: +1 424 332-4788

**Maura A. Sokol** (DC Bar No. 1672674)
msokol@cov.com
COVINGTON & BURLING, LLP
850 Tenth Street, NW
Washington, DC 20001
Telephone: +1 202 662-5528

**Not admitted to practice law in California*

*Counsel for Plaintiffs*