UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAITIAN BRIDGE ALLIANCE *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN,<br>President of the Unites States, *et al.*,<br><br>Defendants. | Civil Action No. 21-3317 (JMC) |

### DEFENDANTS' COMBINED RESPONSE TO PLAINTIFFS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT

By and through undersigned counsel, Defendants respectfully submit this combined response to Plaintiffs' Response to the Court's May 12, 2023 Order to Show Cause ("Response"; ECF No. 56) and opposition to Plaintiffs' Motion for Leave to File a Supplemental Complaint ("Leave Motion"; ECF No. 55).

In issuing its Order to Show Cause, the Court correctly identified an insurmountable barrier to justiciability. The Government policy being challenged by Plaintiffs—the use of authority granted under Title 42 of the U.S. Code to suspend entry of covered noncitizens—has expired. Accordingly, Plaintiffs' claims challenging that policy and how that policy was implemented with respect to Haitian migrants in September 2021 are moot. Rather than concede that there is no longer a "live controversy," as required by Article III of the Constitution, Plaintiffs argue that they could benefit from new relief in relation to new Government policies. This only further demonstrates the mootness of the existing suit.

Alternatively, Plaintiffs contend that two exceptions to the mootness doctrine apply. Yet Plaintiffs cannot establish that there is a reasonable expectation that the exact same policy under Title 42—"based on the presence of particular public health circumstances" that Plaintiffs concede are "unpredictable"—will recur, which is a requirement of both exceptions. For this and other reasons, Plaintiffs are unable to demonstrate that these exceptions apply.

Finally, Plaintiffs' Motion for Leave to file a Supplemental Complaint should be denied as both a futile and inappropriate effort to avoid mootness by transforming the litigation into one that seeks new relief from new Government policies.

## BACKGROUND

When Individual Plaintiffs attempted to cross the border at Del Rio, Texas, in September 2021, Individual Plaintiffs were subject to an August 5, 2021 order of the Centers for Disease Control and Prevention ("CDC"). *See* 86 Fed. Reg. 42,828 (Aug. 5, 2021). That order was issued pursuant to authority provided by Title 42 of the U.S. Code and specifically 42 U.S.C. § 265. The August 5, 2021 order had continued from previous CDC orders a temporary suspension of the right to introduce into the United States "covered noncitizens" who would otherwise be introduced into a congregate setting in a Port of Entry or U.S. Border Patrol station, such as "noncitizens who are apprehended at or near the border seeking to unlawfully enter the United States[.]" 86 Fed. Reg. at 42,281. Importantly for the present issues before the Court, the Order established terms for its own expiration or termination:

> This Order will remain in place until either the expiration of the Secretary of HHS' declaration that COVID–19 constitutes a public health emergency, or the CDC Director determines that the danger of further introduction of COVID-19 into the United States has declined such that continuation of the Order is no longer necessary to protect public health, whichever occurs first.

*Id*. at 42,829.

On April 1, 2022, the CDC Director issued an order terminating all its prior Title 42 orders prohibiting the introduction of certain noncitizens into the United States. *See* 87 Fed. Reg. 19,941 (Apr. 6, 2022). The termination order, by its terms, was to take effect on May 23, 2022. *Id*. The CDC's termination order, however, was preliminarily enjoined on a nationwide basis on May 20, 2022, as a consequence of lawsuits filed by a collection of States' Attorneys General. *See Louisiana v. CDC*, Civ. A. No. 22-00885 (W.D. La.), Preliminary Injunction Order, ECF No. 91 (May 20, 2022). The Government appealed that ruling to the Fifth Circuit, *see Louisiana v. CDC*, No. 22-30303 (5th Cir.), but the preliminary injunction remained in place while the appeal was pending. Thus, the CDC's August 5, 2021 order continued to be enforced.

Thereafter, a separate group of plaintiffs representing a class of families subject to Title 42 moved for partial summary judgment before another judge in this District on their claims that the CDC's regulation and various orders implementing that regulation were arbitrary and capricious under the Administrative Procedure Act ("APA"). *See Huisha-Huisha v. Mayorkas*, Civ. A. No. 21-100 (EGS). The district court granted plaintiffs' motion, vacated and set aside the CDC's regulation and orders under Title 42, and permanently enjoined the Government from applying the rule and orders to those plaintiffs and class members. *See Huisha-Huisha v. Mayorkas*, --- F. Supp. 3d ----, 2022 WL 16948610 (D.D.C. Nov. 15, 2022). Upon entry of a partial final judgment under Rule 54(b), the Government appealed to the D.C. Circuit. *See Huisha-Huisha v. Mayorkas*, No. 22-5325 (D.C. Cir.).

