IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAITIAN BRIDGE ALLIANCE, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH R. BIDEN, PRESIDENT OF THE UNITED STATES, *in his official capacity*, et al.,<br><br>*Defendants.* | Civil Action No. 21-cv-03317 (JMC) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR NEWLY ADDED PLAINTIFFS TO PROCEED USING PSEUDONYMS AND FOR LEAVE TO FILE DECLARATION UNDER SEAL**

Plaintiffs file this memorandum of law in support of Plaintiffs' Unopposed Motion for Newly Added Plaintiffs to Proceed Using Pseudonyms and for Leave to File Declaration Under Seal ("Motion"). Plaintiffs Eric and Florence Doe, Pierre and Ginette Doe, James Doe, and Delgado Doe (collectively, "Doe Plaintiffs"), who were named as Plaintiffs for the first time in the First Amended Complaint (Dkt. 75), are individuals who, as further described below, each fled life-threatening violence in their home country of Haiti; came to the United States–Mexico border near Del Rio, Texas in September 2021 to seek asylum and other immigration relief from the United States government; were deprived of basic human necessities such as food, water, shelter, and sanitation facilities for multiple days, while they followed the directives of U.S. officers to wait their turn to be processed by U.S. immigration officials; and were forcibly removed back to Haiti or compelled by U.S. officials' actions to return to Mexico. Each Doe Plaintiff reasonably fears that revealing their name would destroy their privacy and subject them and their family members to harm, either at the hands of persecutors in the countries where they currently are, or

1

in the form of retaliation from the United States government or other foreign governments (such as state actors in Haiti), possibly in connection with their attempt to seek immigration relief from the United States. Defendants will not be prejudiced by allowing these Doe Plaintiffs to proceed under pseudonym. Defendants do not oppose Plaintiffs' Motion, on the condition that Plaintiffs' sealed disclosure of Doe Plaintiffs' identities includes any immigration identification numbers issued by DHS. For the reasons set forth below and in their accompanying declarations, Doe Plaintiffs respectfully request the Court to grant the Motion and permit them to proceed under pseudonym, just as the Court granted a prior such motion. *See* Dkt. 9 (granting substantially identical motion and permitting Plaintiffs Wilson Doe, Jacques Doe, Esther and Emmanuel Doe, Samuel and Samentha Doe, and Paul Doe to proceed under pseudonym).

## BACKGROUND

Doe Plaintiffs are two sets of married parents and two single adults who fled and/or have a well-founded fear of life-threatening violence in their native country of Haiti and have been unable to avail themselves of congressionally created legal protections to seek asylum or other forms of immigration relief. Plaintiffs came to the United States seeking safety after being subjected to, or being reasonably fearful of, politically motivated threats of violence and actual violence in Haiti.[1]

Before traveling to Del Rio, Texas, in late summer 2021, Eric Doe, for example, endured threats, being shot in the leg, and an attempt to burn his house down because of his political party affiliation in Haiti. Eric Doe Decl. ¶ 6; *see also* Florence Doe Decl. ¶ (explaining that as Eric's

---

[1] *See* First Amended Complaint (Dkt. 75) ¶¶ 310, 319, 326, 336–337; Declaration of Eric Doe ("Eric Doe Decl.") ¶¶ 4–6; Declaration of Florence Doe ("Florence Doe Decl.") ¶ 4; Declaration of Pierre Doe ("Pierre Doe Decl.") ¶¶ 4–5; Declaration of Ginette Doe ("Ginette Doe Decl.") ¶ 8; Declaration of James Doe ("James Doe Decl.") ¶¶ 3–4; Declaration of Delgado Doe ("Delgado Doe Decl.") ¶ 4.

