# DECLARATION OF GINETTE DOE

I, Ginette Doe, upon my personal knowledge, hereby declare as follows:

1. I am a 32-year-old Haitian national. I was born in Cabaret, Haiti.

2. I am married to Pierre Doe and we have two children. Our children were born in October 2017 and July 2022.

3. I currently live in Longavi, Chile with my younger child. My husband and my older child live together in Santiago, Chile because my husband's job is in the city. Our family used to live together, but I moved to the countryside after being attacked by a neighbor in Santiago.

4. I was born and lived in Cabaret, Haiti until March 2015. Life was hard because I could not find a job to help support my parents or myself.

5. I left Haiti to go to the Dominican Republic in March 2015 to try to find a job. I had a visitor visa for one month. After a few weeks, I realized that staying in the Dominican Republic was not possible since my visa was going to expire, and I had not been able to find a job. I had a cousin who lived in Chile who told me he would help me move there.

6. I arrived in Chile in April 2015. In July of that year, I met my husband, Pierre, who is also a citizen of Haiti, who fled Haiti due to threats against him for his political beliefs. We both had jobs in Santiago; I worked in manufacturing.

7. In 2018, when Pierre and I were living in an apartment complex, my husband's cousin came to visit. When I opened the door to let Pierre's cousin in, our neighbor forced herself into our house and threatened me and my child with a knife. I called Pierre and told him about the incident. When he came home, we tried to leave through the yard, but the neighbor continued to threaten us. We called the police and they arrested her, but she continued making threats against us when she was released about two days later. Our neighbor also had a son who threatened my husband with a gun multiple times when my husband left the house to go to work.

8. Since the threats from our neighbors continued, I had to attend many meetings with the Prosecutor's Office to try to get some protection for my family and me. I lost my job due to all the meetings with them, but they never did anything. I decided to leave Chile due to the years of threats and feeling like there was no justice. My life was in danger, and no one was going to protect me there. We could not go back to Haiti because of the threats against my husband. I wanted to ask for refuge in the United States.

9. I left Chile to go to the United States with my husband and young child in July 2021. We had to cross the Darien Forest. It was a very difficult and long journey and I still have trouble talking with others about what we experienced. We lived through terrible moments trying to reach the United States.

10. My family arrived in Del Rio, Texas around September 2021. When we crossed the river into Del Rio, an immigration officer gave us a ticket with a number and said to wait until our number was called, but he did not explain what would happen after. We spent three days under the bridge at Del Rio. During those three days, U.S. officials did not give us any food or water. I did not think we would survive. My husband had to cross to Mexico to get food for us and our child. We only had access to a portable toilet, but not a shower, so we were covered in dust from sleeping on the ground.

11. After approximately three days, the number on our ticket was called. We were placed on a bus and taken to a detention center for approximately seven days. Each day, we were only given two slices of bread and two bottles of water at 5 am, a small lunch at noon, and then two more slices of bread and water in the afternoon. It was not enough food. We were not able to leave to get more food so both my husband and I gave our child our lunch and we only ate the slices of bread.

12. At the detention center, we only had access to a toilet, but no showers. The immigration officers took our bags away, so we had no change of clothes or anything with which to brush our teeth. We had to ask permission, even if we just wanted to use

the bathroom. I needed medical attention, but I was too afraid to ask. When I arrived in Haiti, I had to be treated for an infection due to the lack of hygiene.

13. After seven days in the detention center, with no warning, we were put on a bus and taken to an airport. My husband was handcuffed, but I was not because my child was sitting on my lap. We did not know we were being sent back to Haiti until we were landing in the Port-au-Prince airport.

14. I never had the chance to ask for protection in the United States for me and my family. No one talked to us. The immigration officers would not have known if we were able to speak or not, because they never asked us anything.

15. When my family and I were deported back to Haiti, we did not return to my husband's hometown because of the threats he had received when he lived there. We stayed in Haiti for approximately three months and then made our way back to Chile because we did not feel safe in Haiti. I still do not feel safe in Chile because of what happened with my neighbor. I live in fear.

16. I have read the declaration of my husband, Pierre Doe, and it accurately reflects what has happened to us in our journey to seek asylum in the United States, including what we experienced in Del Rio, Texas and our expulsion to Haiti.

17. I ask the Court to allow me to participate in this lawsuit without making my name public. I am fearful that participating in this lawsuit against the United States President and other federal government officials could jeopardize my efforts to seek immigration relief in the United States. I do not want my participation in this lawsuit to adversely affect my immigration applications or prevent me from being able to seek immigration relief in the United States. I am also afraid that I would be targeted if my neighbor found out I was living in Chile again.

18. I believe that joining this lawsuit is the right thing to do because I was treated unlawfully, but I would like to request that the Court permit me to proceed under pseudonym in this lawsuit for my protection and the protection of my family.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct. Executed at Santiago, Chile on March 5, 2024.

GINETTE DOE

## CERTIFICATION OF INTERPRETATION

    I, Donirud Jean, declare that on March 5, 2024, I caused the foregoing declaration to be interpreted faithfully and accurately from English into Haitian Creole for the declarant through telephonic interpretation. I am fluent in English and Haitian Creole, and employed by Respond Crisis Translation. Before beginning the interpretation, I confirmed that the declarant was able to understand me. After I finished reading the foregoing declaration, the declarant verified that the contents of the declaration are true and accurate.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 5, 2024 in Batchelder St., Brooklyn, NY, USA.

*Jean Donirud*
_____
Donirud Jean