**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HAITIAN BRIDGE ALLIANCE, *et al.*,

      *Plaintiffs*,

      v.

JOSEPH R. BIDEN, *et al.*,

      *Defendants*.

Civil Action No. 1:21-cv-03317 (JMC)

**MEMORANDUM OF LAW OF AMICUS CURIAE IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL AND AMENDED COMPLAINT**

Christopher J. Hajec (DC Bar No. 492551)
Gina M. D'Andrea (DC Bar No. 1673459)
Immigration Reform Law Institute
25 Massachusetts Avenue NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
gdandrea@irli.org

Attorneys for *Amicus Curiae* Immigration Reform Law Institute

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The Immigration Reform Law Institute is a 501(c)(3) nonprofit corporation. It does not have a parent corporation and does not issue stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ............................................................ ii

TABLE OF AUTHORITIES ....................................................................... iv

INTEREST OF AMICUS CURIAE ................................................................ vii

INTRODUCTION ............................................................................... 1

ARGUMENT .................................................................................... 3

   I.   Plaintiffs cannot assert Fifth Amendment claims ........................................ 3

     A.   The Title 42 Order did not violate Equal Protection under the Fifth Amendment ....... 4

     B.   The Title 42 Order did not Violate Substantive Due Process .......................... 7

     C.   The Title 42 Order did not violate procedural due process .......................... 8

  II.   The CDC's Title 42 Order did not violate the Administrative Procedure Act ............. 9

     A.   No remedy is available because the challenged policy is no longer in effect ......... 9

     B.   Defendants have not withheld or delayed agency action ............................. 10

     C.   The alleged "Del Rio Deterrence Decision" is not reviewable under the APA ......... 12

CONCLUSION ................................................................................. 14

# **TABLE OF AUTHORITIES**

## **Cases**

*Abdelfattah v. United States Dep't of Homeland Sec.*, 787 F.3d 524 (2015) .................................. 7

*Adarand Constructors v. Pena*, 515 U.S. 200 (1995) .................................................................. 4

*Air All. Hous. v. United States Chem. & Safety Hazard Investigation Bd.*, 365 F. Supp. 3d 118
  (D.D.C. 2019) ......................................................................................................................... 10

*Ali v. Trump*, 959 F.3d 364 (D.C. Cir. 2020) ................................................................................ 7

*Bark v. United States Forest Serv.*, 37 F. Supp. 3d 41 (D.D.C. 2014) ....................................... 14

*Bhd. of Locomotive Eng'rs & Trainmen v. FRA*, 972 F.3d 83 (D.C. Cir. 2020) ........................ 13

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) ...................................................................... 11

*Connecticut v. United States DOI*, 344 F. Supp. 3d 279 (D.D.C. 2018) .................................... 12

*Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11 (D.D.C. 2017) ........................... 11, 12

*Demore v. Hyung Joon Kim*, 538 U.S. 510 (2003) ........................................................................ 8

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) ........................ 6

*Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020) .......................................... 4, 8

*FOP Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141 (2004) ........................................ 7

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) .................................................................. 12, 13

*Gomez v. Trump*, 485 F. Supp. 3d 145 (D.D.C. 2020) .................................................................. 3

*Hampton v. Mow Sun Wong*, 426 U.S. 88 (1976) ...................................................................... 4, 5

*Harris v. McRae*, 448 U.S. 297 (1980) ......................................................................................... 4

*Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940 (D.C. Cir. 2012) ........................ 13

*Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (2022) ............................................................. 9, 10, 11

*In re Aiken Cty.*, 645 F.3d 428 (D.C. Cir. 2011) ........................................................................ 11

*Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir. 2009) .................................................................... 3

*M.M.V. v. Garland*, 1 F.4th 1100 (D.C. Cir. 2021) ...................................................................... 9

*Mathews v. Diaz*, 426 U.S. 67 (1976) ........................................................................................... 8

*Pub. Citizen v. United States Trade Representative*, 5 F.3d 549 (D.C. Cir. 1993) ..................... 13

*Rangel v. Boehner*, 20 F. Supp. 3d 148 (D.D.C. 2013) ................................................................ 8

*Rasul v. Myers*, 563 F.3d 527 (D.C. Cir. 2009) ............................................................................ 3

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726 (D.C. Cir.
  2003) ....................................................................................................................................... 13

