UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HAITIAN BRIDGE ALLIANCE, et al.,

       Plaintiffs,

   v.

JOSEPH R. BIDEN,
President of the United States, et al.,

       Defendants.

Civil Action No. 21-3317 (JMC)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFFS' SUPPLEMENTAL AND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................. ii

Argument .............................................................................................................................. 1

  I.    Plaintiffs Lack Standing to Bring Their Claims ................................................. 2

    A. Individual Plaintiffs Fail to Allege a Present Injury ....................................... 2

    B. Individual Plaintiffs Fail to Allege an Imminent Threat of Injury .................. 6

    C. Haitian Bridge Alliance Cannot Establish Organizational Standing ............... 8

  II.   Plaintiffs' Claims Based on the Due Process Clause Should Be Dismissed ..... 12

    A. Substantive Due Process Claims .................................................................. 12

    B. Procedural Due Process .............................................................................. 16

    C. Equal Protection ......................................................................................... 17

  III.  The APA Claims Should Be Dismissed ............................................................ 21

    A. Injunctive Relief Is Not Available to Plaintiffs ........................................... 21

    B. Plaintiffs Fail to Allege a Plausible Claim of Withheld or Delayed Agency Action ....... 22

    C. There Is No "Del Rio Deterrence Decision" To Challenge Under the APA ........... 23

  IV.  President Biden Is Not a Proper Defendant and Should Be Dismissed ............. 25

Conclusion .......................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Abdelfattah v. Dep't of Homeland Sec.*,
   787 F.3d 524 (D.C. Cir. 2015) ............................................................................... 13
*Air Excursions LLC v. Yellen*,
   66 F.4th 272 (D.C. Cir. 2023) ................................................................................. 9
*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ............................................................................ 4, 20
*Baby M. ex rel. Sabra v. Pompeo*,
   453 F. Supp. 3d 291 (D.D.C. 2020) ...................................................................... 12
*Bennett v. Spear*,
   520 U.S. 154 (1997) ......................................................................................... 24, 25
*Bollat Vasquez v. Mayorkas*,
   520 F. Supp. 3d 94 (D. Mass. 2021) ...................................................................... 14
*Butera v. District of Columbia*,
   235 F.3d 637 (D.C. Cir. 2001) ......................................................................... 14, 16
*CC Distributors, Inc. v. United States*,
   883 F.2d 146 (D.C. Cir. 1989) ................................................................................ 2
*City of Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985) ............................................................................................... 17
*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ......................................................................................... 3, 6, 7
*Comm. on Judiciary of U.S. House of Reps. v. McGahn*,
   968 F.3d 755 (D.C. Cir. 2020) ................................................................................ 6
*Conley v. Gibson*,
   355 U.S. 41 (1957) .................................................................................................. 9
*Ctr. for Biological Diversity v. Zinke*,
   260 F. Supp. 3d 11 (D.D.C. 2017) ........................................................................ 23
*D.A.M. v. Barr*,
   474 F. Supp. 3d 45 (D.D.C. 2020) ........................................................... 14, 15, 24
*Dearth v. Holder*,
   641 F.3d 499 (D.C. Cir. 2011) ................................................................................ 7
*Department of Homeland Security v. Regents of the University of California*,
   140 S. Ct. 1891 (2020) .......................................................................................... 19
*Department of Homeland Security v. Thuraissigiam*,
   591 U.S. 103 (2020) ......................................................................................... 13, 17
*Dep't of Educ. v. Brown*,
   600 U.S. 551 (2023) ................................................................................................ 3
*DeShaney v. Winnebago County Department of Social Services*,
   489 U.S. 189 (1989) .............................................................................................. 15
*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022) .............................................................................................. 12

*Food & Water Watch, Inc. v. Vilsack,*
    808 F.3d 905 (D.C. Cir. 2015) .................................................................................. 10

*George Wash. Univ. v. District of Columbia,*
    318 F.3d 203 (D.C. Cir. 2003) .................................................................................. 13

*Gerber Prod. Co. v. Perdue,*
    254 F. Supp. 3d 74 (D.D.C. 2017) ............................................................................. 8

*Gomez v. Trump,*
    485 F. Supp. 3d 145 (D.D.C. 2020) ......................................................................... 17

*Harvey v. District of Columbia,*
    798 F.3d 1042 (2015) ................................................................................................ 15

*Huisha-Huisha v. Mayorkas,*
    27 F.4th 718 (D.C. Cir. 2022) .................................................................................. 22

*Kareem v. Haspel,*
    986 F.3d 859 (D.C. Cir. 2021) ................................................................................... 9

*Keyhanpoor v. Blinken,*
    633 F. Supp. 3d 88 (D.D.C. 2022) ............................................................................. 9

*Laufer v. Alamac Inc.,*
    621 F. Supp. 3d 1 (D.D.C. 2021) ............................................................................... 7

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State,*
    104 F.3d 1349 (D.C. Cir. 1997) ............................................................................... 17

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................... 3, 4, 7

*McCleskey v. Kemp,*
    481 U.S. 279 (1987) ............................................................................................ 19, 20

*Milligan v. Blinken,*
    Civ. A. No. 20-2631 (JEB), 2021 WL 3931880 (D.D.C. Sept. 2, 2021) .................... 4

*Narenji v. Civiletti,*
    617 F.2d 745 (D.C. Cir. 1979) ................................................................................. 19

*Nat'l Assn. for Latino Cmty Asset Builders v. Consumer Financial Protection Bureau,*
    581 F. Supp. 3d 101 (D.D.C. 2022) ......................................................................... 10

*Norton v. S. Utah Wilderness Alliance,*
    542 U.S. 55 (2004) .................................................................................................... 23

*Plyler v. Doe,*
    457 U.S. 202 (1982) .................................................................................................. 17

*Richards v. Gelsomino,*
    Civ. A. No. 16-1002 (JDB), 2019 WL 1535466 (D.D.C. Apr. 8, 2019) .................... 18

*SAI v. Transp. Sec. Admin.,*
    315 F. Supp. 3d 218 (D.D.C. 2018) ..................................................................... 23, 24

*Smith v. District of Columbia,*
    413 F.3d 86 (D.C. Cir. 2005) .................................................................................... 15

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ..................................................................................................... 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................... 4

*Village of Arlington Heights v. Metropolitan Housing Development Corp.,*
    429 U.S. 252 (1977) .................................................................................................. 18

*Washington v. Davis*,
    426 U.S. 229 (1976)............................................................................................... 18
*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001)............................................................................................... 24
*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)............................................................................................. 6, 7
*Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*,
    93 F.3d 910 (D.C. Cir. 1996)................................................................................ 18
*Yick Wo v. Hopkins*,
    118 U.S. 356 (1886)............................................................................................... 14
*Young v. Lozano*,
    Civ. A. No. 19-1554, 2020 WL 4339372 (E.D. Cal. July 28, 2020) ........................ 14

