UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAITIAN BRIDGE ALLIANCE, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>JOSEPH R. BIDEN,<br>President of the United States, et al.,<br><br>      Defendants. | Civil Action No. 21-3317 (JMC) |

### JOINT SUPPLEMENTAL BRIEF TO DEFENDANTS' MOTION TO DISMISS

Pursuant to the Court's September 10, 2024, Minute Order, Plaintiffs and Defendants, by and through undersigned counsel, provide the following supplemental briefing regarding their respective views on 8 U.S.C. § 1231(b)(3) and 8 U.S.C. § 1231 note (United States Policy with Respect to Involuntary Return of Persons in Danger of Subjection to Torture) and how those provisions effect claims made in Plaintiffs' Amended Complaint (ECF No. 75).

**Defendants' Statement**

Plaintiffs' Amended Complaint makes allegations with respect to two forms of "withholding of removal" established in 8 U.S.C. § 1231(b)(3) and § 1231 Note in Counts Four, Five, and Seven. In Count Four, Plaintiffs assert a violation of Procedural Due Process under the Fifth Amendment alleging, in part, that Individual Plaintiffs were entitled to and deprived of an "opportunity to establish their potential eligibility for . . . relief from removal." Am. Compl. ¶¶ 401-04. In Count Five, Plaintiffs assert a violation of 5 U.S.C. § 706(2) of the APA alleging, in part, that "Defendants applied the Title 42 Process to prevent . . . Individual Plaintiffs from . . . requesting withholding of removal[.]" *Id*. ¶¶ 417-21. In Count Seven, Plaintiffs assert a violation of 5 U.S.C. § 706(1) of the Administrative Procedure Act ("APA") alleging, in part, that

Defendants unlawfully withheld access to withholding of removal "procedures required by 8 U.S.C. § 1231(b)(3) and FARRA, *see* 8 U.S.C. § 1231 note[.]" *Id*. ¶¶ 451-53.

Statutory "withholding of removal" protects noncitizens who are "ordered removed," 8 U.S.C. § 1231(a)(1)(A), from removal to a particular country "*if* the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." *Id*. § 1231(b)(3)(A) (emphasis added); *see also* 8 C.F.R. § 1208.16. Such decisions are made by immigration judges who are the Attorney General's designees. *Patel v. Garland*, 596 U.S. 328, 332 (2022). Similarly, it is the "policy of the United States," consistent with the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), not to remove noncitizens to a country where it is more likely than not that they would be tortured. *See* 8 U.S.C. § 1231 note. That policy is implemented not in statute but in regulation. *See id*. (directing appropriate agencies to "prescribe regulations to implement the obligations of the United States under Article 3 of [CAT]"); 8 C.F.R. §§ 1208.16(c)-.18. For both forms of withholding of removal, Plaintiffs agree the burden is on the applicant to establish that "his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion" under statutory withholding of removal, or that "he or she would be tortured if removed to the proposed country of removal" under CAT withholding of removal. *Id*. § 1208.16(b), (c).

Plaintiffs call each form of withholding of removal a "mandatory safeguard," Am. Compl. ¶¶ 419, 421, but it is undeniably a very limited safeguard. There is no debate that withholding of removal does not give noncitizens a path to asylum or other legal status in the United States. *Johnson v. Guzman Chavez*, 594 U.S. 523, 536-37 (2021). Nor do these provisions prevent the United States from detaining and removing a noncitizen from the United States. *Id*. They simply

limit *where* a noncitizen may be removed to *if* the noncitizen establishes it is more likely than not that the noncitizen would face either persecution on account of a protected ground or government-sanctioned torture.[1]

Asylum, in contrast, offers a pathway to lawful permanent residence and citizenship. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 428–429, n.6 (1987). This is why Individual Plaintiffs express a desire to "seek asylum" and do not allege a desire to seek withholding of removal. *See* Am. Compl. ¶¶ 13-22. Another contrast is that asylum requires a lower standard of proof, and thus a failure to meet the standard of proof for asylum eligibility necessarily means a failure to meet the more demanding standard for statutory withholding of removal. *See, e.g.*, *Sharma v. Garland*, 9 F.4th 1052, 1066 (9th Cir. 2021); *Vasha v. Gonzales*, 410 F.3d 863, 875 (6th Cir. 2005); *Wu Biao Chen v. I.N.S.*, 344 F.3d 272, 276 (2d Cir. 2003) (per curiam). The foregoing demonstrates that withholding of removal is not just a limited "safeguard" on its own terms but also is limited in relation to asylum, which the D.C. Circuit ruled was likely legally foreclosed by Title 42 in September 2021. *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 731 (D.C. Cir. 2022).