A group of nineteen States moved to intervene in the *Huisha-Huisha* appeal and for a stay of the district court's judgment pending appeal. The D.C. Circuit denied both motions on December 16, 2022. *Huisha-Huisha v. Mayorkas*, No. 22-5325, 2022 WL 19653946 (D.C. Cir. Dec. 16, 2022). The States then petitioned the Supreme Court to review the D.C. Circuit's order

denying intervention and stay motion. On December 27, 2022, the Supreme Court granted the petition for review and stayed the district court's order and injunction pending further judgment by the Court. *Arizona v. Mayorkas*, S. Ct. No. 22-A-544, 2022 WL 17957850 (Dec. 27, 2022).

On May 11, 2023, the Secretary of Health and Human Services' declaration of COVID-19 constituting a public health emergency expired, which, as noted above, caused CDC's August 5, 2021 order to likewise expire by its terms.[1] In light of this development, on May 18, 2023, the Supreme Court vacated the D.C. Circuit's order denying the nineteen States' motion to intervene and remanded the case to the D.C. Circuit "with instructions to dismiss the [intervention] motion as moot." *Arizona v. Mayorkas*, 143 S. Ct. 1312 (May 18, 2023). Accompanying the Supreme Court's order was a statement by Justice Gorsuch noting that "any dispute over [the Title 42 orders] is moot" in light of the expiration of the COVID-19 health emergency. *Id*. at 1314. On June 16, 2023, the Government moved the D.C. Circuit to vacate the district court's judgment and remand with instruction to dismiss this case as moot. *Huisha-Huisha v. Mayorkas*, No. 22-5325, Mot. to Vacate (June 16, 2023). The *Huisha-Huisha* plaintiffs disagree with vacatur of the district court's judgment but agree that their case is moot. *Id*., Opp. to Mot. to Vacate (June 26, 2023).

In the Fifth Circuit, on June 13, 2023, the court concluded that "[i]n light of subsequent events, the [Western District of Louisiana's] preliminary injunction has now become moot." *Louisiana v. CDC*, No. 22-30303 (5th Cir.), Court Order (June 13, 2023). Therefore, the Fifth Circuit vacated the preliminary injunction and remanded to the district court "with instructions to dismiss the case as moot." *Id*. On June 14, 2023, the district court in the Western District of

---

[1] The public health emergency declaration by the Secretary is authorized under 42 U.S.C. § 247d, and by statute expires after 90 days unless renewed. 42 U.S.C. § 247d(a). The last public health emergency declaration renewal occurred on February 9, 2023. *See* Renewal of Determination That a Public Health Emergency Exists (Feb. 9, 2023), *available at* https://aspr.hhs.gov/legal/PHE/Pages/COVID19-9Feb2023.aspx.

Louisiana "dismissed as moot" the States' case challenging the CDC's April 1, 2022 order. *Louisiana v. CDC*, Civ. A. No. 22-00885 (W.D. La.), Judgment (June 14, 2023).

## ARGUMENT

### I.   Plaintiffs' Case is Moot

Article III of the Constitution restricts the power of federal courts to "Cases" and "Controversies." The case or controversy requirement "subsists through all stages of federal judicial proceedings." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citations omitted). "There is thus no case or controversy, and a suit becomes moot, 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* In their Response, Plaintiffs focus only on the second half of that formulation—whether they still have an "interest" in and would "benefit from" various forms of relief—but ignore the dispositive question of whether Plaintiffs' challenge to the Title 42 Process and the so-called "Haitian Deterrence Policy" alleged "to apply the Title 42 Process in a way that subjected Haitian asylum seekers in Del Rio to deplorable conditions," Compl. ¶ 8, remains a live controversy. Given the expiration of the CDC orders issued under 42 U.S.C. § 265, Plaintiffs have not demonstrated and cannot demonstrate that the Complaint's challenge to Title 42 remains a live controversy.