wife, Florence also became a target). Pierre Doe, a local political party delegate, similarly received threats from members of an opposing political party in Haiti, including threats that he will be beaten and killed. Pierre Doe Decl. ¶ 5; *see also* Ginette Doe Decl. ¶ (explaining that because of the threats against her husband, Ginette and her family could not safely return to Haiti). After Haiti's 2016 elections, the prevailing political party began aggressively targeting members of the political party that James Doe actively participated in, causing him to reasonably fear for his physical safety in Haiti. James Doe Decl. ¶ 4. Delgado Doe received threats and, on one occasion, was shot at for publicly supporting his cousin's political campaign for a Haitian parliament seat. Delgado Doe Decl. ¶ 4. In addition to their experience in Haiti, Doe Plaintiffs also faced violence and discrimination in the countries to which they first fled before ultimately seeking safety in the United States in late summer 2021.[2]

Doe Plaintiffs were each present in the encampment under and around the Del Rio International Bridge that U.S. Customs and Border Protection established and maintained in September 2021 (hereinafter "CBP Encampment"). There, they endured horrific conditions, including inadequate food, water, shelter, and sanitation facilities as they attempted to access the asylum system in the United States.[3]

Including the full names of the Doe Plaintiffs risks revealing the Doe Plaintiffs' identities and destroying their privacy and could result in further violence against them or their families in Haiti or in the countries where they are currently present.

---

[2] *See* First Amended Complaint ¶¶ 310–312, 319–320, 326–327, 336–37; Eric Doe Decl. ¶¶ 4, 7–8; Florence Doe Decl. ¶¶ 5–6; Pierre Doe Decl. ¶¶ 7–8; Ginette Doe Decl. ¶¶ 7–9; James Doe Decl. ¶¶ 5–6; Delgado Doe Decl. ¶ 5.

[3] *See* First Amended Complaint ¶¶ 312–316, 321–324, 328–332, 338–340; Eric Doe Decl. ¶¶ 11–12; Florence Doe Decl. ¶ 7; Pierre Doe Decl. ¶ 9; Ginette Doe Decl. ¶ 10; James Doe Decl. ¶¶ 7–9; Delgado Doe Decl. ¶¶ 6–9.

**LEGAL STANDARD**

Federal courts have discretion to allow parties to proceed anonymously when "the impact of the plaintiff's anonymity" outweighs "the public interest in open proceedings and on fairness to the defendant." *Nat'l Ass'n of Waterfront Emps. v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008). To determine whether anonymity is warranted, this Court has considered: (1) whether the party's request seeks "to preserve privacy in a matter of a sensitive and highly personal nature," (2) whether "identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties," (3) "the ages of the persons whose privacy interests are sought to be protected," (4) "whether the action is against a governmental or private party," and (5) "the risk of unfairness to the opposing party" as a result of anonymity. *Id.*; *see also United States v. Hubbard*, 650 F.2d 293, 317–21 (D.C. Cir. 1980) (applying a similar balancing test with factors including "the strength" of the property and privacy interests involved, as well as "the possibility of prejudice" to those opposing disclosure, to determine whether a party moving to seal has overcome the presumption against sealing records).

Whichever test applies, the same general balancing inquiry is at issue: "whether the non-speculative privacy interest that the movants have identified outweigh the public's substantial interest in knowing the identities of the parties in litigation, along with any legitimate interest that the non-moving parties' interest may have in revealing the identity of the movants." *John Doe Co. No. 1 v. CFPB*, 195 F. Supp. 3d 9, 17 (D.D.C. 2016); *see also Chao*, 587 F. Supp. 2d at 99 (assessing whether "the impact of the plaintiff's anonymity" outweighs "the public interest in open proceedings and on fairness to the defendant").

**ARGUMENT**

All of the relevant factors supporting anonymity weigh in favor of allowing the Doe Plaintiffs to proceed using pseudonyms in this litigation. In granting Plaintiffs' December 21,

4

2021, Motion to Proceed Using Pseudonyms, this Court recognized the strong interests in protecting highly sensitive personal information for seven other Plaintiffs initially named in this litigation, preventing retaliatory harm against those Plaintiffs and their families, and protecting the anonymity of Plaintiffs with minor children. *See* Dkt. 9 at 4–6. The same logic applies to newly added Doe Plaintiffs, named for the first time in the First Amended Complaint, seeking to proceed using pseudonyms here.