*Save Our Sch.-Southeast & Ne. v. D.C. Bd. of Educ.*, No. 04-01500 (HHK), 2006 U.S. Dist.
 LEXIS 45081 (D.D.C. July 3, 2006) ......................................................................... 8

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ......................................... 3

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ............ 6

*Washington v. Davis*, 426 U.S. 229 (1976) ............................................................ 4, 5

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ....................................................... 7

*Zadvydas v. Davis*, 533 U.S. 678 (2001) .................................................................. 9

*Zaman v. United States Dep't of Homeland Sec.*, Civil Action No. 19-3592 (ABJ), 2021 U.S.
 Dist. LEXIS 221499 (D.D.C. Nov. 16, 2021) ........................................................ 10

## Statutes

42 U.S.C. § 265 ........................................................................................................ 5, 9

5 U.S.C. § 551(1) ........................................................................................................ 12

5 U.S.C. § 701(b)(1) .................................................................................................... 12

5 U.S.C. § 704 ............................................................................................................. 13

5 U.S.C. § 706(2) ........................................................................................................ 10

8 U.S.C. § 1158 ............................................................................................................. 9

8 U.S.C. § 1231 ............................................................................................................. 9

8 U.S.C. § 1231(b)(3)(A) ............................................................................................. 11

8 U.S.C. § 1231, note .................................................................................................. 11

## Other Authorities

Capio Memo, p. 4, available at https://www.documentcloud.org/documents/6824221-COVID-
 19-CAPIO.html .......................................................................................................... 12

## Rules

Centers for Disease Control and Prevention, Control of Communicable Diseases; Foreign
 Quarantine: Suspension of Introduction of Persons Into United States From Designated
 Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 56,424 (Sept. 11, 2020)
 ................................................................................................................................... 1, 5

Centers for Disease Control and Prevention, Notice of Order Under Sections 362 and 365 of the
 Public Health Service Act Suspending Introduction of Certain Persons From Countries Where
 a Communicable Disease Exists, 85 Fed. Reg. 17,060 (Mar. 26, 2020) ...................... 1

Centers for Disease Control and Prevention, Public Health Reassessment and Order Suspending
the Right To Introduce Certain Persons From Countries Where a Quarantinable
Communicable Disease Exists, 86 Fed. Reg. 42,828 (Aug. 5, 2021)........................................ 1

Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons
Into United States From Designated Foreign Countries or Places for Public Health Purposes,
85 Fed. Reg. 16,559 (Mar. 24, 2020)........................................................................................ 1

## INTEREST OF AMICUS CURIAE

*Amicus curiae* the Immigration Reform Law Institute ("IRLI") seeks the Court's leave to file this brief for the reasons set forth in the accompanying motion.[1] IRLI is a not for profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. For more than twenty years the Board of Immigration Appeals has solicited supplementary briefing, drafted by IRLI staff, from the Federation for American Immigration Reform, of which IRLI is a supporting organization. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases. IRLI has also represented a wide variety of plaintiffs in immigration matters, ranging from American workers who have been displaced by foreign workers to foreign workers who have not been paid by their employers. Consequently, IRLI is dedicated to assisting the courts in maintaining a rational immigration system for the benefit of its clients.

---

[1] Consistent with Fed. R. App. P. 29(a)(4)(E), counsel for *amicus curiae* authored this brief, and the motion it accompanies, in whole, and no counsel for a party authored the brief in whole or in part, nor did any person or entity, other than the *amicus* and its counsel, make a monetary contribution to preparation or submission of the brief.

**INTRODUCTION**

In March of 2020, the Department of Health and Human Services ("HHS") issued an interim final rule that empowered the Director of the Centers for Disease Control and Prevention ("CDC") "to suspend the introduction of persons into the United States" because of the global Covid-19 pandemic. Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 16,559, 16,563 (Mar. 24, 2020). Two days later, the CDC issued an order barring certain "covered aliens" from entering the United States from either Mexico or Canada "regardless of their country of origin." Centers for Disease Control and Prevention, Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17,060, 17,061 (Mar. 26, 2020) (the "Interim Final Rule"). The Interim Final Rule included a thirty-day period for public comment. *Id*. A final rule implementing the Interim Final Rule was issued in September 2020. HHS explained that the September Rule "[wa]s critical to protecting U.S. public health" during the Covid-19 pandemic.  Centers for Disease Control and Prevention, Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 56,424 (Sept. 11, 2020) (the "September Rule").