## Statutes and Regulations

5 U.S.C. § 551(13) ..................................................................................................... 24
42 U.S.C. § 265 .......................................................................................................... 22
8 C.F.R. § 235.3(b) ..................................................................................................... 23
88 Fed. Reg. 31314 (May 16, 2023) ............................................................................ 4
88 Fed. Reg. 1243 (Jan. 9, 2023) ................................................................................ 8
89 Fed. Reg. 54484 (July 1, 2024)................................................................................ 3

In their Opposition to Defendants' Motion to Dismiss (ECF No. 86), Plaintiffs admonish Defendants for "narrowly focus[ing] the Court's attention on the now-expired Title 42 Process" and characterize "other actions concerning Title 42" as "inapposite." Opp. at 1, 9 n.5. Perhaps Plaintiffs forget telling the Court when they first sued and sought related case designation that the instant case "fundamentally 'grow[s] out of the same event or transaction'" as two other challenges to Title 42 (*Huisha-Huisha v. Gaynor*, Civ. A. No. 21-0100, and *P.J.E.S. v. Wolf*, Civ. A. No. 20-2245). Jt. Status Rep. at 3, ECF No. 20. Plaintiffs explained previously that their other "claims relating to the Del Rio CBP Encampment and how the named Plaintiffs and putative class members were treated while they were processed and expelled under the Title 42 Process also arise out of the enforcement of the Title 42 Process[.]" *Id*. at 6. "This case, *Huisha-Huisha*, and *P.J.E.S.* raise common factual questions because all three cases fundamentally revolve around the same central allegations: the process by which Defendants adopted and implemented the Title 42 Process[.]" *Id*. at 7. In light of the foregoing (and similar arguments made in the briefing of a related case designation), Plaintiffs' recent protestations should ring hollow.

Defendants respectfully submit that Plaintiffs do not have standing to challenge the now-expired Title 42 Process and the implementation of that process in September 2021 when those other "related" cases have been dismissed as moot. Plaintiffs' efforts to keep this case alive through pleading purported "ongoing harms" and "continuing effects" of the Title 42-authorized expulsions and the pre-expulsion processing at Del Rio fail. Those alleged continuing harms and effects simply do not satisfy the well-worn standards for pleading standing, and the Amended Complaint (ECF No. 75) should be dismissed as a result.

But should the Court disagree on the question of standing and keep this case alive when other Title 42 challenges are not, the Court should nonetheless dismiss the Amended Complaint

for failure to state a claim. The various pleading failures identified in Defendants' Motion to Dismiss (ECF No. 82), which are unrebutted or inadequately rebutted in Plaintiffs' Opposition, compel the dismissal of all claims in the Amended Complaint.

## ARGUMENT

### I.    <u>Plaintiffs Lack Standing to Bring Their Claims</u>

#### A.    **Individual Plaintiffs Fail to Allege a Present Injury**

There is no dispute that Individual Plaintiffs are challenging past alleged conduct at Del Rio, Texas during September 2021, including expulsions pursuant to an "expired Title 42 Process," and that past injuries are generally insufficient to plead standing to seek injunctive and declaratory relief, as Individual Plaintiffs do here. *See* Mot. at 11-12; *see generally* Opp. Individual Plaintiffs respond that "by focusing on the timing of the acts that caused Individual Plaintiffs' harms, Defendants mistakenly obscure the *current continuing effects* of those acts" that Individual Plaintiffs believe support standing. Opp. at 8 (emphasis in original). On the contrary, Defendants addressed those purported continuing effects head-on and demonstrated how they are insufficient to meet Individual Plaintiffs' burden to allege they have standing. *See* Mot. at 14-18.

Of the three alleged ongoing harms discussed in the Opposition, one is that "Defendants caused [Individual Plaintiffs] to be ineligible for [Temporary Protected Status]" and that this "loss of an opportunity to pursue a benefit" is enough to establish a present injury-in-fact. Opp. at 11. In support, Plaintiffs rely on *CC Distributors, Inc. v. United States*, 883 F.2d 146 (D.C. Cir. 1989), wherein Air Force contractors were challenging the discontinuation of their ability to compete for certain base supply contracts. *CC Distributors* is of no help to Plaintiffs because there was no question of the traceability of the alleged injury (an inability to compete) to the challenged conduct (discontinuation of contract program). *Id*. at 151 (noting the Government did not dispute traceability).

In contrast, the events in Del Rio in September 2021 and the Centers for Disease Control and Prevention's ("CDC") August 2021 order under Title 42 lack the required casual connection to what Individual Plaintiffs admit is the "independent" and "separate" Temporary Protected Status program.  Opp. at 12.  To have standing the alleged injury must be "fairly traceable to the challenged action" and must not be "th[e] result [of] the independent action of some third party." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).  The lack of causal connection is demonstrated clearly by the fact that, effective July 1, 2024, Domestic Plaintiffs are now eligible to apply for Temporary Protected Status.  By virtue of the Secretary of Homeland Security's recent extension and redesignation of Haiti for Temporary Protected Status, Haitian migrants who have been continuously residing in the United States since June 3, 2024, became eligible to apply for Temporary Protected Status.[1]  Because this alleged injury comes and goes with the independent discretionary decisions of the Secretary of Homeland Security with regard to a separate government program, there is no genuine debate that this alleged harm is not fairly traceable to the conduct challenged in this suit.  *See Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (ruling loan relief under one statutory provision was independent of the ability to provide loan relief under another statute).

Defendants also argued that the Temporary Protected Status injury theory was based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013), namely that it assumes in the absence of Title 42 Individual Plaintiffs would not have been removed pursuant to Title 8 authorities, would have remained in the United States through to November 6, 2022, would have applied for Temporary Protected Status, and would have met other

---

[1]     *See* Extension and Redesignation of Haiti for Temporary Protected Status, 89 Fed. Reg. 54484 (July 1, 2024).  Plaintiffs admit that those "paroled into the United States . . . would [be] eligible for [Temporary Protected Status]."  Am. Compl. ¶ 282.

eligibility criteria under the program.  *See* Mot. at 15.  While Individual Plaintiffs argue there is no "uncertainty" about their qualifications for Temporary Protected Status, there are actually no factual allegations that any specific Individual Plaintiff would have even applied for Temporary Protected Status or otherwise satisfied all the prerequisites required for that benefit.  *See generally* Am. Compl.  To assume the truth of the factual allegations in a complaint, there needs to be well-pleaded factual allegations in the first place.  The lone generic, conclusory sentence in paragraph 230 cited by Individual Plaintiffs (Opp. at 12) does not allege that the forgoing chain of possibilities would have occurred with respect to any Individual Plaintiff and thus is not "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Second, this theory is impermissibly "conjectural" because it requires a series of predictions of future events based, in part, on the actions of third parties.  *Lujan*, 504 U.S. at 560.  Courts, though, "may reject as overly speculative those [allegations] which are predictions of future events."  *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (distinguishing between allegations that are predictions and those that are demonstrable facts).