Plaintiffs' allegations of an inability to access withholding of removal is contradicted by their own Amended Complaint. While it alleges that Individual Plaintiffs did not have an opportunity to access withholding of removal, it also indicates that withholding of removal was in fact available. Plaintiffs cite CBP's "Capio Memo" as providing guidance for applying the Title 42 order at the border. Am. Compl. ¶ 57. According to that memo, noncitizens expressing a "fear [of] being tortured in the country they are being sent back to" would be referred to USCIS for

---

[1] Consistent with the Convention, torture is "defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted" to obtain information or a confession, to punish, intimidate or coerce, or to discriminate "when such pain of suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a).

further screening. Memo. at 4.[2]  Further, noncitizens could be "process[ed] under existing statutory authorities found in Title 8" and "under Title 8 guidelines." *Id*. at 3.  That is because the Title 42 order in place in September 2021 "continue[d] the use of case-by-case exceptions" from Title 42, and excepted noncitizens were processed under Title 8.[3]  The Court need not and should not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

Plaintiffs may contend that the foregoing avenues to obtain relief were insufficiently "meaningful," *see, e.g.*, Am. Compl. ¶ 453, and a denial of procedural due process, but Plaintiffs have "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as [a noncitizen] denied entry is concerned.").[4]  Plaintiffs do not identify in the Amended Complaint (or *infra*) a withholding of removal procedure mandated by Congress that was

---

[2] *See* Am. Compl. ¶ 57 (citing https://www.documentcloud.org/documents/6824221-COVID-19-CAPIO.html).  To the extent Plaintiffs now argue that Defendants did not "comply with the Capio Memo's process," *see infra*, that would be a separate claim and one that is not alleged.  *See generally* Am. Compl.; *see also C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 212 (D.D.C. 2020) (explaining agency failure to follow own guidance does not state constitutional violation).

[3] *See* 86 Fed. Reg. 42,828, 42,480 (Aug. 5, 2021); *see also* 85 Fed. Reg. 17,060, 17,061 (Mar. 26, 2020) (explaining that DHS would except noncitizens from the CDC order "based on the totality of the circumstances, including consideration of significant law enforcement, officer and public safety, humanitarian, and public health interests").  And approximately 46% of southwest border encounters were processed under Title 8.  *See* https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/title-8-and-title-42-statistics-fy2021.

[4] The 5 U.S.C. § 706(1) claim fails as well because there is no ministerial, nondiscretionary procedure that was withheld.  *See* Mot. at 42-43.  Plaintiffs argue there is "mandatory result" in withholding of removal, but the fact that a statute "is mandatory as to the object to be achieved" does not give federal courts oversight over the manner in which that object is achieved.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65-67 (2004) (rejection § 706(1) claim for failure to identify "a *discrete* agency action that it is *required to take*") (emphasis in original).

- 4 -

unlawfully denied.[5]  Indeed, what Individual Plaintiffs fail to note is that as noncitizens stopped near the border between ports of entry, if processed under Title 8, Individual Plaintiffs could have been subject to "expedited removal." *Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 11 n.3 (D.D.C. 2020).  Under expedited removal, DHS may remove the individual from the United States "without further hearing or review[,] unless the [noncitizen] indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution" or torture, at which point further screening would be available.  *See* 8 U.S.C. § 1225(b)(1)(A)(i).  In both expedited removal under Title 8 and during the period in which the Title 42 order was in place, a claim for statutory or CAT withholding of removal depends on an expression by the noncitizen of a fear of persecution or torture.