It is well-settled that the end or expiration of a challenged policy or practice will generally moot the legal challenge thereto. For example, when provisions of Executive Order 13,780 suspending the entry of noncitizens "expired," the Supreme Court ruled that the action challenging those provisions "no longer presents a 'live case of controversy." *Trump v. Hawaii*, 138 S. Ct. 377 (2017) (remanding "with instructions to dismiss as moot the challenge to Executive Order No. 13,780"); *Trump v. Int'l Refugee Assistance*, 138 S. Ct. 353 (2017) (same). Similarly, when the Navy abandoned a certain policy for choosing chaplains, the action challenging that policy became moot. *See Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008); *see also Alaska v. Dep't of Agric.*,

17 F.4th 1224, 1226 (D.C. Cir. 2021) ("Finding a case 'plainly moot' when the agency order has been 'superseded by a subsequent . . . order' is so routine that our court usually 'would handle such a matter in an unpublished order.'") (citations omitted).

Because the CDC's orders under Title 42 expired and are no longer in effect, the Court "can do nothing to affect [Plaintiffs'] rights relative to [them], thus making this case classically moot for lack of a live controversy." *Akiachak Native Cmty. v. Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016) ("Because that regulation no longer exists, we can do nothing to affect Akiachak's rights relative to it[.]); *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019) ("[B]ecause the 2018 [policy] is now inoperative, a declaration that it was unlawful would amount to nothing more than an advisory opinion."); *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066, 1074 (D.C. Cir. 2012) (ruling, consistent with authority that a "challenged to a superseded law is rendered moot," that amendment of regulation over use of post office sidewalks mooted challenge to prior regulation). In accordance with this settled principle, the Supreme Court and Fifth Circuit have concluded that other cases challenging CDC's orders under Title 42 are moot. *See supra* at 4. It should be the conclusion here as well.

Plaintiffs' Response does not offer this Court any legal basis to conclude that there is a live controversy regarding the expired CDC orders. Rather, Plaintiffs rely on cases like *Almaqrami v. Pompeo*, 933 F.3d 774 (D.C. Cir. 2019), to argue that if there is "any chance" that the Court can provide relief to Plaintiffs then the case is not moot. *See* Response at 2. But the rulings in *Almaqrami* are distinguishable. In that case, plaintiffs sought an order directing the government to stop using a "Guidance Memo" for diversity visas and to process and issue their visa applications. *Id*. at 778. In contrast to the indisputable expiration of the Title 42 orders, it was not clear to the D.C. Circuit that the Guidance Memo was "no longer in force." *Id*. at 783. On the

additional question of whether the district court could issue relief regarding the processing of diversity visas beyond the end of the fiscal year, the D.C. Circuit concluded there was also a live controversy because the district court had issued a preliminary order directing the State Department to reserve unused Fiscal Year 2017 diversity visa numbers for the purposes of allowing for potential further relief. *Id*. at 781-82. Thus, when one examines the actual rulings in *Almaqrami*, it is clear the case does not aid Plaintiffs here.[2] In fact, the D.C. Circuit recognized what Plaintiffs here do not, which is that "courts generally cannot declare unlawful or enjoin policies that are no longer in force." *Id*. at 783.

In their Response, Plaintiffs then devote many pages detailing how they believe they could "benefit" from various forms of declaratory or injunctive relief, *see* Response at 3-12, yet all of those arguments suffer from the same flaw that Plaintiffs have failed to demonstrate that there remains a live controversy to support this Court's jurisdiction. For example, an order "declaring unlawful the manner in which Plaintiffs were expelled" under Title 42, *see* Response at 3, "would accomplish nothing" given that the CDC's orders expired, and such declaratory relief would "amount[] to exactly the type of advisory opinion Article III prohibits." *Larsen*, 525 F.3d at 72.

Plaintiffs also argue that they would benefit from an order "declaring the Haitian Deterrence Policy unlawful." *See* Response at 3-8. As this Court recognized in its Order to Show Cause, the alleged "Haitian Deterrence Policy" is "Plaintiff's label for the way the Title 42 Policy

---

[2] Nor do the other cases cited by Plaintiffs, as those cases share the same distinguishing feature that there was still a live controversy because, unlike here, challenged agency action was ongoing. In *North American Butterfly Association v. Wolf*, 977 F.3d 1244, 1258-59 (D.C. Cir. 2020), appropriations law that barred construction of border fencing on National Butterfly Center grounds did not moot Fifth Amendment challenges to other conduct, including widening private roadways, installing sensors, or regularly stationing CBP agents on Center property. Even more factually inapposite is *Doe v. Harris*, 696 F.2d 109, 112-13 (D.C. Cir. 1982), where a prosecutor's averment that subpoenaed psychiatric records of plaintiffs were not used contained a reservation for its potential use later.

has been applied to a certain population of Haitian migrants." *See* May 12, 2023, Minute Order; *see also* Mot. to Dismiss Mem. at 29. Putting aside the fact that how an agency implements a policy is generally not reviewable under the APA, *see id*. at 30, the expiration of the CDC orders means there is no live controversy about how the Government applies Title 42 to Haitian noncitizens who were covered by the CDC orders.