Plaintiffs have provided and will continue to provide highly sensitive personal information about their experiences in both Haiti and in the United States, including in the First Amended Complaint and in the Declarations accompanying this Motion. Plaintiffs and their families would face significant risks, including physical harm and death, if their identities were publicly revealed. *See id.* at 7 (granting Plaintiffs' motion and noting "the deadly threat that [] disclosure would entail"); *see also* Mem. & Order, *M.G.U. v. U.S. Dep't of Homeland Sec.*, No. 18-cv-1458-PLF (D.D.C. June 21, 2018) (Howell, J.), ECF No. 7 at *5 ("*M.G.U.* Order") (granting plaintiffs' motion to proceed using pseudonyms; "public identification might expose the plaintiffs and their families" to "significant risk of deadly violence."). Doe Plaintiffs have witnessed or experienced human rights abuses and deliberate deprivation of basic human necessities perpetrated by U.S. government agents and, as a result, the federal government may have already retaliated against them, by expelling them to Haiti or forcing them to cross back into Mexico, or may yet retaliate against them in the future. Plaintiffs, moreover, have described the violence and threats that they have survived or were reasonably fearful of facing in Haiti, as well as the extreme physical hardship that they endured in the CBP Encampment because of the U.S. government's failure to provide them and others with basic human necessities such as food, water, shelter, and basic

sanitation facilities.[4] Identification of the Doe Plaintiffs on the public record would expose them and their families, including minor children, to a high "risk of retaliatory physical or mental harm." *J.W. v. District of Columbia*, 318 F.R.D. 196, 198–99 (D.D.C. 2016) (noting that the confidentiality afforded to a child by proceeding under pseudonym "would be 'eviscerated unless the parent was also permitted to proceed using initials'" (citation omitted)); *Chao*, 587 F. Supp. 2d at 99; *see also* Dkt. 9 at 5 (finding that risk of retaliatory harm to Doe Plaintiffs weighs in favor of granting pseudonym motion). As discussed further below, this matter also involves highly sensitive information about what happened to families that have minor children. Disclosure of their parents' names—from which minor children's own identities could be discovered—would further harm these families and children by publicly disclosing sensitive and traumatic details of their lives.[5] *See id.* at 6 (finding that "for the Doe Plaintiffs who have minor children, the risks to their children from disclosing the identities of the parents weighs heavily in favor of sealing").

Whereas Doe Plaintiffs and their families will be severely prejudiced if their identities were to be disclosed, allowing Doe Plaintiffs to proceed anonymously does not risk any unfairness to Defendants, all of whom are Government agencies or Government officials sued in their official capacities. *See id.* at 6–7 (finding that "allowing the Doe Plaintiffs to proceed anonymously will not compromise the defendants' ability to defend this action"). Furthermore, the public has only *de minimis* interest in the exposure of Plaintiffs' identities. *See* Dkt. 9 at 4–5 ("The public's interest in the litigants' identities is *de minimis* compared to the significant privacy interests of the Doe Plaintiffs, who, along with their families would face significant risks, including physical harm and death, if their identities were publicly revealed." (quotation and citation omitted)); *see also* Mem.

---

[4] *See supra* notes 2–3.
[5] *See* Pierre Doe Decl. ¶¶ 9–13, 15; Florence Doe Decl. ¶¶ 10–13.

& Order, *S.M.S.R. v. Trump*, No. 18-cv-2838-RDM (D.D.C. Dec. 3, 2018) (Howell, J.), ECF No. 2 at *5 ("*S.M.S.R.* Order") ("The public's interest in the litigants' identity is *de minimis* compared to the significant privacy interests of the plaintiffs, asylum seekers who would face significant risks, including physical harm and death, if their identities were publicly revealed." (quotation and citation omitted)).