A subsequent rule was promulgated in August 2021, the prohibition of "covered aliens" entering the United States from either Mexico or Canada. *See* Centers for Disease Control and Prevention, Public Health Reassessment and Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42,828 (Aug. 5, 2021) (the "Title 42 Order"). In September of 2021, tens of thousands of aliens

1

from Haiti illegally crossed the U.S. border at Del Rio, Texas, allegedly seeking asylum. They were eventually expelled under the Title 42 Order.

The Title 42 Order expired when "[t]he federal Public Health Emergency for Covid-19 expired on May 11, 2023." U.S. Dep't of Health and Human Services, *Coronavirus: COVID-19 Public Health Emergency*, available at: https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html#:~:text=In%20February%202023%2C%20the%20HHS,expired%20on%20May%2011%2C%202023 (last visited May 20, 2024). Once Title 42 ended, federal immigration officials resumed processing aliens through the rules and procedures established by Congress in the Immigration and Nationality Act ("INA"). As a result, litigation in various other courts over the issuance and application of Title 42 is now moot.

Despite this fact, both the organizational Plaintiff and individual Plaintiffs—inadmissible aliens who are only entitled to those rights granted them by Congress—filed an amended complaint seeking redress for alleged past injuries related to their expulsion and treatment under the Title 42 Order along with an unwritten policy they name the "Del Rio Deterrence Decision." ECF 75 at ¶ 60. As Defendants explain in their Motion to Dismiss, ECF 82 at 18-33, neither the organizational nor the individual Plaintiffs can establish standing, and thus this Court need not reach the merits of their arguments.

Even if the Court were to find that Plaintiffs' have standing, moreover, they cannot succeed on either their constitutional or Administrative Procedure Act ("APA") claims. The actions of HHS and the CDC in closing the borders in response to the Covid-19 pandemic did not violate either the Fifth Amendment or the APA.

## **ARGUMENT**

**I.      Plaintiffs cannot assert Fifth Amendment claims.**

Courts have long recognized and applied the principle that aliens outside of the United States are not entitled to constitutional protections. *See, e.g., Rasul v. Myers*, 563 F.3d 527, 531 (D.C. Cir. 2009) ("The long line of cases dealing with constitutional rights of both lawful resident aliens and illegal aliens establishes only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country.") (citation and quotation marks omitted); *Gomez v. Trump*, 485 F. Supp. 3d 145, 188 (D.D.C. 2020) ("At the threshold, the Fifth Amendment's equal protection clause does not protect any Plaintiff outside the United States, so they have no constitutional claim."); *Kiyemba v. Obama*, 555 F.3d 1022, 1026 (D.C. Cir. 2009) ("Decisions of the Supreme Court and of this court— decisions the district court did not acknowledge—hold that the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States."), *vacated and remanded*, 559 U.S. 131 (2010), *reinstated in relevant part*, 605 F.3d 1046 (D.C. Cir. 2010), *cert. denied*, 563 U.S. 954 (2011). As the Supreme Court explained, it "ha[s] rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990). Indeed, precedent "establish[es] only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with the country." *Id*. at 271.

"Substantial connections" means aliens "who are in this country voluntarily and presumably have accepted some societal obligations." *Verdugo-Urquidez*, 494 U.S. at 261. The individual Plaintiffs cannot satisfy this requirement because at the time of their alleged injury, they

had not entered the United States.[2] They were aliens who arrived near a U.S. port of entry in Del Rio, Texas, after crossing the Rio Grande. Am. Compl., ECF 75 at ¶¶1, 62. *See, e.g., Dep't of Homeland Sec. v. Thuraissigiam*, 140 S.Ct. 1959, 1982 (2020) (explaining that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border.") (citations and quotation marks omitted). Therefore, because Plaintiffs were not within the United States they are not entitled to the constitutional protections they claim.

This reason alone is sufficient to dismiss Plaintiffs' constitutional claims. Even were it not, they would also fail because Plaintiffs do not sufficiently allege due process or equal protection allegations.