Individual Plaintiffs also argue that they are harmed because they are now subject to another distinct policy called Circumvention of Lawful Pathways, or what Plaintiffs inaccurately call "the Asylum Ban."[2]  Opp. at 13.  First, Domestic Plaintiffs cannot rely on this alleged harm because they are already in the United States seeking asylum.  Second, Foreign Plaintiffs cannot rely on this alleged harm because, as Defendants explained in their Motion and for the reasons discussed above, being "subject to" this independent 2023 regulation, which is not even being challenged in the instant action, is not traceable to the 2021 conduct being challenged.  *Milligan v. Blinken*, Civ. A. No. 20-2631 (JEB), 2021 WL 3931880, at *6 (D.D.C. Sept. 2, 2021) ("Plaintiffs

---

[2]     *See* Circumvention of Lawful Pathways, 88 Fed. Reg. 31314 (May 16, 2023).

cannot rely on a continuing harm caused by a different policy to prop up an otherwise moot claim against the Proclamations, which no longer affect them.").  Notably, Individual Plaintiffs cite no legal authority to the contrary.  *See* Opp. at 13-14.  Further, nowhere in the Amended Complaint do Foreign Plaintiffs allege a present or impending harm from being subject to Circumvention of Lawful Pathways, *see* Am. Compl. ¶¶ 310-42, nor could they as there are no allegations of impending travel to the southern border.  *See infra* at 6-7.

A third harm cited by Individual Plaintiffs relates to the dangerous conditions in Haiti, which again would not apply to Domestic Plaintiffs.  Individual Plaintiffs now argue that "[i]t is not the existence of violence and instability in Haiti that Plaintiffs claim as the harm caused by Defendants; rather it is that Defendants 'unlawfully expelled' Individual Plaintiffs back to Haiti under the Title 42 Process and pursuant to the Del Rio Deterrence Decision." Opp. at 10.  Yet this argument is contradicted by the Amended Complaint, which plainly alleges violence and instability in Haiti as an ongoing harm to certain Individual Plaintiffs.  *See* Am. Compl. ¶¶ 219-20, 223-26.  Further, to the extent that Individual Plaintiffs now wish to emphasize the expulsion in September 2021 as the harm, they effectively concede that they are relying on past injuries to support standing, which they effectively conceded was insufficient to support standing. Ultimately, Individual Plaintiffs do not dispute Defendants' observation that the alleged violence and instability in Haiti arise from the conduct of third parties in Haiti and not from the exercise of Title 42 authority in September 2021.  *See generally* Opp; Mot. at 17.

What is also notable about Individual Plaintiffs' reliance on these three alleged harms is that none of them is particular to any Individual Plaintiff who crossed the border at Del Rio in September 2021.  Any Haitian migrant not residing in the U.S. on or before November 6, 2022, would have been ineligible for the December 2022 redesignation of Haiti for Temporary Protected

Status; any migrant entering the United States from Mexico without authorization between May 11, 2023, and May 11, 2025, would be subject to the Circumvention of Lawful Pathways rule; and any person currently residing in Haiti would be subject to the conditions in Haiti. These purported injuries are not "specific to the plaintiff" who crossed the border at Del Rio in 2021 and were expelled under Title 42, and therefore are not "particularized" injuries needed to support standing. *Comm. on Judiciary of U.S. House of Reps. v. McGahn*, 968 F.3d 755, 767-77 (D.C. Cir. 2020).

Finally, the Opposition at one point raises the notion of a "procedural injury." Opp. at 9-10. The Amended Complaint does not explicitly allege a "procedural injury," *see generally* Am. Compl., nor does the Opposition identify a particular source of procedural injury. *See* Opp. at 9-10. But if one fills in the blank left by Plaintiffs and assumes that the missing procedure or process is one under Title 8 that was not available in September 2021 to those covered by the CDC's Title 42 Order, there is no ongoing harm because those protections under Title 8 are now available subject to applicable law and regulation, as shown by Domestic Plaintiffs' ability to obtain advance authorization to travel to the United States, obtain parole, and apply for asylum. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) ("[Plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the [statute's] procedural requirements may result in no harm.").

### B.    Individual Plaintiffs Fail to Allege an Imminent Threat of Injury

Individual Plaintiffs also cannot rely on a supposed threat of future injury because the allegations in the Amended Complaint plainly fall short of satisfying the relevant legal standard. That standard, as set forth by the Supreme Court and ignored in the Opposition, requires that the "threatened injury must be 'certainly impending.'" *Clapper*, 568 U.S. at 401 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). While the "imminence" requirement (i.e., that the injury be "actual or imminent") "is concededly a somewhat elastic concept, it cannot be stretched beyond

its purpose." *Id*. at 409.  "[W]e have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury" are not sufficient.'"  *Id*. (quoting *Whitmore*, 495 U.S. at 158; emphasis in original).

Individual Plaintiffs do not even attempt to argue that their pleading meets this threshold. *See* Opp. at 15-17.  Rather, Individual Plaintiffs merely restate the generalized hypothetical intent-to-return allegations untethered to a named Individual Plaintiff.  *Id*. (relying on Am. Compl. ¶ 253). In contrast, the allegations of Foreign Plaintiffs fail to state a "certainly impending" return to the U.S.  For example, Eric and Florence Doe state they "still want this opportunity" to seek refuge in the United States (Am. Compl. ¶ 317); Pierre and Ginette Doe state that they "still wish[] to seek protection in the United States" (*id*. ¶ 325); and both James Doe and Delgado Doe state only that they "still want[] the opportunity to" ask for asylum (*id*. ¶¶ 333, 342).  "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury[.]"  *Lujan*, 504 U.S. at 564 (citations omitted); *Laufer v. Alamac Inc*., 621 F. Supp. 3d 1, 12 (D.D.C. 2021), *aff'd*, No. 21-7056, 2021 WL 4765435 (D.C. Cir. Sept. 10, 2021) (allegation that "suggests" plaintiff will book through hotel website allegedly inaccessible to disabled users is insufficient because "any future injury in re-visiting the websites to attempt to reserve a room is not '*certainly impending*'" (emphasis in original)).