Second, "it remains the case that no process is due if one is not deprived of life, liberty, or property." *Kerry v. Din*, 576 U.S. 86, 90 (2015) (plurality opinion) (cleaned up).  Accordingly, even if Plaintiffs could identify a statutory procedure to which they were unlawfully denied, a plausible due process claim must allege a deprivation of a liberty interest.  Plaintiffs allege as a "protected interest" not being removed to a country where they would likely experience persecution on account of a protected ground or torture, Am. Compl. ¶ 401, but the allegations in the Amended Complaint fail to allege that any Individual Plaintiff expressed fear of being removed to such a country or was in fact removed to such a country.  *See generally* Am. Compl.[6]

---

[5]   This is likely why Plaintiffs direct the Court to agency forms utilized during expedited removal proceedings, which Plaintiffs were not in, or other statutory provisions, such as "inspection," which Defendants have already explained exist to determine admissibility, not withholding of removal.  *See* ECF No. 48 at 34.

[6]   Of the 474 paragraphs in the Amended Complaint, Plaintiffs cite only one making an allegation regarding an Individual Plaintiff (¶ 150), and it plainly does not allege an expression of fear of persecution or torture.

Finally, the allegations of denied access to statutory or CAT withholding of removal fail on their own terms, but again, the Court need not reach that issue because no Individual Plaintiff has standing. No Individual Plaintiff alleges that he or she is presently or imminently being denied withholding of removal. The mere fact that Plaintiffs claim, incorrectly, to have been denied an opportunity to potentially obtain withholding of removal three years ago because of Title 42 does not establish that they have standing today to challenge and seek declaratory and injunctive relief relating to that expired Government policy. *See* Mot. (ECF 82) at 12-14. And significantly, a parole process is in place for Haitians[7] through which Domestic Plaintiffs have been granted parole and subsequently petitioned for asylum, consistent with their desire to "seek asylum" (not withholding of removal). There is no live case or controversy regarding either an expired Government policy or relief from removal that is not pending.

**Plaintiffs' Statement**

Individual Plaintiffs' inability to access the U.S. asylum system—encompassing all forms of *non-refoulement* relief—is at the heart of the Supplemental and Amended Complaint ("Complaint").[8] The Complaint states plausible claims for relief under the Fifth Amendment and the Administrative Procedure Act ("APA") by sufficiently alleging that Defendants' actions and omissions deprived them of access to this asylum system without the process they were due.

The Immigration and Nationality Act ("INA") provides *non-refoulement* relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). These distinct forms of relief are accessible through a *single* process that begins with Defendants' affirmative duty to screen noncitizens for fear of return and continues through a uniform

---

[7] *See* Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1,243 (Jan. 9, 2023).

[8] Plaintiffs' allegations pertaining to "asylum" and the "U.S. asylum process" "encompass the statutory and regulatory process by which any noncitizen may seek all relevant forms of *non-refoulement* relief available under U.S. immigration laws, including asylum, withholding of removal, and relief under the Convention Against Torture." Am. Compl. ¶ 13 n.1.

application process.[9] While the U.S. government has discretion to deny asylum, withholding of removal and CAT relief are mandatory. *See, e.g.*, *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 731 (D.C. Cir. 2022). To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3), a noncitizen must establish that "it is *more likely than not* that he or she will be subject to persecution upon deportation." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987) (emphasis added).[10] Similarly, to qualify for CAT relief—either withholding or deferral of removal—an individual must establish that it is "more likely than not" that they "would be tortured" in the "proposed country of removal." *See* 8 C.F.R. § 208.16(c)(2).[11]

In support of Plaintiffs' Procedural Due Process Claim, the Complaint identifies Individual Plaintiffs' protected interest in the right to apply for asylum, withholding of removal, and CAT relief, and thus avoid removal to countries where they face persecution or torture. Am. Compl. ¶¶ 400–05. Due process protects property interests beyond the tangible, including anything to which a plaintiff has a "legitimate claim of entitlement." *Bd. of Regents of State Colls. v. Roth,* 408 U.S.