In an attempt to maintain their challenge to the so-called "Haitian Deterrence Policy," Plaintiffs rely on entirely new allegations in the proposed Supplemental Complaint where they affix the Deterrence Policy label to new government actions with which Plaintiffs disagree. *See* Supp. Compl. ¶¶ 7-33. This attempt to pivot to other government actions further demonstrates the mootness of their original case challenging the use of Title 42 to a group of Haitian migrants at Del Rio, Texas in September 2021. Plaintiffs acknowledge that "upon the sunset of Title 42" the Government adopted a new rule under Title 8 (called "Circumvention of Lawful Pathways") effective May 11, 2023—the same date as the expiration of the Title 42 orders—intended to "encourage[] migrants to avail themselves of lawful, safe, and orderly pathways into the United States, or otherwise to seek asylum or other protection in another country through which they travel[.]"[3] Response at 6. In other words, Plaintiffs admit that policies under Title 8, not Title 42, control. "The old set of rules, which are the subject of this lawsuit, cannot be evaluated as if nothing has changed. A new system is now in place. We therefore must vacate this aspect of the district court's decision as moot." *Nat'l Min. Ass'n v. Dep't of Interior*, 251 F.3d 1007, 1011 (D.C. Cir. 2001) (concluding "[a]ny opinion regarding the former rules would be merely advisory").

---

[3]    *See* "Circumvention of Lawful Pathways," 88 Fed. Reg. 31,314 (May 11, 2023) (available at https://www.federalregister.gov/documents/2023/05/16/2023-10146/circumvention-of-lawful-pathways).

As part of their attempted pivot, Plaintiffs then assert that they would benefit from "a declaration that they are exempt from the new regulations." Response at 9. Of course, such a declaration is not possible because there is no legal claim in the operative Complaint (or the Supplemental Complaint) challenging these new regulations (what Plaintiffs call an "Asylum Ban") as unlawful. There must be a "cause of action" as a basis for invoking the power of the court to redress violations of law. *See, e.g., Superior Fibre Prod., Inc. v. Dep't of Treasury*, 156 F. Supp. 3d 54 (D.D.C. 2016) (citing cases). And there must be an established violation of law before the court may exercise its powers to exercise equitable relief. Plaintiffs surely cannot disagree with this proposition as it is conceded in their Response. *See* Response at 12 (stating that relief is available *once* a violation of law has been shown).

And though the Response and the proposed Supplemental Complaint attempt to pivot to new concerns unrelated to Title 42 and the events at Del Rio, Texas, and seek entirely new forms of declaratory and equitable relief, *see* Supp. Compl., Prayer ¶¶ a-d, it appears the actual named Plaintiffs have received the most tangible forms of injunctive relief that they sought in their original Complaint, namely access to the United States and the ability to pursue claims for humanitarian protection or asylum. *See* Compl., Prayer ¶¶ h, i. Between April and May 2022, Plaintiffs Esther and Emmanuel Doe, Samuel and Samentha Doe, and Paul Doe received "grants of humanitarian parole into the United States" and later "filed their Form I-589 Applications for Asylum and for Withholding of Removal" during the period the CDC orders were in effect and while Plaintiffs allege there was a "Haitian Deterrence Policy" in place. Supp. Compl. ¶ 45 Through U.S.-based sponsors, Plaintiffs Mirard Joseph, Madeleine Prospere, and Jacques Doe submitted applications for Haitian Parole in January 2023. *Id*. ¶ 44. Plaintiffs Mayco Celon and Veronique Cassonell received "grants of humanitarian parole into the United States in July 2022"

and "are preparing to file their Form I-589 Applications for Asylum and for Withholding of Removal." *Id.* ¶ 46.  Likewise, Plaintiff Wilson Doe and his wife Wideline received humanitarian parole into the United States in March 2023 and have the ability to seek asylum. *Id.* ¶ 46.