I. **The Complaint and Accompanying Documents Reveals Highly Personal and Sensitive Information About the Doe Plaintiffs and Their Children.**

As this Court has already recognized, this case involves sensitive and highly personal information, *see* Dkt. 9 at 5, such that the names of Eric and Florence Doe, Pierre and Ginette Doe, James Doe, and Delgado Doe should not be exposed to the public. That information is particularly sensitive due to the life-threatening conditions—further detailed in the First Amended Complaint—that these individuals have already experienced and would likely face again should their identities be revealed. The information to be presented and discussed in these proceedings includes a range of matters that would subject the Doe Plaintiffs and their children to the risk of physical danger and to emotional trauma and embarrassment. Examples appear below and in the First Amended Complaint.

- Eric Doe was targeted by the political party running Haiti's national government because of his affiliation with an opposition party that oversaw the local government and had appointed him to his government position as an ambulance driver. Eric Doe Decl. ¶¶ 4–6. Members from this dominant political party threatened his life multiple times, shot him in the leg, and attempted to set fire to his house. *Id.* ¶ 6. Since being deported back to Haiti, Eric Doe has been in hiding because members of the dominant political party are still looking for him. *Id.* ¶ 15. Three armed men came to Eric and Florence's home while Eric was not there and threatened to burn down their home and burn Florence, who was pregnant at the time, to death. *Id.* ¶ 15; Florence Doe Decl. ¶

7

10. This incident prompted Florence Doe to go into hiding with her children, requiring her to be separated from her husband. Florence Doe Decl. ¶¶ 10–11; Eric Doe Decl. ¶ 15. Eric and Florence Doe are fearful that if it becomes public knowledge that they are plaintiffs in this lawsuit that their and their family's safety will be jeopardized because of the ongoing threats of violence from the political opposition. Eric Doe Decl. ¶ 16; *see also* Florence Doe Decl. ¶ 13.

- Pierre Doe received death threats in Haiti because of his role as a regional delegate for a political party. Pierre Doe Decl. ¶¶ 4–5. Through text messages, phone calls, and in-person encounters, political opponents told him to quit politics or be assaulted and killed with a machete. *Id.* ¶ 5. Pierre and Ginette Doe met and were married in Chile, where they faced persistent violent threats from their neighbor and their neighbor's son. *Id.* ¶ 7; Ginette Doe Decl. ¶¶ 6–8. When Pierre, Ginette and their then-four-year-old child were expelled back to Haiti, they could not return to Pierre's hometown due to fears that the same people that previously threatened him would do so again. Pierre Doe Decl. ¶ 15; Ginette Doe Decl. ¶ 15. Pierre, Ginette and their two children are now in Chile but are constantly fearful for their safety because of the dangers they previously faced in Chile. Pierre Doe Decl. ¶ 17; Ginette Doe Decl. ¶ 15. Pierre and Ginette fear that if their names are made public as plaintiffs in this lawsuit it would jeopardize their ability to seek immigration relief in the United States and would expose them and their children to more threats in Chile and to retribution from both Haitian gangs and the government. Pierre Doe Decl. ¶ 18; Ginette Doe Decl. ¶ 17.

- James Doe fled Haiti because the political party he volunteered for came under threat when their parliamentary candidate lost in Haiti's 2016 elections. James Doe Decl. ¶¶ 3–4. His fellow party members recounted numerous threats they received from members of the prevailing political party, including threats to imprison opponents as political prisoners. *Id.* ¶ 4. This situation

continued to escalate, and James Doe reasonably believed that his physical safety was at risk. *Id*. Since being deported back to Haiti, he continues to harbor concerns that the threats prompting his departure from Haiti may persist; as a result, he refrains from engaging in any form of political activity. *Id.* ¶ 15. Further, James lives in an area with a heavy gang presence and frequent kidnappings, and he does not go far from home for fear of being kidnapped too. *Id.* He is afraid that if those around him become aware that he is a plaintiff in a lawsuit against the United States government, it would endanger his ability to maintain a low profile in Haiti and adversely affect his future ability to seek immigration relief in the United States. *Id.* ¶ 16.