**A. The Title 42 Order did not violate Equal Protection under the Fifth Amendment.**

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). This protection, however, "prohibits only purposeful discrimination." *Harris v. McRae*, 448 U.S. 297, 323 n. 26 (1980). In other words, though it "provide[s] some measure of protection against *arbitrary* treatment by the Federal Government, it is not as explicit [a] guarantee of *equal* treatment as the Fourteenth Amendment[.]" *Adarand Constructors v. Pena*, 515 U.S. 200, 213 (1995) (emphasis in original). It merely requires impartiality in federal governance. *Hampton v. Mow Sun Wong*, 426 U.S. 88, 100 (1976) ("The federal sovereign, like the States, must govern impartially.").

---

[2] The challenged events took place in September 2021. Since that time, the original individual Plaintiffs have received grants of parole and are currently residing in the United States and either have filed or are in the process of filing asylum applications. The individual plaintiffs added to the litigation with the Amended Complaint are currently outside of the United States. Defs. Mot. to Dismiss, ECF 82 at 12-13.

There are instances in which the federal government can enact certain legislation that would violate equal protection principles if enacted by a State. For example, where the justification provided for such legislation is "an overriding national interest," there is "a legitimate basis for presuming that the rule was actually intended to serve that interest," and when "the agency which promulgates the rule has direct responsibility for fostering or protecting that interest, it may reasonably be presumed that the asserted interest was the actual predicate for the rule." *Id* at 103.

This standard is clearly met. Title 42 of the U.S. Code authorizes the executive branch to exclude aliens from the United States during a public health emergency. 42 U.S.C. § 265. In 2020, in response to the global COVID-19 pandemic, HHS issued an interim final rule implementing this authority and "enabl[ing] the CDC Director to suspend the introduction of persons into the United States." Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into the United States From Designated Foreign Countries or Places for Public Health Purposes," 85 Fed. Reg. 16, 559, 16, 563 (Mar. 24, 2020). Thus, even if Defendants' actions were found to be discriminatory, the explanation provided is sufficient to override a potential equal protection violation under the Fifth Amendment.

Plaintiffs' allegations of intentional discrimination must also fail. To succeed on such a claim, Plaintiffs must establish both that the challenged law was motivated by the intent to discriminate and that the law resulted in a disparate impact on a specific group. *Washington v. Davis*, 426 U.S. 229, 239 (1976) (explaining that a law is not unconstitutional "solely because it has a racially disproportionate impact."). As the Supreme Court explained in *Village of Arlington Heights*, "[d]isproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev.*

*Corp.*, 429 U.S. 252, 264-65 (1977) (internal citation and quotation marks omitted). "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id*. at 266.

Such intent or purpose is often lacking in immigration cases. The Supreme Court has acknowledged that, "because Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program. Were this fact sufficient to state a claim, virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915-16 (2020).

Here, Plaintiffs claim Defendants purposely deprived Haitian asylum seekers access to food, water, shelter, and medical care in contradiction of Defendants' "typical procedures for processing asylum seekers[.]" Am. Compl. ¶ 175. Yet nothing about the situation was typical. Immigration officials were operating in a global pandemic and were faced with an influx of tens of thousands of illegal immigrants overwhelming the Del Rio port of entry. The Amended Complaint, moreover, establishes that Defendants set up service stations, that non-profit organizations were providing services in the area, that several of the individual plaintiffs were able to cross back and forth into Mexico to obtain food and water, and that some aliens were even taken to hospitals within the United States. Am. Compl. ¶¶ 93-97, 105, 113.

Finally, despite the Individual Plaintiffs' claims to the contrary, there is no evidence that the Title 42 Order was intended or actually applied in a manner to discriminate against Haitians. Each iteration of the CDC's orders under their Title 42 authority was facially neutral and generally applicable without regard to race or national origin. Furthermore, Plaintiffs' bare allegations of Defendants "history of anti-Haitian immigration policies," Am. Compl. ¶¶36-51, are wholly

insufficient to establish discriminatory intent of the facially neutral and generally applicable Title 42 Order.