The Amended Complaint's allegations are plainly distinguishable from those of the sole case relied on by Individual Plaintiffs, *Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011).  That case involved a U.S. citizen living in Canada who twice had attempted to buy a firearm in the United States but was denied and had declared his intent to both return to the United States to visit family and friends and to purchase a firearm, which he would store with his family.  Plus, the "future

injury in *Dearth* was certain to occur because the challenged law would undeniably prevent the plaintiff from purchasing a firearm the next time he traveled to the United States[.]" *Gerber Prod. Co. v. Perdue*, 254 F. Supp. 3d 74, 83 (D.D.C. 2017).  Here, however, there are no such factual allegations of imminent travel to the United States, and there is no "certainty" of encountering the same conduct and policy being challenged in this suit.

Indeed, even if Foreign Plaintiffs were to travel to the United States without authorization[3] and cross the southern border to seek asylum, it is wholly speculative that they would be subject to the same conduct under challenge in this suit.  The public health orders under Title 42 expired, and the most that Plaintiffs allege is that the CDC has reserved its authority to issue a new order of unknown scope *if* there is a "substantial change in the public health situation."  Am. Compl. ¶ 216.  Likewise, Plaintiffs cannot allege that a "large migration event" of the sort underlying their constitutional claims is certainly impending.  *See* Opp. at 15-16 (citing ¶ 253 alleging "*if* another large migration event develops" (emphasis added)).  There simply are no allegations of a substantial risk of either event happening imminently.

### C.    Haitian Bridge Alliance Cannot Establish Organizational Standing

In the Motion, Defendants established that an organizational plaintiff, like an individual plaintiff, seeking declaratory and injunctive relief may not plausibly plead standing based on past injuries to the organization.  *See* Mot. at 19.  Haitian Bridge does not disagree.  Opp. at 17. Accordingly, Haitian Bridge's past injuries—effectively all the harms alleged by Haitian Bridge— cannot support standing.

---

[3]      In contrast, there is a process for Haitians to seek authorization to travel to the United States to seek parole.  *See* Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1243 (Jan. 9, 2023).

Defendants also argued that the Amended Complaint makes only vague, conclusory, and legally insufficient allegations of "continuing" or "ongoing" harms. *See* Mot. at 20. Haitian Bridge disagrees, but tellingly, the Opposition is unable to identify any non-conclusory allegation of an actual present or imminent "impairment" of its operations. Instead, Haitian Bridge confuses an impairment of its operations with an increase in the amount of unspecified "direct legal services"—supposedly distinct from the instant litigation—to Haitian migrants that are somehow "more complicated" or "more complex" because of Defendants' challenged conduct. *See* Opp. at 18-21.

First, such vague allegations fall well short of the pleading standards under *Twombly* and *Iqbal* and the requirement to allege "a concrete and demonstrable injury to [its] activities" under *Lujan*.[4] *See Keyhanpoor v. Blinken*, 633 F. Supp. 3d 88, 94 (D.D.C. 2022) ("conclusory allegations, without factual detail" failed to show organization's "very ability to provide services has been 'perceptibly impaired'").

Second, having to provide more "services" to Haitian migrants is not an "impairment" of Haitian Bridge's operations—it is what Haitian Bridge normally performs. *See* Am. Compl. ¶ 12. Courts recognize that organizational standing cannot be supported by asserting activities that the organization would otherwise engage in now injure it or that it is injured by its own diversion of resources to meet increased demands. *See* Mot. at 22-23 (citing cases). Again, it is Haitian

---

[4]    Haitian Bridge suggests that it "need only make 'general factual allegations of injury' at the pleading stage." Opp. at 19 n.14. The Court should not be led astray, as this is not an accurate representation of the pleading standards. First, the D.C. Circuit has been clear that the pleading standards set forth in *Twombly* and *Iqbal* apply to pleading standing. *See Air Excursions LLC v. Yellen*, 66 F.4th 272, 278 (D.C. Cir. 2023); *Kareem v. Haspel*, 986 F.3d 859, 866-67 (D.C. Cir. 2021). Second, the case cited by Plaintiffs was quoting *Lujan*, which quoted an earlier decision that quoted *Conley v. Gibson*, 355 U.S. 41 (1957), which was overruled by *Twombly*. There is no lesser standard for alleging injury and standing.

Bridge's burden to plausibly allege that "defendant's conduct perceptibly impaired the organization's ability to provide services" or caused an "inhibition of [the organization's] daily operations." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (cleaned up). An increase in service provision is not an impairment of Haitian Bridge's operations. In addition to the cases cited in the Motion, *see* Mot. at 22-23, Defendants direct the Court to *National Association for Latino Community Asset Builders v. Consumer Financial Protection Bureau*, 581 F. Supp. 3d 101 (D.D.C. 2022). There, an organization allegedly had to expend more resources and provide more assistance than it otherwise would have in the absence of the challenged conduct. The court concluded that the organization, as Haitian Bridge does, confused the two prongs of the injury analysis and failed to plead an impairment. *Id*. at 106 ("Expenditure of resources in response to agency action alone is not enough to establish a cognizable injury . . . . Case law in this Circuit makes clear that there must be a separate perceptible impairment of the organization's ability to provide services[.]").

Further, in response to Defendants' argument that the Amended Complaint also fails to allege a present injury traceable to the challenged conduct, Haitian Bridge argues that its "service provision" to Haitian migrants has become "more complex and resource-intensive" because of the so-called "Del Rio Deterrence Decision" and Title 42. Opp. at 21. But it is not at all clear what this means. Further, there are no allegations tying this increase in unspecified "service provision" to the distinct group of Haitian migrants who crossed the border at Del Rio in September 2021 rather than Haitian migrants more generally.

Finally, Defendants pointed out that the declaratory and injunctive relief sought in the Amended Complaint would not redress any injury to Haitian Bridge. *See* Mot. at 23. Haitian Bridge disagrees, arguing the requested relief would "directly reduce the service impairment and

the amount of resources that Haitian Bridge must divert to provide direct legal services to individuals." Opp. at 22. This assertion is conclusory, as Haitian Bridge neglects to identify any particular requested relief that would have this effect or explain how such a reduction would result.

*      *      *

Individual Plaintiffs and Haitian Bridge seek to avoid the fate of other Title 42 litigations and other cases seeking to enjoin or declare allegedly unlawful past policies and actions of the Government. They cannot because there is no live case or controversy. *See* Mot. at 9-13. Which explains why the purported ongoing harms and continuing effects fall so far short of pleading plausible concrete, non-conjectural, and present or imminent injuries traceable to the challenged conduct. In fact, Plaintiffs spend little time explaining why this case should proceed in contrast to other Title 42 challenges that did not. In a footnote, Plaintiffs posit that it is because "the remedy sought in those cases concerned only a forward-looking injunction to block an ongoing policy, and did not include a remedy to fix the continuing adverse consequences of past expulsions, as Plaintiffs do here." Opp. at 9 n.5. Yet, the plaintiffs in *Huisha-Huisha v. Mayorkas*, Civ. A. No. 21-0100 (D.D.C.), like Plaintiffs here, sought a similar fix through an order declaring unlawful the Title 42 process as applied to named plaintiffs and class members and affording them access to asylum and other protections. *Id*., ECF No. 131. And when Plaintiffs presently argue that their many requests for injunctive relief are "consistent" with normal vacatur and remand under the Administrative Procedure Act, Opp. at 38-39, the distinction with *Huisha-Huisha* further disappears. Nevertheless, Plaintiffs fail to plausibly allege that there is a live case or controversy providing Plaintiffs with standing to sue.