---

[9] *See* U.S.C.I.S. Form I-589, Application for Asylum and For Withholding of Removal, *available at* https://www.uscis.gov/i-589 (last accessed Sept. 13, 2024).

[10] Defendants wrongly conflate the statutory language of 8 U.S.C. § 1231(b)(3) with the standard of proof required to establish eligibility for withholding under the INA. Noncitizens need not—and without a crystal ball, could not—prove that they *would* be persecuted upon return to a country. Defendants are correct, however, that the standard of proof for withholding and CAT relief is higher than that required for asylum; indeed, meeting this higher standard of proof is one example of the heightened burden that organizational plaintiff Haitian Bridge bears in providing more complicated legal services to putative class members who are now presumptively ineligible for asylum due to Defendants' unlawful conduct. *See* Am. Compl. ¶¶ 237, 353.

[11] Importantly, the definitions of "persecution" (asylum and withholding of removal under the INA) and "torture" (withholding of removal or deferral of removal under CAT) are distinct and the conduct need not overlap. *See* 8 C.F.R. § 208.16(b)–(c). Contrary to Defendants' assertions, a failure to meet the standard of proof for asylum thus does *not* necessarily mean a failure to meet the standard for withholding of removal under the INA. For example, noncitizens who have missed the one-year filing deadline for asylum can still qualify for withholding of removal under the INA. *See, e.g., Matter of F-P-R-*, 24 I&N Dec. 681 (BIA 2008). And, unlike asylum, CAT protection does not require a nexus to protected ground and cannot be denied as a matter of discretion. 8 C.F.R. § 1208.16(c)(4).

564, 577 (1972). Access to the asylum system, including statutory *non-refoulement* guarantees, is such a recognized property interest because it is based on a "statute defining eligibility" and "existing rules or understandings that stem from an independent source" of law (here, the statutory commands of the INA enshrining U.S. treaty obligations). *See* 8 U.S.C. §§ 1158, 1231; *Gutierrez-Rogue v. I.N.S.*, 954 F.2d 769, 773 (D.C. Cir. 1992) ("[A noncitizen] who has unlawfully entered the United States has a Fifth Amendment procedural due process right to petition the government for [protection]." (quotation omitted)); *see also Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 38–39 (D.D.C. 2020) (recognizing protected interest in right to apply for asylum, withholding, and CAT protection). Individual Plaintiffs are thus entitled under the Due Process Clause to a meaningful *opportunity* to be screened for and establish their potential eligibility for asylum relief, including withholding and CAT protection—a process which Individual Plaintiffs and the putative class were denied.[12] *See id.*; Am. Compl. ¶¶ 300–406.

Plaintiffs also identify mandatory actions that Defendants failed to take sufficient to state an APA claim under 5 U.S.C. § 706(1). *See* Am. Compl. ¶¶ 445–60. As noted *supra*, relief under withholding of removal and CAT is *mandatory*. *See, e.g.*, *Huisha-Huisha*, 27 F.4th at 731–32. The statutory *non-refoulement* protections enshrined in 8 U.S.C. § 1231 forbid the return of individuals to a country where they are more likely than not to be persecuted or tortured. This mandatory result requires Defendants to take mandatory action, without which the *non-refoulement* obligation

---

[12] *Department of Homeland Security. v. Thuraissigiam*, 591 U.S. 103 (2020) does not hold otherwise. Even if Individual Plaintiffs' due process rights are limited to the procedural rights explicitly codified in the INA, *see* 8 U.S.C. §§ 1158, 1231, Plaintiffs claim Defendants violated these statutory rights. Contrary to Defendants' representations, CAT relief is the result of U.S. treaty obligations enshrined in statute. *See* 8 U.S.C. §§ 1231(b)(3), 1231 note; *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) (acknowledging that the "FARRA [statute] implements Article 3 of the international [CAT]").