Thus, not only have Plaintiffs failed to demonstrate that there is a live controversy given the expiration of the CDC orders under Title 42, but Plaintiffs have also failed to demonstrate that Individual Plaintiffs retain a personal stake in the outcome of this putative class action.[4]  "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (citations omitted).  The access to the protections allegedly denied Individual Plaintiffs in Del Rio are the "intervening circumstances" that remove their personal stake in the challenge to Title 42.  *See Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (concluding a case becomes moot when "the court can provide no effective remedy because a party has already obtained all the relief that it has sought") (internal citations omitted).  And in putative class actions, "at least one named plaintiff must keep her individual dispute live until [class] certification, or else the class action based on that claim generally becomes moot" absent an applicable mootness exception. *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019) (citing *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018)).

---

[4]   Paragraphs 51 to 56 of the proposed Supplemental Complaint focus on the organizational Plaintiff, Haitian Bridge Alliance ("HBA").  This Plaintiff never sufficiently pleaded standing in the Complaint, and these paragraphs do not fix the pleading failures identified by Defendants. *See* Mot. to Dismiss Mem. at 11-13; Mot. to Dismiss Reply at 9-12.  Specifically, HBA has not alleged an injury traceable to alleged unlawful agency action as opposed to the need to address the influx of 15,000 migrants at one place at one time.

Finally, the due process claims alleged in the Complaint are also moot because they are all based on how Defendants allegedly implemented or enforced "the Title 42 Process." Plaintiffs allege that the "Due Process Clause" of the Fifth Amendment "applied to Individual Plaintiffs . . . during the period they were subjected to the Title 42 Process." Compl. ¶¶ 285, 294, 303, 312. The equal protection claim is predicated on the allegation that the "implementation of the Title 42 Process . . . was motivated at least in part by discriminatory purpose based on race and presumed national origin." *Id*. ¶ 287. The substantive due process claim is based on the allegation that Defendants are "enforcing the Title 42 Process . . . in a manner indifferent to humanitarian concerns . . . and so egregious and outrageous that it may fairly be said to shock the conscience." *Id*. ¶ 295. Likewise, the procedural due process claim is based on the alleged deprivation of access to asylum and other relief from removal as a result of the Title 42 orders. *Id*. ¶¶ 313-14. The Complaint alleges a risk that these alleged due process violations would continue as a result of the then-ongoing Title 42 Process. *Id*. ¶¶ 289, 297, 306. Because the due process claims, like the "Haitian Deterrence Policy" claim, are predicated on the application of a policy no longer in place, they are moot as well. *See Anderson v. Carter*, 802 F.3d 4, 10 (D.C. Cir. 2015) (journalist's procedural due process claim arising from termination of military unit embed status and credentials was moot when embed program ended); *Askan Holdings, Ltd. v. Dep't of the Treasury, Off. of Foreign Assets Control*, Civ. A. No. CV 20-1458 (RJL), 2021 WL 4318114, at *5 (D.D.C. Sept. 23, 2021) (concluding that "asserting a due process claim to challenge expired agency action is 'quintessential mootness'") (citations omitted).

In sum, because Plaintiffs' claims challenge expired CDC orders and how those orders are implemented, there is no live controversy to sustain this Court's jurisdiction. By ignoring the live controversy requirement, Plaintiff's Response to the Order to Show Cause fails to meet their

burden to establish that the case is not moot. Further, as discussed in detail below, Plaintiffs' efforts to keep this case alive via a supplemental pleading is futile.

## II. No Exceptions to the Mootness Doctrine Apply

Alternatively, Plaintiffs argue that even if their claims are technically moot, there are two exceptions to the mootness doctrine that would apply. Response at 13-16. Plaintiffs baldly speculate that the CDC "could re-implement" its orders "if" the public health landscape "changes" in the future. Such speculation is insufficient to carry their burden to show these exceptions apply. *Id*. at 13; *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (noting the opposing party bears the burden of showing an exception applies).

### A. Plaintiffs Fail to Demonstrate that the "Voluntary Cessation" Doctrine Applies

Plaintiffs first argue that their claims are saved by the voluntary cessation doctrine, which provides that a "defendant's voluntary cessation of a challenged practice does not deprive the federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal citations and quotation marks omitted). The rationale for this doctrine is to prevent a defendant from "manipulating the judicial process by voluntarily ceasing the complained of activity, and then seeking a dismissal of the case, thus securing freedom to 'return to his old ways'" after the litigation is over. *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc). That is not the present situation.