- Delgado Doe fled Haiti after receiving threats and, on one occasion, was shot at for his visible role in his cousin's political campaign for a parliament seat. Delgado Doe Decl. ¶ 4. After being deported to Haiti, Delgado has been too fearful to return to his hometown and continues to fear that the same people who previously threatened to harm him will do so again. *Id.* ¶ 12. Delgado is living in Port-au-Prince and is constantly fearful for his and his family's safety; because of the strong gang presence and kidnappings where he lives, Delgado often has to move around or hide at a friend's house. *Id.* ¶ 12 Delgado is afraid that if his name were publicly disclosed as a plaintiff in this lawsuit, it could endanger his changes of seeking immigration relief in the United States and make him and his family vulnerable to retaliation from both Haitian gangs and the government. *Id.* ¶ 14.

These traumatic experiences, as further detailed in the First Amended Complaint, are of a "sensitive and highly personal nature," such that the Doe Plaintiffs' identities should not be disclosed. *Chao*, 587 F. Supp. at 99; *see also, e.g.*, *Bird v. Barr*, 2019 WL 2870234, at *5 (D.D.C. July 3, 2019) (first *Chao* factor weighed in favor of anonymity if Petitioners' safety or livelihoods could be jeopardized if their names were to be disclosed); Dkt. 9 at 5 (finding "the Doe Plaintiffs

9

do not seek to proceed under pseudonym 'merely to avoid . . . annoyance and criticism,' but to 'preserve privacy in a matter of [a] sensitive and highly personal nature" (quotation and citation omitted)); *M.G.U.* Order, at *5 (granting plaintiffs' motion to proceed using pseudonyms where plaintiffs "detailed the deadly threats they and their families have already faced and continue to face, and how public identification would only exacerbate these threats."); *J.W.*, 318 F.R.D. at 199 (noting that the confidentiality afforded to a child by proceeding under pseudonym "would be 'eviscerated unless the parent was also permitted to proceed using initials'" (citation omitted)).

**II.     Public Knowledge of Family Involved in This Petition Would Create a Risk of Physical or Mental Harm.**

If Doe Plaintiffs' names are disclosed through this litigation, both they and their children face a serious risk of retaliatory physical and mental harm. *See supra* Part I. Numerous courts, including this Court, have allowed plaintiffs and petitioners to proceed anonymously where doing so would protect them or their families from similar risks of violence. *See* Dkt. 9 at 5–6 (finding that the "[p]otential retaliatory physical or mental harm against individuals in another country . . . weighs in favor of proceeding under pseudonym"); *see also Doe v. U.S. Dep't of State*, 2015 WL 9647660, at *1–3 (D.D.C. Nov. 3, 2015) (allowing plaintiff to proceed pseudonymously in order to avoid "disclosing information that would help people who oppose the U.S.-led reconstruction efforts [in Iraq], such as ISIL members, to find [him] and kill him and his family"); *Doe v. Gonzales*, 484 F.3d 445, 446 (7th Cir. 2007) (allowing petitioner to litigate pseudonymously "because of his fear that if he is returned to El Salvador he will be killed"); *Doe v. INS*, 867 F.2d 285, 286 n.1 (6th Cir. 1989) ("Although the use of pseudonyms is not favored, we have resorted to it here to protect the petitioner's family, who remain in China, from possible reprisals."). And as this Court has recognized, it would "eviscerate[]" the confidentiality rightfully afforded to Doe

Plaintiffs if Eric and Florence Doe, Pierre and Ginette Doe, James Doe, and Delgado Doe are not permitted to proceed anonymously. *J.W.*, 318 F.R.D. at 199.