**B.  The Title 42 Order did not Violate Substantive Due Process.**

Substantive due process protects "fundamental right[s]" by "ensuring that the government does not unjustifiably infringe on" them. *Smith v. United States*, 277 F. Supp. 2d 100, 105 (D.D.C. 2003). Fundamental rights are those that "are implicit in the concept of ordered liberty." *Id*. at 106 (citation and quotation marks omitted). The government cannot enact legislation infringing on fundamental rights "regardless of the fairness of the procedures used to implement them." *Ali v. Trump*, 959 F.3d 364, 369 (D.C. Cir. 2020) (citation and quotation marks omitted). "Only government action that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience qualifies as arbitrary for the purposes of substantive due process." *Id*. (citations and quotation marks omitted). *See also FOP Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141, 1145 (2004) ("The conscience-shock inquiry is a threshold question in a due process challenge to executive action."). Although there is no "precise threshold for alleging an executive action violates substantive due process rights . . . the bar is high." *Abdelfattah v. United States Dep't of Homeland Sec.*, 787 F.3d 524, 542 (2015) (citations omitted).

A successful substantive due process claim "require[s] . . . a careful description of the asserted fundamental liberty interest. Our Nation's history, legal traditions, and practices thus provide the crucial guideposts for responsible decisionmaking that direct and restrain our exposition of the Due Process Clause." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Plaintiffs claim fundamental rights to "bodily integrity, freedom from bodily restraint, and family integrity" in paragraph 386 of their amended complaint, but do not provide a careful description

of such rights or identify any precedent at all that provides such rights to inadmissible aliens seeking admission or asylum.

 "When a fundamental right is not implicated, as here, substantive due process merely prohibits government action that results in a deprivation of a protected interest when the action fails to have some rational basis." *Save Our Sch.-Southeast & Ne. v. D.C. Bd. of Educ.*, No. 04-01500 (HHK), 2006 U.S. Dist. LEXIS 45081, at *54 (D.D.C. July 3, 2006). The actions taken by Defendants in implementing and administering the Title 42 authority easily pass rational basis review in light of the overriding national interest in protection from the global COVID-19 pandemic.

### C.  The Title 42 Order did not violate procedural due process.

It is a "fundamental premise of immigration law," *Demore v. Hyung Joon Kim*, 538 U.S. 510, 521 (2003), that Congress has wide latitude to regulate the admission and removal of aliens. Despite Plaintiffs claims to the contrary, aliens "ha[ve] only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1983 (2020). When it comes to immigration, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Procedural due process requires Plaintiffs to allege "a legitimate claim of entitlement to [a life, liberty, or property] interest." *Smith*, 277 F. Supp. 2d at 106.  As this Court has explained, "[i]t is the deprivation of a liberty or property interest itself that triggers procedural due process requirements, and that deprivation is the Article III injury.  The deprivation is what needs to be redressed; the failure to meet the requirements of due process is what makes that deprivation redressable." *Rangel v. Boehner*, 20 F. Supp. 3d 148, 166 (D.D.C. 2013) (internal citations omitted).

Plaintiffs' claim fails because they have not identified a protected interest. As explained above, there is a legally recognized "distinction between an alien who has effected entry into the United States and one who has never entered. . . . It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (internal citations omitted). Accordingly, "aliens apprehended while trying to enter the country have no due process rights beyond what Congress has provided by statute." *M.M.V. v. Garland*, 1 F.4th 1100, 1107 (D.C. Cir. 2021). The D.C. Circuit, moreover, has already rejected the argument that aliens have a protected interest in access to the asylum system, explaining that "the Executive has declared covered aliens' introduction illegal (under [42 U.S.C.] § 265), and as a general matter, the Executive can expel aliens who are here illegally (under [8 U.S.C.] §1227(a)(1)(B))." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 729 (2022). Accordingly, Plaintiffs' claims of procedural due process violations should be dismissed.

**II.     The CDC's Title 42 Order did not violate the Administrative Procedure Act.**

**A.  No remedy is available because the challenged policy is no longer in effect.**

Plaintiffs allege that the Title 42 Order was not in accordance with law and in excess of statutory authority provided by the INA. They claim that the authority of the executive under 42 U.S.C § 265 does not permit Defendants to bar aliens from the opportunity to access the asylum process and other statutory relief under 8 U.S.C. § 1158 and 8 U.S.C. § 1231.