II.    **Plaintiffs' Claims Based on the Due Process Clause Should Be Dismissed**

    A.    **Substantive Due Process Claims**

        1.    Count Two

Plaintiffs do not credibly dispute that alleging a recognized liberty or property interest to which they were entitled and deprived is required to state a due process claim. Mot. at 24-25; *see* Opp. at 24-26. Plaintiffs' own cited cases make this clear. *See, e.g., Baby M. ex rel. Sabra v. Pompeo*, 453 F. Supp. 3d 291, 316 (D.D.C. 2020) ("To prevail on a due process claim, a plaintiff must demonstrate three elements: (1) "deprivation of a protected liberty or property interest" . . . . The "plaintiff must show that there was a cognizable liberty or property interest at stake.") (cleaned up). But Plaintiffs' devotion of no more than a few sentences to whether they have adequately alleged this requirement, *see* Opp. at 25, effectively confirms Defendants' argument that the Amended Complaint fails to state a substantive due process claim.

The Opposition repeats the lone conclusory allegation that Defendants "violated Individual Plaintiffs' fundamental rights . . . to bodily integrity, freedom from bodily restraint, and family integrity" (citing Am. Compl. ¶ 386) followed by a short summary of the allegations of conduct purportedly violating those rights. Opp. at 25. Missing, however, is any explanation of how those particular allegations plead an actionable entitlement to and deprivation of these specific rights in accordance with binding legal authority. For example, Defendants explained that allegations of inadequate humanitarian provisions in Del Rio and alleged assaults do not implicate the right to "bodily integrity," which refers to something very specific and very different—the right to control one's own body. *See* Mot. at 26 (citing cases); *see also Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 379 (2022) (Breyer, J., dissenting). Plaintiffs do not directly rebut that argument. Opp. at 25. Defendants also explained that the right to "freedom from bodily restraint" arises in the context of incarceration, involuntary commitment, and similar government-imposed

confinement. *See* Mot. at 27. Plaintiffs do not explain how that is applicable here, and as discussed below, it is not applicable because Plaintiffs have not plausibly alleged such government-imposed confinement at the alleged "CBP Encampment." And Defendants explained the Amended Complaint fails to plead a violation of "family integrity," which refers to the interest of parents in the care, custody, and control of their children. *See* Mot. at 27. In response, Plaintiffs cite paragraph 144, but otherwise fail to explain how Mayco ("Michael") Celon (but not his wife) being away from one of his children for "an hour" states a violation of this right. Opp. at 25. In sum, what the Amended Complaint alleges does not establish Individual Plaintiffs' entitlement to and deprivation of recognized constitutionally protected liberty interests.

Essentially, Plaintiffs would like the Court to skip past the threshold requirement of pleading a recognized liberty interest to which Individual Plaintiffs were entitled and deprived and go directly to their allegations of supposedly conscience-shocking treatment. But as a matter of law, the Court cannot, and it should decline Plaintiffs' invitation to reversible error. *See, e.g., Abdelfattah v. Dep't of Homeland Sec.*, 787 F.3d 524, 540 (D.C. Cir. 2015) (affirming dismissal of substantive due process claim because "Abdelfattah has not alleged facts suggesting he has been deprived—arbitrarily or otherwise—of a cognizable liberty or property interest."); *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 206 (D.C. Cir. 2003) (holding that substantive due process imposes no burden on the government "in the absence of a liberty or property interest").

This apparent desire to avoid having to show the existence of a recognized constitutionally protected liberty interest is where *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), comes in. Plaintiffs spend two pages discussing the case but still miss the relevance of that decision. What *Thuraissigiam* teaches is that being a few feet onto U.S. soil, by itself, is not sufficient for constitutional due process protections to apply. *See id.* at 139 ("When [a

noncitizen] arrives at a port of entry—for example, an international airport—the [noncitizen] is on U.S. soil, but the [noncitizen] is not considered to have entered the country for purposes of [due process]"). The case is simply a rebuttal to Plaintiffs' constitutionally incorrect assertion that the Due Process Clause applies to anyone "on United States soil" without anything more to show, such as a recognized liberty interest at stake. Am. Compl. ¶¶ 370, 383. And while it is true that *Thuraissigiam* dealt with procedural due process issues, Plaintiffs do not explain on what basis "substantive" protections of the Fifth Amendment Due Process Clause would apply to noncitizens effectively "stopped at the border" when constitutional "procedural" protections would not.[5]

With respect to Plaintiffs' allegations that Defendants' conduct "shocks the contemporary conscience," Plaintiffs fail to explain how their allegations rise above common law tort. *See* Opp. at 26. As Defendants noted previously, Mot. at 25, a plaintiff must allege conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001) (cleaned up). "This stringent requirement exists to differentiate substantive due process . . . from local tort law." *Id.* (citations omitted). Plaintiffs, though, do not explain why the conduct they allege meets the shock the conscience standard. Nor do they explain why the Court should employ the shocks the conscience test beyond where there

---

[5]     Plaintiff's argument that *Thuraissigiam* does not foreclose substantive process claims, Opp. at 24, relies on factually inapposite cases. For example, *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 63 (D.D.C. 2020), involved plaintiffs in ICE detention pending expedited removal under Title 8, not yards within the southern border. The plaintiff in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), also was not at the border but had instead developed substantial connections in the United States.

Plaintiffs also argue that other courts have "addressed equal protection claims on their merits notwithstanding *Thuraissigiam*'s dicta" and cite two cases that are plainly unsupportive. The decision in *Bollat Vasquez v. Mayorkas*, 520 F. Supp. 3d 94 (D. Mass. 2021), does not address the merits of an equal protection claim, and agreed with *Thuraissigiam*'s affirmation of the "longstanding distinction" in the law that treats "minimal border-crossing" as not effecting an entry. And *Young v. Lozano*, Civ. A. No. 19-1554, 2020 WL 4339372 (E.D. Cal. July 28, 2020), involves a state prisoner filing a petition for writ of habeas corpus.

exists a "special relationship" or state endangerment. *See D.A.M. v. Barr*, 474 F. Supp. 3d 45, 64 n.19 (D.D.C. 2020). In other words, stating a substantive due process claim requires much more than dressing potentially tortious conduct in constitutional clothing.