would be meaningless.[13] This obligation is implemented in part through regulations establishing inspection procedures mandating CBP officers to inquire about arriving noncitizens' fear of return to determine whether the individual requires access to the *non-refoulement* process. *See* 8 U.S.C. § 1225(a)(3) ("All [noncitizens] . . . who are applicants for admissions . . . shall be inspected by immigration officers." (emphasis added)); 8 C.F.R. § 235.3(b); Am. Compl. ¶ 448.[14] It is through this mandatory inspection process—which is also a prerequisite to the expedited removal process[15]—that noncitizens have the opportunity to "indicate [either] an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i)–(ii); 8 C.F.R. § 235.3(b)(4). Defendants are

---

[13]  Defendants' characterization of withholding of removal under the INA and relief under CAT as "limited 'safeguard[s]'" misses the point that *non-refoulement* relief is mandatory and Individual Plaintiffs were denied access to such relief. It is also disingenuous: both withholding of removal and CAT relief are meaningful, providing indefinite protection from removal, as well as employment authorization. 8 C.F.R. §§ 274a.12(a)(10), (c)(18); *see also Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1122 (N.D. Cal. 2018) (sustaining procedural due process claim at MTD stage for individuals with Temporary Protected Status—similarly affording protection from removal and employment authorization—and recognizing that individuals "arguably have a property interest in loss of TPS status"). While individuals granted withholding or deferral of removal could theoretically be removed to a third country, such removals are rare and limited by foreign governments who generally will not accept the deportation of noncitizens from the United States who do not have a connection to the country. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 702 (2001) (ruling that indefinite detention is not permitted in the case of a stateless individual born to Lithuanian parents in a German camp and married to a citizen of the Dominican Republic, but whose removal was not possible to any of the three countries). The possibility of removal to a third country is also irrelevant here because Individual Plaintiffs were *not* granted withholding or CAT relief and then removed to a third country; they were deprived of their interest in *non-refoulement* without any process at all.

[14]  Pursuant to regulations implementing the INA's *non-refoulement* commands, Defendants are required to ask, record, and verify an arriving noncitizen's response to four specific questions contained on Form I-867B designed to actively solicit information about fear of return. *See* 8 C.F.R. § 235.3(b)(2)(i) ("[T]he examining immigration officer shall record the [noncitizen's] response to the questions contained on Form I-867B" ().

[15]  The government's obligations to inquire about fear of return under 8 C.F.R. § 235.3(b) equally apply to individuals subject to expedited removal under 8 U.S.C. § 1225(b)(1)(A)(i); if these individuals express fear *when asked* by a CBP officer, they are then given an interview with an asylum officer, who determines whether the individual demonstrates a sufficient fear of return to warrant full evidentiary proceedings.

thus incorrect that *non-refoulement* protections are only accessible to individuals who affirmatively and spontaneously express fear.[16] Because Defendants unlawfully withheld the above-described agency actions, Individual Plaintiffs—all of whom sought protection—were given no opportunity to express fear. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004).

Far from undermining Plaintiffs' claims, the Complaint's references to the Capio Memo further evince Defendants' failure to take mandatory agency actions. The Capio Memo "provides no process for covered noncitizens to seek access to the U.S. asylum process." Am. Compl. ¶ 57. To the extent the Capio Memo purports to shift the burden to migrants to make "affirmative" and "spontaneous" claims of fear, *id.* at n.15, such requirements contradict Defendants' mandatory responsibility to screen for fear of persecution or torture.[17] Moreover, Defendants did not even comply with the Capio Memo's process; instead, they failed to screen Individual Plaintiffs and putative class members for fear of return and deprived them of opportunities to express fear. Am. Compl. ¶¶ 63, 77, 78, 136, 146, 149, 150–57, 162. Defendants also ignored or suppressed expressions of fear, *see, e.g.*, *id.* ¶¶ 148, 150, despite being aware that expulsions to Haiti would likely violate the government's *non-refoulement* obligations due to the country conditions there.[18]

---

[16]   Indeed, *non-refoulement* protections have been consistently violated by Defendants' failure to inquire about fear of return in their implementation of the Asylum Ban. *See* Human Rights First, "Don't Tell Me About Your Fear": Elimination of Longstanding Safeguard Leads to Systematic Violations of Refugee Law (Aug. 2024), *available at* https://humanrightsfirst.org/wp-content/uploads/2024/08/IFR-report_formatted.pdf.