Plaintiffs admit that the "Title 42 Process challenged by Plaintiffs . . . expired." Response at 15. Courts, however, recognize that the voluntary cessation doctrine generally does not apply where a policy, practice, or conduct expires by its terms. *See, e.g., Trump v. Hawaii*, 138 S. Ct. 377 (2017) (holding case moot when the policy "expired" by its "own terms"); *Clarke*, 915 F.2d at 705 ("[W]e find that non-reenactment of a one-time condition that expired of its own terms

cannot be viewed as cessation of conduct"); *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (holding that a policy "that expires by its own terms does not implicate" voluntary cessation because its lapse was "not a response to litigation").

And the doctrine is particularly inapplicable when those expiration terms are "adopted before the litigation." *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022); *Clarke*, 915 F.2d at 705; *Sec. Indus. & Fin. Markets Ass'n v. Sec. & Exch. Comm'n*, Civ. A. No. 20-1306, 2022 WL 514206, at *2 (D.C. Cir. Feb. 18, 2022) ("[Th]e voluntary-cessation exception to mootness does not apply because the SEC set the Order's expiration date before the Association petitioned for review."). The terms of the CDC Title 42 order's expiration were set in the August 5, 2021 CDC order, which preceded Plaintiffs' lawsuit and the events underlying this suit. Further, the CDC order expired on May 11, 2023, ultimately because of a change in public health conditions, which is beyond the unilateral authority of Defendants. *Brach*, 38 F.4th at 12 ("The State did not rescind its school closure orders in response to the litigation—the orders "expired by their own terms" after COVID-19 transmission rates declined and stabilized."); *J. T. v. Dist. of Columbia*, 983 F.3d 516, 523 (D.C. Cir. 2020) ("We have held that '[t]he voluntary-cessation doctrine has no apparent relevance' where the 'source of cessation . . . lies beyond the unilateral legal authority of any of the named defendants.'") (citations omitted).

Even if the voluntary cessation doctrine were applicable, the exception requires a reasonable expectation that the challenged action will recur. *Larsen*, 525 F.3d at 72. Importantly, "the mere power to reenact a challenged [rule] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists absent evidence indicating that the challenged [rule] likely will be reenacted." *Akiachak*, 827 F.3d at 106 (internal citations and quotation marks omitted). Here, Plaintiffs point only to the fact that the Government "retain[s]

lawful authority" pursuant to statute to issue another order. Response at 14. It is not enough to argue, as Plaintiffs do, that the Government "could" invoke powers under Title 42 "if the public health landscape changes." *Id*. at 13; *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346 (D.C. Cir. 1997). Tellingly, Plaintiffs point to no plans by the CDC to reinstitute the same or similar orders under Title 42, nor do they cite a single extant fact supporting a reasonable expectation of a change in the public health landscape that might warrant the issuance of a Title 42 order, such as the emergence of new variant or an upswing in COVID-19 spread. Likewise, there is no reasonable expectation that the alleged due process violations resulting from how CDC's August 5, 2021 order was enforced will recur in absence of the same order. *Coal. of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1190 (D.C. Cir. 2004).

Because the challenged Title 42 orders expired pursuant to terms set before the alleged incidents, the present circumstances do not satisfy the requirement of the voluntary cessation doctrine. And Plaintiffs' Response has not established a reasonable expectation that the same challenged policy will recur. Therefore, the voluntary cessation doctrine does not apply.

> **B.       Plaintiffs Fail to Demonstrate that the "Capable of Repetition Yet Evading Review" Doctrine Applies**

The other mootness exception for cases capable of repetition yet evading review applies only when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (internal quotation marks and alterations omitted). This doctrine "applies only in exceptional situations," and this is not one of those situations. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

The first prong is not meant to be simply a mechanical calculation of how long litigations take to complete but rather asks whether the challenged actions are "inherently" or "by their nature" too short to be effectively challenged. *Campbell v. Clinton*, 203 F.3d 19, 34 (D.C. Cir. 2000) ("Circuit precedent requires us to determine whether the activity challenged is "inherently" of a sort that evades review[.]"); *Grant v. Vilsack*, 892 F. Supp. 2d 252, 258 (D.D.C. 2012) ("The 'capable of repetition[, yet evading review]' exception applies to claims that are inherently short-lived."). Plaintiffs argue that the approximately three years in which the CDC's orders were in place is too short a period to fully litigate those orders, Response at 15, but that simply reflects how long these orders were in place. Plaintiffs do not point to anything in the challenged action that makes it "inherently" evasive of review. Nor do Plaintiffs grapple with the fact that the Title 42 orders have been the subject of multiple lawsuits since the authority was first used at the start of the COVID-19 pandemic.