As asylum seekers, Doe Plaintiffs are "particularly vulnerable" to retaliation if their true names are revealed. *Al Otro Lado, Inc. v. Nielsen*, 2017 WL 6541446, at *6 (S.D. Cal. Dec. 20, 2017). Petitioners have already faced physical violence in Haiti and other countries to which they fled, as noted above, and exposing Doe Plaintiffs' identities would leave them and their children vulnerable to the additional risk of retaliatory violence in the United States, Haiti, or elsewhere. In particular, if their identities are disclosed in this litigation, Doe Plaintiffs fear that the same individuals, political parties, and gangs who threatened them and their families previously will seek out them or their children if they learn that Doe Plaintiffs have previously fled the country, wish to seek asylum in the United States, and are participating as plaintiffs in a lawsuit against the U.S. government. The fear of Doe Plaintiffs' identities being revealed publicly is especially concerning as all of the Doe Plaintiffs remain in unsafe locations outside the United States.

### III. Anonymity Is Particularly Important Given That Minor Children Are Involved.

As this Court has recognized, protecting "Plaintiffs' anonymity is all the more warranted because some of them are parents to minor children."[6] Dkt. 9 at 6 (internal quotation and citation omitted)). Indeed, the Federal Rules of Civil Procedure and the Local Rules of this Court mandate that the identities of minors be shielded from disclosure. Fed. R. Civ. P. 5.2(a); Local Civ. R. 5.4(f)(2) (requiring use of initials to refer to minor children in court filings). This Court has also frequently recognized a paramount interest in protecting anonymity in similar circumstances. *See, e.g.*, *S.M.S.R.* Order, at *6 (finding in lawsuit initiated by an asylum-seeking mother and her minor son that "Plaintiffs' interests in anonymity are especially acute," given the involvement of a child).

---

[6] *See* Eric Doe Decl. ¶ 2; Florence Doe Decl. ¶ 2; Pierre Doe Decl. ¶ 2; Ginette Doe Decl. ¶ 2; Delgado Doe Decl. ¶ 2.

11

Revealing the names of Plaintiffs who are parents in public documents preserved in perpetuity risks revealing the identities of their minor children as well. This Court recognizes the critical importance of protecting identities where disclosure would implicate risks to children. *See U.S. Dep't of State*, 2015 WL 9647660, at *3 (anonymity is favored "when the interests of minors are involved because children are perceived as more vulnerable or because the child whose privacy is at stake has not chosen for himself or herself to pursue the litigation" (quotation and citation omitted)).

### IV. Respondents Are Government Officials and Agencies Who Will Not Be Prejudiced By Allowing Doe Plaintiffs to Proceed Pseudonymously.

Allowing Doe Plaintiffs to proceed pseudonymously is especially appropriate because Defendants are government officials sued in their official capacities. "When a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." *Chao*, 587 F. Supp. 2d at 99 n.9 (quotation omitted); *see also, e.g.*, *S.M.S.R.* Order, at *6 ("[A]llowing the plaintiffs to proceed under pseudonyms will have no impact on any private rights, as the only defendants are government agencies and officers.").

Moreover, Doe Plaintiffs' identities already are known or knowable to Defendants in connection with Doe Plaintiffs' detention in the Del Rio encampment, such that "[a]llowing the plaintiffs to proceed pseudonymously thus will not compromise the defendants' ability to defend this action and poses little risk of unfairness to the opposing party." *Id.* (quotation and citation omitted); *see also, e.g.*, *U.S. Dep't of State*, 2015 WL 9647660, at *3 (government was unlikely to be prejudiced by plaintiff's pseudonymous filing because it had "long been in possession" of plaintiff's immigration application and was "fully apprised of all relevant information"); *Al Otro*

12

*Lado*, 2017 WL 6541446, at *6 (finding no prejudice to government defendants who "know the Individual Plaintiffs' names" and "have the information they need to defend against the claims").

Defendants will not suffer prejudice if the Court allows Doe Plaintiffs to proceed anonymously. The primary dispute in this case turns on Defendants' compliance with their obligations under the Constitution, the Administrative Procedure Act, and the asylum and withholding laws. The government's ability to demonstrate compliance will not diminish if Doe Plaintiffs' full names are omitted from public filings. As this Court previously recognized, "allowing the Doe Plaintiffs to proceed anonymously will not compromise the defendants' ability to defend this action." Dkt. 9 at 7. The same logic applies with respect to the Doe Plaintiffs here.