The plain language of the Public Health Services Act reflects Congress's intention that the Executive have the authority to close the borders in case of a public health emergency.  The specific immigration procedures provided in the INA are superseded by the Executive's authority under the PHSA.  42 U.S.C. § 265 (providing the President with the discretion to order the "*suspension*

of the right to introduce" and "the power to prohibit, in whole or in part, the introduction of *persons*" for public health purposes.) (emphasis added). As stated above, the D.C. Circuit held that the Executive, pursuant to its authority under 42 U.S.C. § 265, likely could exclude illegal aliens from the asylum process altogether. *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 731 (2022) ("It's true that the § 265 Order forecloses more than just a grant of asylum; it also forecloses the statutorily mandated procedures that aliens use to apply for asylum.  But if the asylum decision has already been made—by the § 265 Order—then those procedures would be futile.").

Even if Plaintiffs were correct in their assertions, moreover, their claims fail because the expiration of Title 42 means there is no policy for this Court to vacate or set aside. The APA only authorizes a single remedy for challenges alleging unlawful agency action: the court can "hold unlawful and set aside agency action, findings, and conclusions[.]" 5 U.S.C. § 706(2). Plaintiffs' requests for specific immigration-based relief are outside the jurisdiction of this Court. Because the Title 42 Order expired with the end of the COVID-19 public health emergency, there is no remedy available and these claims should be dismissed.

**B.  Defendants have not withheld or delayed agency action.**

The APA requires that agencies act "within a reasonable time." 5 U.S.C. § 555(b). Where an agency "fail[s] to do so, the APA authorizes courts to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Zaman v. United States Dep't of Homeland Sec.*, Civil Action No. 19-3592 (ABJ), 2021 U.S. Dist. LEXIS 221499, at *6-7 (D.D.C. Nov. 16, 2021) (quoting 5 U.S.C. § 706(1)). To succeed on a claim of withheld or delayed agency action, "a plaintiff must demonstrate 'that an agency failed to take a *discrete* agency action that it is *required to take*.'" *Air All. Hous. v. United States Chem. & Safety Hazard Investigation Bd.*, 365 F. Supp. 3d 118, 131 (D.D.C. 2019) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)) (emphasis

original). *See also Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 21 (D.D.C. 2017) ("A plaintiff who asks a court to compel agency action . . . unreasonably delayed under § 706(1) must pinpoint an agency's failure to take an action that is *both* discrete *and* mandatory.") (citation and quotation marks omitted) (emphasis original). Once a plaintiff establishes that an agency was required to act, "[a]s a general rule, Section 706 of the APA leaves in the courts the discretion to decide whether agency delay is unreasonable." *Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001) (citation and quotation marks omitted).

First, as explained above, the D.C. Circuit has held that the Title 42 Order operated as a blanket denial of asylum, making asylum applications futile. *Huisha-Huisha*, 27 F.4th at 731. Furthermore, neither the original nor amended complaint contains any indication that the Plaintiffs who were returned to Haiti (or those who chose to go to Mexico) alerted CBP officials of their intention to seek asylum. Plaintiffs cannot hold CBP accountable for withholding relief that was not requested. Rather, action can only be compelled on "a matter presented to" an agency. 5 U.S.C. § 555(b).

Second, Plaintiffs allegations that Defendants failed to follow procedures for both withholding of removal ("WOR") and the Convention Against Torture ("CAT") also must fail because the INA does not contain any required procedures related to this relief. First, 8 U.S.C. § 1231 and the note to § 1231 addressing CAT protection do not set forth any procedures. The statute merely instructs the government where aliens with final orders of removal may and may not be removed to. 8 U.S.C. § 1231(b)(3)(A); 8 U.S.C. § 1231, note. Therefore, Defendants "ha[ve] not failed to take any discrete agency action that Congress ordered it to take. Petitioners' general complaints" about the Title 42 process "are simply not justiciable." *In re Aiken Cty.*, 645 F.3d 428, 437 (D.C. Cir. 2011). In addition, the Amended Complaint acknowledges that Defendants in fact

did have a policy in place to ensure compliance with CAT obligations. Am. Compl. ¶ 57 (citing to the "Capio Memo"). This policy guides officers to refer to USCIS "[a]liens that make an affirmative, spontaneous and reasonably believable claim that they fear being tortured in the country they are being sent back to." Capio Memo, p. 4, available at https://www.documentcloud.org/documents/6824221-COVID-19-CAPIO.html. Defendants are not responsible for Plaintiffs' failure to make such a claim.