2.    Count Three

Count Three is explicitly predicated on the "special relationship" theory of substantive due process. Am. Compl. ¶¶ 391-93. Defendants explained that the contours of this theory are set forth in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), and that the Amended Complaint plainly does not allege that while waiting to be processed by Customs and Border Protection ("CBP") in Del Rio, Defendants affirmatively "restrain[ed] [Individual Plaintiffs'] freedom to act on [their] own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty." Mot. at 28. In response, Plaintiffs ignore *DeShaney* and do not even attempt to argue that the Amended Complaint satisfies its requirements. *See generally* Opp. at 27-29.

Instead, Individual Plaintiffs attempt to compare their allegations of conditions "wait[ing] for their ticket number to be called" by CBP to those in *Smith v. District of Columbia*, 413 F.3d 86 (D.C. Cir. 2005). *Smith* involved "an adjudicated delinquent whom the District had, by affirmative use of its police powers, placed with its agent, [delinquent youth facility], through a court order[.]" *Id.* at 94. "[T]he District's legal custody over [the youth] is a good indicator that it . . . had legal responsibility for his daily care." *Id.* Similarly, in *Harvey v. District of Columbia*, 798 F.3d 1042, 1050 (2015), the D.C. Circuit found a duty to care for an involuntarily committed mental patient in a District of Columbia group home. These cases provide no aid to Plaintiffs because they involved obvious affirmative acts of government power restraining personal liberty in contrast to what is alleged in the Amended Complaint, which reflects Individual Plaintiffs' ability to leave Del Rio and make decisions regarding their own well-being. *See* Am. Compl. ¶¶ 4,

13, 16-18, 22, 105, 135, 139, 161-63, 258, 289-90, 299, 307, 321, 340.  The Court should decline Plaintiffs' invitation to expand a doctrine that is "narrowly construed" and inapplicable to the circumstances at Del Rio.  *Butera*, 235 F.3d at 648.

> **B.    Procedural Due Process**

Plaintiffs confirm that in Count Four they claim only a statutorily protected interest in access to asylum, withholding of removal, and Convention Against Torture protections.  Opp. at 30.  In response to Defendants' argument that the D.C. Circuit has already rejected Plaintiffs' position that in September 2021 Individual Plaintiffs were unlawfully denied access to asylum, *see* Mot. at 31, Plaintiffs take a pass on explaining how the D.C. Circuit's reasoning in *Huisha-Huisha* is incorrect as a matter of law.  That the D.C. Circuit had ruled in the context of a preliminary injunction does not make its reasoning suspect.  The D.C. Circuit's decision rejects Plaintiffs' allegation of an unlawful deprivation of a right to make claims for asylum, concluding instead that the CDC Order foreclosed discretionary grants of asylum and the "statutorily mandated procedures" for asylum applications for those covered by the CDC Order.  Plaintiffs offer nothing persuasive to undermine that ruling.

With respect to Plaintiffs' argument that they were "at minimum entitled" to withholding of removal and Convention Against Torture protections, Defendants maintain that Plaintiffs have failed to allege a deprivation of those protections because no Individual Plaintiff alleges to have claimed a fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion or claimed a fear of torture upon a return to Haiti.  Mot. at 32. Plaintiffs do not deny this is true for almost all Individual Plaintiffs.  Rather, they point to statements by only two Individual Plaintiffs.  Jacques Doe allegedly "tried to tell officials on the plane that he could not return to Haiti because he feared danger there."  Am. Compl. ¶ 279.  Mayco "Michael" Celon allegedly told an officer" that "you might as well just kill us."  *Id*. ¶ 150.

Defendants believe those statements fall short of claiming fear of persecution or torture, but the Court need not resolve that question because neither of these Individual Plaintiffs has standing. Both are Domestic Plaintiffs residing in the United States after having received grants of parole and who submitted or are in the process of submitting applications for asylum and withholding of removal. *Id*. ¶¶ 272, 281. And Plaintiffs do not genuinely dispute that those Individual Plaintiffs who returned to Mexico prior to processing by CBP would not have been harmed by alleged infirmities in procedural due process. *See* Mot. at 31 n.7; Opp. at 30-32.

    **C.**    **Equal Protection**

In their Opposition, Plaintiffs fail to rebut Defendants' demonstration that, as migrants who never effected entry because they were stopped at the border, *Thuraissigiam*, 591 U.S. at 139 (citations omitted), protections under the Fifth Amendment's equal protection clause do not extend to them. *See* Mot. at 33 (citing *Gomez v. Trump*, 485 F. Supp. 3d 145, 188 (D.D.C. 2020) and *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997)); *see also* Opp. at 32-37. Count One should be dismissed on this basis alone.

Count One may also be dismissed for failure to otherwise state a claim, as Plaintiffs' defense of their pleading is unpersuasive. Plaintiffs begin with the surprising contention that they do not need to allege Haitian migrants were treated differently on account of their race than other similarly situated non-Haitian migrants. Opp. at 28-29. Yet guarding against unequal treatment is the very purpose of the Equal Protection Clause, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). That courts have reasoned that comparator evidence is unnecessary in cases where there is an overt, facially discriminatory act, does not mean such evidence is not necessary when challenging facially neutral conduct, such as the CDC's orders under Title 42.

And contrary to Plaintiffs' assertions, *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), does not hold or even suggest that an equal protection claim can be stated without pleading disparate treatment or impact. The "important starting point" for assessing discriminatory intent under *Arlington Heights* and other equal protection cases in this Circuit is "the impact of the official action whether it 'bears more heavily on one race than another.'"[6] *Id*. at 266. The Supreme Court in *Arlington Heights* was building off the Court's previous decision in *Washington v. Davis*, 426 U.S. 229 (1976), which "made it clear that official action will not be held unconstitutional solely because it results in a racially disproportionate impact." 429 U.S. at 264-65. "Proof of racially discriminatory intent or purpose" is also required to state an equal protection claim. *Id*. at 265. In *Arlington Heights*, the lower court found a zoning decision "would have a disproportionate impact on blacks," but because impact alone was not sufficient, the Court looked to other "evidentiary sources" to determine "whether invidious discriminatory purpose was a motivating factor" for the decision that led to the disparate impact. *Id*. at 259.