[17]   *See* Capio Memo at 4, *available at* http://www.documentcloud.org/documents/6824221-COVID-19-CAPIO.html.

[18]   Consideration of country conditions is part of the government's mandatory *non-refoulement* obligations. *See, e.g.*, 8 C.F.R. § 1208.16(c)(3) (CAT adjudicator must consider "all evidence relevant to the possibility of future torture," including country conditions.). Here, Plaintiffs sufficiently alleged awareness of such country conditions. *See, e.g.*, Am. Compl. ¶¶ 71 (describing DHS redesignation of Temporary Protected Status citing conditions including "a deteriorating political crisis, violence, and a staggering increase in human rights abuses" in Haiti); 77 (detailing August 2021 DHS memorandum advising that expulsions to Haiti posed a "strong risk" of violating Defendants' *non-refoulement* obligations under U.S. and international law).

Individual Plaintiffs have sufficiently alleged that Defendants deprived them of access to *non-refoulement* without any process.[19] *See, e.g.*, Am. Compl. ¶¶ 150–55, 161–62 (Plaintiffs were expelled to Haiti or forced to retreat to Mexico to avoid such expulsion). Defendants cannot shirk their duty by erroneously attempting to shift to Plaintiffs the burden of affirmatively expressing a fear of return – especially when Defendants were aware of conditions in Haiti, actively prevented opportunities to express fear, and ignored such expressions when they occurred. The Court should deny Defendants' motion to dismiss and find that Plaintiffs have adequately stated claims for relief under the Fifth Amendment and the APA.

\* \* \*

---

[19] For Individual Plaintiffs and putative class members outside the United States, their expulsion continues to deprive them of access to the *non-refoulement* process; noncitizens are only eligible to seek such protections if physically present in the United States. *See* 8 U.S.C. § 1158(a)(1); U.S.C.I.S. Form I-589, Application for Asylum and For Withholding of Removal.

Dated: September 19, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   */s/ Sean M. Tepe*
    SEAN M. TEPE, D.C. Bar #1001323
    DIANA V. VALDIVIA, D.C. Bar #1006628
    Assistant United States Attorneys
    601 D Street, N.W.
    Washington, D.C. 20530
    (202) 252-2500 (main)

*Attorneys for the United States of America*

---

**Nicole Phillips***
nphillips@haitianbridge.org
**Erik Crew***
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Rd, Suite 1 H
San Diego, CA 92120
Telephone: +1 619 228-9576

**Stanley Young** (CA00146)
syoung@cov.com
COVINGTON & BURLING, LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: +1 650 632-4704

**Alexander L. Schultz** (DC Bar 1618410)
aschultz@cov.com
COVINGTON & BURLING, LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: +1 424 332-4788

*/s/ Tess Hellgren*
**Tess Hellgren** (OR0023)
tess@innovationlawlab.org
**Stephen Manning** (OR0024)
stephen@innovationlawlab.org
**Rachel Landry***
rachel@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 922-3042
Facsimile: +1 503 882-0281

**Karen C. Tumlin** (CA00129*)*
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (CA00132)
esther.sung@justiceactioncenter.org
**Vanessa Rivas-Bernardy***
vanessa.rivas-bernardy@justiceactioncenter.org
**Laura Flores-Perilla***
laura.flores-perilla@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944

- 12 -

| | |
|---|---|
| **Maura A. Sokol** (DC Bar 1672674) | |
| msokol@cov.com | |
| COVINGTON & BURLING, LLP | |
| 850 Tenth Street, NW | *Admitted *Pro Hac Vice* |
| Washington, DC 20001 | |
| Telephone: +1 202 662-5528 | |
| | |
| **Ana Urgiles*** | |
| aurgiles@cov.com | |
| COVINGTON & BURLING, LLP | *Counsel for Plaintiffs* |
| 415 Mission Street, Ste 5400 | |
| San Francisco, CA 94105-2533 | |
| Telephone: + 415 591-7098 | |