For the second prong, Plaintiffs must show "a reasonable expectation or demonstrated probability" that the "same action" will recur; "[a] theoretical possibility," however, "is not sufficient to qualify as capable of repetition[.]" *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017) (citations and internal quotation marks omitted). Claims may be capable of repetition when the legal controversy is "fixed, knowable in advance, and thus predictably repeatable." *Reid v. Hurwitz*, 920 F.3d 828, 840 (D.C. Cir. 2019) (citing cases) (Katsas, J., dissenting). Yet Plaintiffs admit that the "nature of the Title 42 Process" is "unpredictable" because it is "based on the presence of particular public health circumstances." Response at 15. Because, as discussed above, there is no reasonable expectation that there will be similar health circumstances to trigger the same CDC orders being challenged, the repetition prong is not satisfied. *See Milligan v. Blinken*, Civ. A. No. 20-2631 (JEB), 2021 WL 3931880, at *6

(D.D.C. Sept. 2, 2021) ("Because 'there is no reasonable expectation [ ] that the alleged violation will recur,' . . . it inexorably follows that there cannot be 'a reasonable expectation that the same complaining party will be subject to the same action again.'") (citations omitted).

The cases cited by Plaintiffs are plainly distinguishable. For instance, in *Del Monte Fresh Produce Co. v. United States*, the D.C. Circuit considered a produce distributor's claims that a government agency unreasonably delayed adjudicating its export license application. 570 F.3d at 320-21. Despite the agency granting the relevant license while the litigation was pending, the legal wrong at issue—the agency's alleged violation of a federal statute that required it to adjudicate a properly-prepared license within nine days—was reasonably likely to recur. *Id*. at 324-25. In contrast, there is no evidence establishing "a reasonable expectation or demonstrated probability" that the same CDC order of the type in place in September 2021 in response to the COVID-19 pandemic would be repeated. *See, e.g., Nat'l Treasury Emps. Union v. United States*, 444 F. Supp. 3d 108, 116 (D.D.C. 2020) (concluding "the facts and circumstances of a possible future lapse in appropriations are not—to say the least—fixed, knowable, and predictably repeatable").

Further, there must be a "reasonable expectation that the *same complaining party* would be subjected to the *same action* again." *Pharmachemie B.V. v. Barr Lab'ys, Inc*., 276 F.3d 627, 633 (D.C. Cir. 2002) (quoting with emphasis *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Plaintiffs do not attempt to demonstrate that they will be subjected personally to the same challenged CDC orders. *See* Response at 15-16. Indeed, most of them are already in the United States submitting asylum applications. *See supra* at 9-10.

Thus, for the foregoing reasons, Plaintiffs have failed to establish that the capable of repetition but evading review exception applies.

### III. Leave to Supplement the Complaint Should Be Denied

As part of their effort to avoid dismissal of their moot Complaint, Plaintiffs have moved for leave to file a supplemental complaint. Pursuant to Federal Rule of Civil Procedure 15(d), a "court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." The decision to grant a motion for leave to file a supplemental complaint, like the decision to grant a motion for leave to amend a complaint, is within the discretion of the court and subject to the same general standard of discretion. *Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23 (D.D.C. 2008). Such motions are to be "freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." *Hall v. Cent. Intelligence Agency*, 437 F.3d 94, 101 (D.C. Cir. 2006) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1504, at 186-87 (2d ed. 1990)). Nonetheless, a motion for leave to file a supplemental complaint may be denied as futile if adding the new allegations would not survive a motion to dismiss. *See Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012).

Plaintiffs offer two reasons for supplementing the Complaint. Plaintiffs first argue that leave to file the proposed Supplemental Complaint should be granted so that Plaintiffs may inform the court of "current manifestations" of the "ongoing" or "continuing" "Haitian Deterrence Policy." Leave Mot. at 2, 4; *see* Supp. Compl. ¶¶ 7-33. Such allegations are futile because both the Complaint and the proposed Supplemental Complaint fail to allege facts demonstrating that the "Haitian Deterrence Policy" is an existing "final agency action" that is subject to challenge under the APA. Defendants have already established in their pending Motion to Dismiss that the Complaint fails to state a plausible APA claim challenging this so-called policy. *See* Mot. to Dismiss Mem. at 27-30; Mot. to Dismiss Reply at 29-31.