## V.     The Public Interest Is Not Served By Disclosing Doe Plaintiffs' Identities.

In addition, the public's interests would not be served by the disclosure of Doe Plaintiffs' identities. Federal courts have the discretion to allow parties to proceed anonymously when "the impact of the Petitioners' anonymity" outweighs "the public interest in open proceedings and on fairness to the defendant." *Chao*, 587 F. Supp. 2d at 99. Here, no public interest weighs in favor of exposing the identities of these individuals and their vulnerable children. *See* Dkt. 9 at 4–5; *S.M.S.R.* Order, at *5. While the public does indeed have an interest in seeing important asylum questions litigated, that interest in no way demands that the public obtain sensitive personal information about the litigants themselves. *See, e.g.*, *J.W. v. District of Columbia*, 318 F.R.D. 196, 202 (D.D.C. 2016) (permitting student to file anonymously because court documents would allow the public to understand those decisions and hold defendant accountable "regardless of whether the public can identify the parents of the particular student at issue"). As this Court previously recognized, "[a]ny general presumption in favor of open proceedings or public interest in disclosing the identities of the Doe Plaintiffs is significantly outweighed by the deadly threat that such disclosure would entail." Dkt. 9 at 7. So too here. Further, disclosure of Doe Plaintiffs' names

13

would *harm* the public interest because the danger of exposing Doe Plaintiffs' identities would "create[] an unnecessary risk of chilling the willingness of asylum seekers from litigating important issues like the ones raised in this case." *Al Otro Lado*, 2017 WL 6541446, at *7.

Indeed, weighed against the minimal apparent interest in disclosure, Doe Plaintiffs' strong interest in maintaining their anonymity is more than sufficient to overcome any general presumption in favor of open proceedings. *See Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("If there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time.'" (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner,* 879 F.2d 873, 879 (D.C. Cir. 1989))). In short, "the Doe Plaintiffs' privacy interests outweigh the public's presumptive and substantial interest in knowing the details of judicial litigation." Dkt. 9 at 4.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and issue an order allowing the Doe Plaintiffs to proceed under pseudonym and, consistent with the Court's prior Order (Dkt. 9), grant Plaintiffs leave to file a declaration, under seal, containing the real names; residential addresses; and, to the extent they exist and are known, DHS-issued immigration identification numbers of the newly added Doe Plaintiffs within ten days of such order.

DATED: March 18, 2024

Respectfully submitted,

*/s/ Alexander L. Schultz*

**Nicole Phillips***
nphillips@haitianbridge.org
**Erik Crew***
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4265 Fairmount Avenue, Suite 280
San Diego, CA 92105
Telephone: +1 949 603-5751

**Stanley Young** (CA00146)
syoung@cov.com
COVINGTON & BURLING, LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: +1 650 632-4704

**Alexander L. Schultz** (DC Bar No. 1618410)
aschultz@cov.com
COVINGTON & BURLING, LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: +1 424 332-4788

**Maura A. Sokol** (DC Bar No. 1672674)
msokol@cov.com
COVINGTON & BURLING, LLP
850 Tenth Street, NW
Washington, DC 20001
Telephone: +1 202 662-5528

**Karen C. Tumlin** (CA00129)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (CA00132)
esther.sung@justiceactioncenter.org
**Vanessa Rivas-Bernardy***
vanessa.rivas-bernardy@justiceactioncenter.org
Los Angeles, CA 90027
Telephone: +1 323 316-0944
Facsimile: +1 323 450-7276

**Tess Hellgren** (OR0023)
tess@innovationlawlab.org
**Stephen Manning** (OR0024)
stephen@innovationlawlab.org
**Rachel Landry***
rachel@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 922-3042
Facsimile: +1 503 882-0281

*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*