Therefore, because Plaintiffs' have "fail[ed] to identify a discrete and mandatory agency duty, the court must grant the defendant's Rule 12(b)(6) motion and dismiss the claim." *Ctr. for Biological Diversity* 260 F. Supp. 3d at 21. *See also Connecticut v. United States DOI*, 344 F. Supp. 3d 279, 295 (D.D.C. 2018) ("However, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.") (citation and quotation marks omitted). Plaintiffs' claims regarding agency action unlawfully withheld or unreasonably delayed should be dismissed.

**C. The alleged "Del Rio Deterrence Decision" is not reviewable under the APA.**

In addressing claims under the APA, a threshold inquiry is whether the challenged action or policy is a reviewable agency action. Congress defined an "agency" as "each authority of the Government of the United States, whether or not it is subject to review by another agency, but does not include (A) the Congress; (B) the courts of the United States; (C) the governments of the territories or possessions of the United States; (D) the government of the District of Columbia." 5 U.S.C. §§ 701(b)(1), 551(1). Importantly, although "[t]he President is not explicitly excluded from the APA's purview, . . . he is not explicitly included, either." *Franklin v. Massachusetts*, 505 U.S. 788, 800 (1992). Due to this failure "expressly [to] allow review of the President's actions, we must presume that his actions are not subject to [APA] requirements." *Id*. at 801.

Furthermore, absent statutory grants of review, only agency actions that are "final" may be reviewed under the APA. 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."). *See also Fort Sill Apache Tribe*, 103 F. Supp. at 122 ("Judicial review under Section 706(2) is precluded because there has been no final agency action"); *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) ("The APA, however, only provides a right to judicial review of *final* agency action for which there is no other adequate remedy in a court.") (citation and quotation marks omitted) (emphasis original); *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731(D.C. Cir. 2003) ("If there was no final agency action here, there is no doubt that appellant would lack a cause of action under the APA."); *Pub. Citizen v. United States Trade Representative*, 5 F.3d 549, 551 (D.C. Cir. 1993) ("The central question in this appeal then is whether Public Citizen has identified some agency action that is final upon which to base APA review."). "Agency actions qualify as final if they 'mark the consummation of the agency's decisionmaking process' and 'legal consequences' flow from them." *Bhd. of Locomotive Eng'rs & Trainmen v. FRA*, 972 F.3d 83, 99 (D.C. Cir. 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). *See also Pub. Citizen*, 5 F.3d at 551 ("To determine whether an agency action is final, 'the core question is whether the agency has completed its decisionmaking process, *and* whether the result of that process is one that will directly affect the parties.'") (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)) (emphasis original).

The alleged Del Rio Deterrence Decision does not meet these requirements. First, Plaintiffs do not provide any support for the allegation that this so-called policy was an "agency" action. As explained, the president is not an "agency" within the meaning of the APA and thus is not a proper defendant in APA cases. *Franklin*, 505 U.S. at 800. Despite this clear rule, the amended complaint

describes the supposed policy as being made by "White House advisors at the highest levels, including senior advisors on the NSC and DPC, under authority delegated by President Biden, and was subsequently adopted and implemented by DHS Defendants." Am. Compl. ¶ 61. Simply naming DHS without specifying how (or if) it was involved in developing the policy or how it came to adopt the alleged policy is insufficient to establish agency action.

Second, Plaintiffs cannot point to a final agency action because Plaintiffs themselves invented this alleged "policy" and outlined its supposed parameters. *See, e.g.,* Am. Compl. ¶¶ 60, 61. As this court has explained, Plaintiffs cannot simply "attach[] a 'policy' label to their own amorphous description of" agency actions because "a final agency action requires more." *Bark v. United States Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014). Without "written rules, orders, or even guidance documents of the [agency] that set forth the supposed policies challenged here," Plaintiffs have merely made a "generalized complaint about agency behavior that gives rise to no cause of action." *Id.* at 50-51. Plaintiffs cannot create a policy and impute it to an agency in order to meet the final agency action requirement.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Defendants' Motion to Dismiss Plaintiffs' Amended Complaint.

Dated: May 31, 2024

Respectfully submitted,

/s/ Gina M. D'Andrea
Gina M. D'Andrea

Christopher J. Hajec (DC Bar No. 492551)
Gina M. D'Andrea (DC Bar No. 1673459)

Immigration Reform Law Institute
25 Massachusetts Avenue NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
gdandrea@irli.org

Attorneys for *Amicus Curiae* Immigration
Reform Law Institute