Plaintiffs contend that they nonetheless allege disparate treatment, but the pleading failures identified in Defendants' Motion remain. Plaintiffs argue that a group of migrants that crossed in Mission, Texas, received more favorable treatment, but the Amended Complaint lacks the factual pleading necessary to conclude that this group (i) was "similarly situated" to the 15,000 migrants

---

[6]     *See also, e.g., Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910 (D.C. Cir. 1996) ("The threshold inquiry in evaluating an equal protection claim is, therefore, 'to determine whether a person is similarly situated to those persons who allegedly received favorable treatment.'" (citation omitted)); *Richards v. Gelsomino*, Civ. A. No. 16-1002 (JDB), 2019 WL 1535466, at *10 (D.D.C. Apr. 8, 2019) ("The threshold inquiry in evaluating an equal protection claim is . . . to determine whether a person is similarly situated to those persons who allegedly received favorable treatment. . . . Proof of disparate treatment is an absolute requirement." (cleaned up)).

crossing at Del Rio; and (ii) was treated more favorably because of their race (which is not alleged). Plaintiffs also argue Ukrainian migrants received more favorable treatment, but they cannot deny that (i) they did not allege a "large migration event" of Ukrainians that made them "similarly situated" to the event in Del Rio; and (ii) "[d]istinctions on the basis of nationality may be drawn in the immigration field." *Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979) (citations omitted). And most significantly, Plaintiffs do not deny that all groups were subject to the same orders under Title 42. Plaintiffs have plainly failed to allege disparate treatment.

As noted, plausible allegations of discriminatory intent or purpose are also required to state a claim, and again, what Plaintiffs allege fails to meet the pleading threshold. Plaintiffs take issue with Defendants' argument that the Amended Complaint does not identify the decisionmaker(s) who acted with discriminatory intent. Opp. at 34. But Plaintiffs cannot avoid the Supreme Court's directive that "to prevail under the Equal Protection Clause, [plaintiff] must prove that the decisionmakers in his case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). As the Opposition confirms, Plaintiffs cannot identify the supposed decisionmakers even generally. *See* Opp. at 34-35. Some degree of specificity is necessary to prevent Plaintiffs from conflating the statements and actions of non-decisionmakers with those responsible for the complained of conduct. This was the point made by the Supreme Court in *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1916 (2020), when it concluded that President Trump's "critical statements about Latinos" were "unilluminating" and not probative because they were not "contemporary statements" of the "relevant actors" for the recission of Deferred Action for Childhood Arrivals. The paragraphs relied on by Plaintiffs for the supposed contemporary statements of decisionmakers bounces from unnamed officials at meetings with White House advisors to unidentified personnel at an

immigration detention facility to unnamed officials at CBP's Del Rio Sector.  Opp. at 35.  Such hodge-podge allegations are insufficient, and Plaintiffs cite no analogous case to suggest otherwise.

Defendants' Motion also demonstrates other flaws with Plaintiffs' effort to allege discriminatory purpose using the considerations identified in *Arlington Heights*.  *See* Mot. at 37-38.  But rather than address Defendants' arguments directly, Plaintiffs mistakenly argue that Defendants are asking the Court to "weigh the evidence" at the pleading stage.  Opp. at 36-37.  On the contrary, Defendants' Motion clearly asks whether, taking the factual allegations as true, they plead the *Arlington Heights* factors.  For example, Plaintiffs' recitation of a "history of anti-Haitian immigration policies" (Am. Compl. ¶¶ 36-51) from previous Administrations (and previous decades) taken as true cannot provide the "historical background of the decision" because it is not "reasonably contemporaneous with the challenged decision."  *McCleskey v. Kemp*, 481 U.S. 279, 298 n.20 (1987).  As another example, it is not impermissible in a Rule 12(b)(6) motion to observe that when the Amended Complaint alleges "depart[ures] from" the Department of Homeland Security ("DHS") Defendants' "typical procedures for processing asylum seekers" (Am. Compl. ¶¶ 175), it fails to allege what constitutes "typical procedures" for processing an influx of 15,000 migrants in Del Rio, Texas.  And it is entirely appropriate to identify specific allegations that seemingly contradict Plaintiffs' conclusory allegation of a departure from typical procedures, because courts should not "accept inferences that are unsupported by the facts set out in the complaint."  *Arpaio*, 797 F.3d at 19.  Thus, the equal protection claim fails because Plaintiffs have not established that Equal Protection Clause protections were available to these migrants seeking entry, and if so, that they plausibly allege disparate treatment and discriminatory intent.

### III.    The APA Claims Should Be Dismissed

#### A.    Injunctive Relief Is Not Available to Plaintiffs

Defendants argued that Section 706(2) of the APA does not grant this Court the authority or power to order the specific injunctive relief sought by Plaintiffs and that those claims for relief should be dismissed. *See* Mot. at 39-40. Plaintiffs' responses to this argument miss the mark.

First, Defendants' argument here is not one of standing, so Plaintiffs are mistaken in construing it as an issue of redressability. Opp. at 37. But it is a response to Plaintiffs' defense of standing. Plaintiffs are challenging, pursuant to the APA, CDC orders that expired more than a year ago. In response to the obvious argument that there is no live case or controversy and thus no standing to challenge an expired government policy, Plaintiffs pivot to arguing that there are ongoing injuries that the Court can redress through a range of specific injunctive relief, which Plaintiffs label retrospective relief. *See* Opp. at 14-15 (citing Prayer for Relief (h)-(j)); Am. Compl. ¶¶ 410, 430, 444. But the APA does not authorize a court to issue the type of specific injunctive relief requested. Because this case should not be kept alive based on requests for relief that are ultimately not authorized by the APA, Plaintiffs are incorrect in arguing it is premature to dismiss or strike such claims for relief at this time.

Second, Plaintiffs attempt to portray the specific injunctive relief requested in the Amended Complaint as consistent with vacatur and remand, which Plaintiffs do not dispute is the normal remedy for APA violations. Opp. at 38; Mot. at 38-39. Except what Plaintiffs actually seek in their Prayer for Relief goes far beyond setting aside an unlawful agency action: order "affording" Individual Plaintiffs "access to asylum" (¶ g); order that Individual Plaintiffs and class members were "residing and continuously present in the U.S. since September 2021" for the "purposes of seeking Temporary Protected Status" (¶ h); order "requiring Defendants to facilitate [Individual Plaintiffs and class members'] return" to the United States (¶ i); order that Individual Plaintiffs and

class members "are not subject to the Asylum Ban" (¶ j); order that Individual Plaintiffs and class members "are immediately eligible" to apply for work authorization (¶ k); and order "declaring that Individual Plaintiffs and class members outside the United States are immediately eligible to be considered for a grant of humanitarian parole (¶ l).  Am. Compl. at 116-17.  Plaintiffs offer no case law to indicate that any of these proposed orders are consistent with vacatur and remand and would be authorized by Section 706(2).

**B.      Plaintiffs Fail to Allege a Plausible Claim of Withheld or Delayed Action**

First, Plaintiffs fail to explain why Count Seven is not moot.  As noted in the Motion, Plaintiffs do not allege that the immigration procedures at issue continue to be withheld or delayed.  Mot. at 43.  This makes this case distinguishable from the two cases cited by Plaintiffs, Opp. at 44, where the procedures at issue (making claims for asylum and processing diversity visas) were allegedly being withheld.  Here, there is no agency action to compel to be performed.