Plaintiffs now refer to the "Haitian Deterrence Policy" as an "evolving" policy that "persists" past the expiration of the CDC's orders, *see* Leave Mot. at 4, 9, but what has actually evolved is the labeling Plaintiffs use in characterizing this implausibly alleged "policy."[5] In the original Complaint, the "Haitian Deterrence Policy" was the "way" or "manner" in which the Title 42 public health order was applied to Individual Plaintiffs in September 2021. *See, e.g.*, Compl. ¶¶ 8, 62. Now, Plaintiffs allege "on information and belief" that completely different new government policies are "in furtherance of the Haitian Deterrence Policy." *See* Supp. Compl. ¶¶ 12, 20, 29, 33. Regardless of how Plaintiffs package it, the Supplemental Complaint does not fix any of the flaws in their original claim challenging this purported policy—first, there are no factual allegations pleading the existence of a final agency action, and second, disagreements with the implementation of government policies are not judicially reviewable. *See* Mot. to Dismiss Mem. at 27-30; Mot. to Dismiss Reply at 29-31. Accordingly, these allegations in the Supplement Complaint are futile. *See Sai v. Clinton*, 778 F. Supp. 2d 1, 8 (D.D.C. 2011) (denying as futile proposed supplemental complaint because it "present[ed] the same nonjusticiable political question" as the existing complaint).

Plaintiffs also argue that leave to file the proposed Supplemental Complaint should be granted so that Plaintiffs may inform the Court of "how each Plaintiff would benefit from a judgment in Plaintiffs' favor in this case." Leave Mot. at 2; *see* Supp. Compl. ¶¶ 34-50. These allegations are intended to support Plaintiffs' argument in response to the Order to Show Cause that the case is not moot. *Id.* at 3-4. Yet, as demonstrated above, these additional allegations do not and cannot demonstrate that there remains a live controversy after the expiration of the CDC

---

[5] Interestingly, in opposition to Defendants' motion to dismiss, Plaintiffs argued that this "policy" was "not in flux" and represented "completed decision-making." Mot. to Dismiss Opp. (ECF No. 38) at 41.

orders, which was the only actual government policy challenged in the Complaint. *See supra* at 5-6. Further, the proposed allegations fail to explain how Individual Plaintiffs maintain a personal stake in the instant litigation when they have already received access to the procedural protections they sought in the original Complaint. *See supra* at 9-10. Additional allegations positing further "benefits" to continued litigation cannot change either circumstance establishing the mootness of the original lawsuit.

Further, even if supplementation was not futile, adding allegations purporting to challenge wholly distinct government policies would not "promote the economic and speedy disposition" of this case. A supplemental pleading is "designed to cover matters subsequently occurring but pertaining to the original cause." *Health Ins. Ass'n of Am. v. Goddard Claussen Porter Novelli*, 213 F.R.D. 63, 66 (D.D.C. 2003) (quoting *Rowe v. United States Fidelity & Guaranty Co.*, 421 F.2d 937, 942 (4th Cir. 1970)). Plaintiffs' disquiet with recent government policies plainly does not pertain to the original causes of action in this case and thus would not promote the speedy disposition of this case. Plaintiffs' likely response will be that the purported "Haitian Deterrence Policy" provides the putative connection to the original claims. This response would only underscore that this so-called policy is merely a label that Plaintiffs attach to any action perceived to be unfavorable to Haitian migrants.

In any event, Defendants would be prejudiced by allowing this suit targeting the application of the CDC's August 5, 2021 order to Haitian migrants at Del Rio, Texas between September 9 and 24, 2021, to morph into a new challenge to more recent government policies. *See Thorp v. Dist. of Columbia*, 325 F.R.D. 510, 514 (D.D.C. 2018) (denying leave to supplement complaint with "events fully distinct from those underlying" the original complaint).

Plaintiffs' motion for leave should be denied because the proposed Supplemental Complaint would be futile, and it does not "pertain to the original cause" of action beyond Plaintiffs' ipse dixit.

Dated: July 7, 2023

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:    /s/ Sean M. Tepe
SEAN M. TEPE, DC Bar #1001323
DIANA V. VALDIVIA, DC Bar #1006628
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-2533; (202) 252-2545
sean.tepe@usdoj.gov
diana.valdivia@usdoj.gov