Second, even if this claim was not moot, the Amended Complaint fails to state a plausible claim for relief.  Again, the D.C. Circuit in *Huisha-Huisha* has already rejected the arguments made by Plaintiffs that Defendants unlawfully withheld asylum procedures.  The D.C. Circuit concluded that the public health authority provided in 42 U.S.C. § 265 likely "grants the Executive sweeping authority to prohibit [noncitizens] from entering the United States during a public-health emergency," including the authority to "expel [noncitizens] who violate such a prohibition[.]" *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022).  Plaintiffs argue that this Court must harmonize the provisions in Title 8 with those in Title 42, but neglect to mention that the D.C. Circuit already provided its "best reconciliation of the two statutes" when it ruled that 42 U.S.C. § 265 foreclosed grants of asylum and the statutory "procedures that [noncitizens] use to apply for asylum" provided for in Title 8.  *Id*. at 730-31.  Plaintiffs do not provide this Court with a compelling reason why the D.C. Circuit's harmonization is wrong and should not be followed.

Third, while the D.C. Circuit in *Huisha-Huisha* concluded that the CDC order could not displace statutory protections regarding withholding of removal and Convention Against Torture, the Amended Complaint (and the Opposition) fails to identify a "ministerial or non-discretionary" procedure Congress required DHS Defendants to take in September 2021. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004); *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) ("[C]ourts cannot compel agencies to take action beyond what is legally required of them."). Plaintiffs argue that CBP and Immigration and Customs Enforcement ("ICE") Defendants were "required" to ask questions contained on Form I-867B, Opp. at 43, but that form is only used when noncitizens (unlike Individual Plaintiffs) are being processed for expedited removal. *See* 8 C.F.R. § 235.3(b). Plaintiffs also argue that CBP and ICE Defendants "failed to comply" with the Capio Memo, Opp. at 43, but the Opposition does not identify the "processes" in the Capio Memo that were withheld. Moreover, Count Seven does not allege violations of Capio Memo processes, *see* Am. Compl. ¶¶ 445-60, and Plaintiffs cannot amend their complaint through briefing. *See, e.g., SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 234 (D.D.C. 2018). Finally, Plaintiffs do not identify any instance in which an Individual Plaintiff expressed to CBP or ICE Defendants a fear of persecution or torture if expelled to Haiti. Opp. at 40-44.

### C.    There Is No "Del Rio Deterrence Decision" To Challenge Under the APA

As the Opposition makes painfully clear, there is no "Del Rio Deterrence Decision" to be challenged under the APA. In its Motion, Defendants demonstrated that to the extent such a "Decision" ever existed, Plaintiffs pleaded themselves out of Court by alleging that the "Del Rio Deterrence Decision was made in September 2021 by White House advisors at the highest levels, including senior advisors on the" National Security Council and Domestic Policy Council. Am. Compl. ¶¶ 23, 61, 62. Plaintiffs effectively concede that actions of the Executive Office of the President are not subject to review under the APA. Opp. at 47. Plaintiffs instead briefly argue

- 23 -

that a "directive from the White House that is later adopted and implemented by an agency" may be challenged under the APA. *Id*. Except the case cited by Plaintiffs involved not a decision by the White House but an actual agency action in the form of the EPA's national ambient air quality standards. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001).

Plaintiffs' effort to spin an alleged White House decision as an agency action also fails because the Amended Complaint fails to allege anything resembling an agency action as delineated in 5 U.S.C. § 551(13) or any judicial authority. Plaintiffs argue that the "Del Rio Deterrence Decision" was an agency "sanction" even though the word "sanction" never appears in the Amended Complaint, and the Opposition fails to identify any analogous "sanction" considered by a court. Opp. at 45. Failing that, Plaintiffs argue that maybe the "Del Rio Deterrence Decision" "can be viewed as an 'order,' a 'denial' of 'relief,' or a 'failure to act[.]'" *Id*. at 46. This "formulaic recitation" of 5 U.S.C. § 551(13) and citation to roughly sixty paragraphs of the Amended Complaint does not get Plaintiffs past *Twombly* and *Iqbal*.

Unsurprisingly, Plaintiffs fair no better in articulating how this nebulous "sanction" satisfies the test for final agency action. Plaintiffs cannot point to any allegations plausibly showing the so-called "Del Rio Deterrence Decision" was the "consummation of [an] agency's decisionmaking process" and "one by which rights or obligations or . . . legal consequence will flow." *See* Opp. at 45-46; *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Plaintiffs' Opposition is no less generalized and conclusory than the Amended Complaint—Plaintiffs argue they have satisfied the first prong because the decision "is complete." Opp. at 46. Plaintiffs argue that legal consequences flowed from the "Del Rio Deterrence Decision" because Individual Plaintiffs "were subjected to inhumane conditions and hastily expelled." *Id*. at 47. But again, Plaintiffs do not

explain how legal consequences flowed from this alleged "Decision" distinct from an actual final agency action like the August 2021 CDC order.

Finally, Plaintiffs do not dispute that the APA does not provide courts with oversight to police how agencies implement their final agency actions. *See* Mot. at 46-47; Opp. at 44-47. Count Eight should be dismissed for the reasons stated in Defendants' Motion.

## IV.    President Biden Is Not a Proper Defendant and Should Be Dismissed

Plaintiffs do not deny that not a single allegation concerns the actions or statements of President Biden. Opp. at 48-50. Unsurprisingly, Plaintiffs also do not explain how relief against the other Defendant agencies and officials would be insufficient such that President Biden must remain a Defendant to provide relief to Plaintiffs. *See id*. Further, Plaintiffs do not deny the wealth of case law from the Supreme Court on down holding that courts cannot directly enjoin the President in the conduct of his official, discretionary duties. *See id*. That a few district courts have declined early dismissal of the President in other cases does not make up for the complete lack of allegations stating a claim against President Biden here. The President should be dismissed.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' Motion, Plaintiffs' Amended Complaint should be dismissed.

Respectfully submitted,

| | |
|---|---|
| MATTHEW M. GRAVES, D.C. Bar. #481052 | By:    */s/ Sean M. Tepe* |
| United States Attorney | SEAN M. TEPE, D.C. Bar #1001323 |
| | DIANA V. VALDIVIA, D.C. Bar #1006628 |
| BRIAN P. HUDAK | Assistant United States Attorneys |
| Chief, Civil Division | 601 D Street, N.W. |
| | Washington, D.C. 20530 |
| | (202) 252-2500 (main) |
| | |
| Dated: July 19, 2024 | *Attorneys for the United States of America* |