**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

HAITIAN BRIDGE ALLIANCE *et al.*,

                *Plaintiffs*,

     v.

MARKWAYNE MULLIN, Secretary of
Homeland Security, *et al.*,

                *Defendants*.

Case No. 1:21-cv-03317 (JMC)

---

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs in the above-captioned action, by and through undersigned counsel, respectfully move, pursuant to Federal Rule of Civil Procedure 23, for class certification for the reasons stated in the accompanying Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification.

DATED: August 3, 2026

Respectfully submitted,

*/s/ Maura A. Sokol*

**Erik Crew\***
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: +1 949 603-7411

**Stanley Young** (CA00146)
syoung@cov.com
COVINGTON & BURLING, LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: +1 650 632-4704

**Alexander L. Schultz** (DC Bar No. 1618410)
aschultz@cov.com
COVINGTON & BURLING, LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: +1 424 332-4788

**Maura A. Sokol** (DC Bar No. 1672674)
msokol@cov.com
**Aurora L. Jaques** (DC Bar No. 90035472)
(*Pending Admission*)
ajaques@cov.com
**Megan L. Pritchard** (DC Bar No. 90027153)
(*Pending Admission*)
mpritchard@cov.com
COVINGTON & BURLING, LLP
850 Tenth Street, NW
Washington, DC 20001
Telephone: +1 202 662-5528

**Karen C. Tumlin** (CA00129*)*
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (CA00132)
esther.sung@justiceactioncenter.org
**Vanessa Rivas-Bernardy\***
vanessa.rivas-
bernardy@justiceactioncenter.org
**Laura Flores-Perilla**\*
laura.flores-perilla@justiceactioncenter.org
**Hillary Li** (GA0052)
hillary.li@justiceactioncenter.org
**Brandon Galli-Graves\***
brandon.galli-graves@justiceactioncenter.org
**Emily Satifka\***
emily.satifka@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944
Facsimile: +1 323 450-7276

**Stephen Manning** (OR0024)
stephen@innovationlawlab.org
**Rachel Landry\***
rachel@innovationlawlab.org
**Jordan Cunnings**\*
jordan@innovationlawlab.org
**Rosa Saavedra Vanacore** (MD0253)
rosa@innovationlawlab.org]
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 922-3042
Facsimile: +1 503 882-0281

*\*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

ii

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| HAITIAN BRIDGE ALLIANCE *et al.*, | |
| *Plaintiffs*, | Case No. 1:21-cv-03317 (JMC) |
| v. | |
| MARKWAYNE MULLIN, Secretary of Homeland Security, *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

## TABLE OF CONTENTS

INTRODUCTION..............................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .....................................................2

    I.      Factual Background.......................................................................................2

        A. Screening Procedures Required to Ensure Access to Withholding of Removal and CAT Protection....................................................................3

        B. Defendants' Use of Title 42 to Summarily Expel Migrants Without Providing Them with the Required Screenings .................................................7

        C. The Mass Expulsion of Haitian Migrants Detained in Del Rio in September 2021 .................................................................................8

        D. Class Representative James Doe...................................................10

    II.     Procedural Background .................................................................................11

LEGAL STANDARD .....................................................................................................12

ARGUMENT...................................................................................................................13

    I.      Plaintiffs Satisfy Rule 23(a)'s Requirements.......................................................14

        A. The Class Is Sufficiently Numerous. ...................................................14

        B. The Claims Raise Common Questions of Fact and Law. .............................15

        C. James Doe's Claims are Typical......................................................19

        D. James Doe Will Fairly and Adequately Protect the Interests of the Class. 20

    II.     The Class Also Meets the Requirements of Rule 23(b)(2)..............................21

    III.   Plaintiffs' Counsel Should be Appointed Class Counsel.................................23

CONCLUSION ...............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Brown v. District of Columbia*,
  928 F.3d 1070 (D.C. Cir. 2019) ..................................................................................17

*\*D.L. v. District of Columbia*,
  860 F.3d 713 (D.C. Cir. 2017) ........................................................................12, 15, 21

*Damus v. Nielsen*,
  313 F. Supp. 3d 317 (D.D.C. 2018) ...........................................................................19, 22

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
  811 F. Supp. 3d 1 (D.D.C. 2025) ..............................................................................23

*\*P.J.E.S. ex rel. Francisco v. Wolf*,
  502 F. Supp. 3d 492 (D.D.C. 2020) ........................................................... *passim*

*Garnett v. Zeilinger*,
  301 F. Supp. 199 (D.D.C. 2018) ...............................................................................15

*Grace v. Whitaker*,
  344 F. Supp. 3d 96 (D.D.C. 2018) ...........................................................................22

*Gutierrez v. Noem*,
  No. 25-1766, 2025 WL 3496390 (D.D.C. Dec. 5, 2025)........................................24

*Howard v. Liquidity Servs. Inc.*,
  322 F.R.D. 103 (D.D.C. 2017)...................................................................................15

*\*Huisha-Huisha v. Mayorkas*,
  560 F. Supp. 3d 146 (D.D.C. 2021) ........................................................... *passim*

*\*J.D. v. Azar*,
  925 F.3d 1291 (D.C. Cir. 2019).......................................................................2, 13, 15, 17

*J.G.G. v. Trump*,
  No. 25-766, 2026 WL 391937 (D.D.C. Feb. 12, 2026).........................................22

*Kifafi v. Hilton Hotels Ret. Plan*,
  189 F.R.D. 174 (D.D.C. 1999)..................................................................................14

*L.G.M.L. v. Noem*,
  800 F. Supp. 3d 100 (D.D.C. 2025) .........................................................................21

*Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*,
    783 F. Supp. 3d 200 (D.D.C. 2025) ........................................................................4

*Make the Road N.Y. v. Noem*,
    Case No. 25-5320 (D.C. Cir. Jan. 29, 2026) ..........................................................5

*Make the Road N.Y. v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ................................................................................3

*Morgan v. District of Columbia*,
    No. 10-1511, 2025 WL 2255228 (D.D.C. Aug. 7, 2025) ........................................24

*N.S. v. Hughes*,
    335 F.R.D. 337 (D.D.C. 2020) ..........................................................................14, 19

*Noem v. Abrego Garcia*,
    145 S. Ct. 1017 (2025) ..........................................................................................22

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019) ........................................................................23

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ......................................................................2, 13

*Ramirez v. ICE*,
    338 F. Supp. 3d 1 (D.D.C. 2018) .......................................................................2, 13

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin* (*RAICES*),
    174 F.4th 81 (D.C. Cir. 2026) ...........................................................................22, 23

*Thorpe v. District of Columbia*,
    303 F.R.D. 120 (D.D.C. 2014) ......................................................................16, 17, 22

*Twelve John Does v. District of Columbia*,
    117 F.3d 571 (D.C. Cir. 1997) ...............................................................................20

*United States v. Figueroa-Juarez*,
    No. 22-50085, 2023 WL 8053742 (9th Cir. Nov. 21, 2023) ...................................18

*United States v. M'Biye*,
    655 F.2d 1240 (D.C. Cir. 1981) ..............................................................................18

*United States v. Urqhart*,
    469 F.3d 745 (8th Cir. 2006) .................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................12, 15, 17

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ..................................................................................22

**Other Authorities**

8 U.S.C. § 1225.................................................................................................................3, 4, 6

8 U.S.C. § 1229......................................................................................................................6

8 U.S.C. § 1231.................................................................................................................1, 3, 6

8 C.F.R. § 208.30.................................................................................................................6, 13

8 C.F.R. § 208.31.................................................................................................................6, 13

8 C.F.R. § 235.3 ................................................................................................................4, 5, 13

42 C.F.R. § 71.40....................................................................................................................7

62 Fed. Reg. 10,312 (Mar. 6, 1997)........................................................................................5

85 Fed. Reg. 17,060, 17,061 (Mar. 26, 2020)........................................................................7

85 Fed. Reg. 84,160, 84,179 (Dec. 23, 2020).........................................................................5

Fed R. Civ. P. 23 ........................................................................................................... *passim*

Fed R. Civ. P. 803 ................................................................................................................18

**INTRODUCTION**

This Court should certify a class of individuals who, in September 2021 in Del Rio, Texas, were unlawfully deprived of their statutory rights to access withholding of removal under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* ("INA") and protections under the U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 8 U.S.C. § 1231 note ("CAT"). Specifically, Plaintiffs respectfully request that the Court certify a proposed class of:

> All persons who were in the CBP Encampment near the Del Rio Port of Entry between September 9 and 24, 2021, were expelled to Haiti on or between September 9, 2021 and December 31, 2021, have not been fully screened by Defendants for withholding of removal or CAT protections, and are physically outside the United States (hereafter the "Class" or "Class Members").

The proposed Class satisfies the requirements of Rule 23(a). The Class is sufficiently numerous, as it is comprised of substantially more than 40 individuals, making joinder of all members impracticable. There are questions of law and fact common to the Class, including identical legal claims that will be resolved by common evidence tied to Defendants' uniform conduct in failing to provide Class Members with statutorily mandated procedural protections. Plaintiffs' proposed class representative, James Doe, brings claims that are typical of those of the Class, as he challenges precisely the same procedural failures and seeks the same relief. James Doe and Plaintiffs' counsel will also fairly and adequately protect the interests of the Class.

The requirements of Rule 23(b)(2) are also met: by withholding statutorily mandated protections from the Class while expelling them to Haiti, Defendants have acted (or refused to act) on grounds generally applicable to the Class. And if the Class prevails on the merits of their claims at trial, declaratory and injunctive relief will be appropriate as to the Class as a whole.

For these reasons, and as explained more fully below, class certification is not only appropriate but necessary to ensure the efficient adjudication of Class Members' claims consistent with the purposes of Rule 23—as courts addressing similar class certification motions have repeatedly held. *See, e.g.*, *P.J.E.S. ex rel. Francisco v. Wolf*, 502 F. Supp. 3d 492, 501–02, 509–10 (D.D.C. 2020) (certifying class of unaccompanied children challenging Title 42 expulsion policy); *Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 166 (D.D.C. 2021) (certifying class of asylum-seeking families challenging Title 42 expulsion policy), *rev'd in part on other grounds*, 27 F.4th 718 (D.C. Cir. 2022); *see also J.D. v. Azar*, 925 F.3d 1291, 1312–25 (D.C. Cir. 2019) (affirming certification of class of pregnant noncitizen minors challenging policy banning abortion access); *Ramirez v. ICE*, 338 F. Supp. 3d 1, 42–50 (D.D.C. 2018) (certifying class of immigrant teens challenging transfers to ICE custody); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179–83 (D.D.C. 2015) (certifying class of Central American mothers and children denied release from detention).

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.    Factual Background

In September 2021, approximately 15,000 Haitian migrants arrived at the U.S. border near the Del Rio Port of Entry in Del Rio, Texas,[1] fleeing volatile and dangerous conditions in Haiti and seeking to exercise their right to request protection under U.S. and international law. *See* Declaration of James Doe ("James Doe Decl.") (ECF No. 76.4) ¶¶ 4–7; Second Declaration of James Doe, attached hereto ("Second James Doe Decl.") ¶¶ 6–7; Declaration of Florence Doe ("Florence Doe Decl.") (ECF No. 76.6) ¶¶ 4–7; Declaration of Eric Doe ("Eric Doe Decl.") (ECF

---

[1] Ex. 1, Dep't of Homeland Security and U.S. Customs and Border Protection Report of Investigation, at 2. All exhibits cited herein are attached to the Declaration of Maura Sokol.

- 2 -

No. 76.7) ¶¶ 4–6, 9; Declaration of Delgado Doe ("Delgado Doe Decl.") (ECF No. 76.8) ¶¶ 4, 10; Ex. 2, Congressional Research Service, "Haiti: Concerns After the Presidential Assassination" (July 8, 2021). As this Court has recognized, the Class Members were entitled to seek protections under the duty of *non-refoulement* set forth in the withholding of removal provision of the INA and protections under the CAT. Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, ECF No. 104 at 15 (hereafter "MTD Order").[2] This Motion seeks class treatment for the claims of thousands of Haitian migrants who were deprived of their right to seek those protections when they were confined to the Del Rio CBP Encampment and then summarily expelled from the United States without the legally required screenings.

    **A.    Screening Procedures Required to Ensure Access to Withholding of Removal and CAT Protection**

Withholding of removal under the INA prohibits the United States from removing any individual to a country where it is more likely than not that the individual's "life or freedom would be threatened . . . because of [that person's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Similarly, the Foreign Affairs Reform and Restructuring Act implements the United States' *non-refoulement* duties set forth in Article 3 of the CAT, prohibiting the United States from removing an individual to a country where it is more likely than not that they will be tortured. *See* 8 U.S.C. § 1231 note. These protections continue to apply in the context of expedited removals under 8 U.S.C. § 1225(b)(1)(A)(i). *See Make the Road N.Y. v. Wolf*, 962 F.3d 612, 618–19 (D.C. Cir. 2020) (describing fear screenings under expedited removal).

---

[2] Plaintiffs and Class Members also sought to exercise their right to seek asylum. *See* Am. Compl. ¶ 95. The Court dismissed Plaintiffs' claims to the extent they were based on the denial of their right to seek asylum. *See* MTD Order at 22, 27.

Federal law, including regulations implementing these statutory provisions, requires Defendants to take affirmative steps to ensure that noncitizens are not summarily removed—or *refouled*—to a country where they would be persecuted on a prohibited basis or likely to face torture. Even under the expedited removal process,[3] Customs and Border Protection ("CBP") officers are required to ask questions using standard government forms to elicit whether a noncitizen has a fear of return to that person's country of citizenship, and if the noncitizen expresses such a fear, CBP officers must refer the person to an interview before an asylum officer (who has responsibility for evaluating withholding of removal and CAT eligibility as well as asylum claims). If these screenings occur, official records are created of them; if they do not, no such records will exist, as is explained in more detail below.

First, CBP officers are required to provide an advisal or notice to noncitizens of their withholding of removal and CAT rights, and to ask, record, and verify the noncitizen's response to questions designed to elicit any qualifying fear of return. In particular, federal regulations provide that "[t]he examining immigration officer shall read (or have read) to the [noncitizen] all information contained on Form I-867A," and "[t]he examining immigration officer shall record the [noncitizen's] response to the questions contained on Form I-867B, and have the [noncitizen] read (or have read to him or her) the statement, and the [noncitizen] shall sign and initial each page of the statement and each correction." 8 C.F.R. § 235.3(b)(2)(i); *see also Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 783 F. Supp. 3d 200, 225–27 (D.D.C. 2025) (confirming that the advisal and questions should be asked of noncitizens regardless of whether

---

[3] Under immigration law, certain individuals coming to the United States are subject to a process known as expedited removal. 8 U.S.C. § 1225(b)(1). The expedited removal process provides an abbreviated process for the swift removal of certain noncitizens. Pub. L. No. 104-208, Division C, 110 Stat. 3009 (Sept. 30, 1996).

they affirmatively manifested fear prior to this screening taking place). Form I-867A contains the advisal regarding protections under U.S. law related to withholding of removal and the CAT, as well as questions confirming that the noncitizen understands and is willing to truthfully answer the Form I-867B questions. Form I-867B then contains four questions designed to give the noncitizen an opportunity to voice any qualifying fear of return:

(1) "Why did you leave your home country or country of last residence?";

(2) "Do you have any fear or concern about being returned to your home country or being removed from the United States?";

(3) "Would you be harmed if you are returned to your home country or country of last residence?"; and

(4) "Do you have any questions or is there anything else you would like to add?"[4]

Second, if a noncitizen, in responding to the required questions, "expresses a fear of persecution or torture, or a fear of return to his or her country," then "the inspecting officer *shall not* proceed further with removal of the [noncitizen] until the [noncitizen] has been referred for an

---

[4] A copy of the Forms I-867A and I-867B that were used from April 1, 1997 until February 11, 2025 are attached hereto as Exhibit 3. *See* Declaration of James Houser ("Houser Decl.") ¶ 13; *see also* Ex. 13, Appellants' Renewed Emergency Motion for a Stay Pending Appeal at 20 n.2, *Make the Road N.Y. v. Mullin*, No. 25-5320 (D.C. Cir. Jan. 29, 2026), Doc. No. 2156587 (government brief stating that "on February 11, 2025, Form I-867B was amended to include only the first and the fourth questions"). These forms were created through regulation in 1997 following the passage of the 1996 Illegal Immigration Reform and Responsibility Act. *See* 62 Fed. Reg. 10,312 (Mar. 6, 1997). The preamble to the 1997 rulemaking specifically explained that the then-newly developed Form I-867AB would require officers to both (1) "clearly advise[] the [noncitizen] that this may be the only opportunity to present information concerning any fears or concerns about being removed from the United States, and that any information concerning that fear will be heard confidentially by another officer"; and (2) ask "if the [noncitizen] has any fear or concern of being removed or of being sent home." 62 Fed. Reg. at 10,319–20. In 2020, during a rulemaking process, the Department of Homeland Security acknowledged that "although "[t]he regulatory text at 8 C.F.R. § 235.3(b)(2)(i)" refers to the information and questions on the Form I-867 without specifically reciting all the information and questions contained on the form, "the preamble to the regulation made clear that all [noncitizens] placed into expedited removal were to be questioned about a fear of return" after being advised of the importance of doing so. 85 Fed. Reg. 84,160, 84,179 (Dec. 23, 2020) (citing 62 Fed. Reg. at 10,319).

interview by a [interviewing] officer." 8 C.F.R. § 208.30(b) (emphasis added); 8 U.S.C. § 1225(b)(1)(A)(ii); *see also* 8 C.F.R. § 235.3. Federal regulations and government manuals set forth the processes that the interviewing officers must then follow to determine if individuals qualify for withholding of removal or CAT protections and issue determinations.[5] The officer's determination must be recorded on Form I-870, Record of Determination/Credible Fear Worksheet, or Form I-899, Record of Determination/Reasonable Fear Worksheet. *See* Exs. 4, 5; *see also* Houser Decl. ¶ 14.

Finally, if the interviewing officer determines that the noncitizen has a qualifying fear, the noncitizen must be placed in full removal proceedings under Section 240 of the INA (8 U.S.C. § 1229a) (or, depending on the noncitizen's immigration history, withholding-only proceedings). In Section 240 removal proceedings, noncitizens are entitled to apply for humanitarian protections, including asylum, withholding of removal, and relief under the CAT, through Form I-589 Application for Asylum and for Withholding of Removal. *See* 8 C.F.R. §§ 208.30(f), 208.31(e); *see also* 8 U.S.C. § 1225(b)(1)(B)(ii). They may then present and cross-examine evidence before an immigration judge, preserve objections, and appeal any adverse decision to the Board of Immigration Appeals and the U.S. Court of Appeals. *See* 8 C.F.R. §§ 208.30(f), 208.31(e). A noncitizen who qualifies for withholding or CAT protection cannot be expelled to the country or countries with respect to which they had a qualifying fear. 8 U.S.C. § 1231(b)(3)(A); 8 U.S.C. § 1231 note.

---

[5] 8 C.F.R. § 208.30(d)–(e); 8 C.F.R. § 208.31(c). The USCIS Credible Fear Procedures Manual and Reasonable Fear Procedures Manual set forth guidelines and procedures for how asylum officers are to proceed with conducting these screenings, including the information to be elicited and the required recordkeeping and file management. *See* Exs. 4, Ex. 5; *see also* Houser Decl. ¶ 14.

**B.    Defendants' Use of Title 42 to Summarily Expel Migrants Without Providing Them with the Required Screenings**

On March 20, 2020, in the wake of the global COVID-19 pandemic, Defendant Centers for Disease Control and Prevention ("CDC") issued a regulation stating that the agency could prohibit "the introduction into the United States of persons" from foreign countries. 42 C.F.R. § 71.40. Pursuant to this purported regulatory authority, Defendant CDC issued an order directing the "immediate suspension of the introduction of" certain noncitizens lacking travel documents who were seeking to enter the country at ports of entry or between ports of entry.[6] Shortly afterwards, Defendant CBP issued an internal memorandum establishing procedures for applying Defendant CDC's order in the field. *See* Ex. 7, CBP COVID-19 Capio Memo (the "CBP Capio Memo"); *see also* ECF No. 122 ("Answer") at ¶ 26 (admitting that "CBP is responsible for the apprehension and processing of noncitizens present at or between U.S. ports of entry" and "CBP conducted expulsions of covered noncitizens during the implementation of the CDC's [Title 42 Order] in Del Rio during September 2021"). The CBP Capio Memo provided that "all processing [of covered noncitizens] will be done in the field" "[t]o the maximum extent possible." Ex. 7 at 1. It also directed that covered noncitizens should be "immediately returned to Mexico or Canada" at the nearest port of entry or transported to "a dedicated facility for limited holding prior to expulsion" to their home country. *Id.* at 3; *see also* Answer at ¶¶ 414, 416, 425 (admitting that the Department of Homeland Security ("DHS") "expelled covered noncitizens under the CDC Order, which applied to individuals in Del Rio in September 2021"). The CBP Capio Memo expressly did not contemplate that immigration officers would provide the required Form I-867A advisal

---

[6] Ex. 6, Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17,060, 17,061 (Mar. 26, 2020) (eff. Date Mar. 20, 2020).

regarding withholding of removal or CAT protections, or that they would ask noncitizens the questions reflected on Form I-867B. To the contrary, it asserted only that Agents should "seek Supervisory Guidance" where migrants "make an affirmative, spontaneous and reasonably believable claim that they fear being tortured in the country they are being sent back to" and then the migrant would be referred to U.S. Citizenship and Immigration Services. Ex. 7 at 4; *see also* Ex. 8, CBP Memorandum, at 1 ("Watch commander approval is required for any authority used outside of Title 42 during this timeframe."). The memo expressly conceded that U.S. immigration officials were "not operating pursuant to [their] authorities" under U.S. immigration laws when processing and summarily expelling covered noncitizens. Ex. 7 at 1.

C.    **The Mass Expulsion of Haitian Migrants Detained in Del Rio in September 2021**

In September 2021, in response to the growing number of Haitians and other migrants arriving at the U.S.-Mexico border in Del Rio, Texas, Defendants established an encampment underneath an international bridge connected to the Del Rio Port of Entry (the "CBP Encampment") where CBP detained the arriving Haitian immigrants. *See* Ex. 9, CBP After Action Report, at 3–4; Ex. 1 at 2; *see also* Houser Decl. ¶ 6. After minimal processing—which did not include the required fear screenings—these migrants were then subjected to the Title 42 Process and summarily expelled.[7]

The CBP Encampment served as the staging area for U.S. officials to detain Haitians and others who had crossed the border seeking immigration protections. Ex. 1 at 2. The Biden

---

[7] Plaintiffs use the term "Title 42 Process" to describe the process by which the migrants in the CBP Encampment were summarily expelled to Haiti without being fully screened for protection under the CAT or withholding of removal. While Defendant CBP expelled other persons (including persons in other regions of the United States) under the purported authority of Title 42, Plaintiffs and Class Members here challenge the application of the Title 42 Process to Class Members who were in the CBP Encampment during some portion of the relevant period.

Administration exerted pressure on officials in Del Rio to maintain custody of the migrants present in Del Rio and to quickly expel them under the purported authority of Title 42. Houser Decl. ¶¶ 7–8; *see also* Ex. 10, DHS Director of Latin American and the Caribbean Affairs Email, at 2 ("DHS will accelerate removal flights to Haiti: 'as many as can possibly be done'"); Ex. 11, DHS "Evolving Situation Report" Email, at 8 (explaining additional "Title 42 Haitian Flights" were scheduled on September 15, 2021). In the wake of that pressure and pursuant to the CBP Capio Memo, CBP failed to follow the processes under the INA and implementing regulations to screen the immigrants at the CBP Encampment for *non-refoulement* relief or to determine whether they might qualify for withholding of removal or CAT protections; instead, they worked to expel the immigrants as quickly as possible. Declaration of Guerline Jozef ("Jozef Decl.") ¶¶ 6–7, 9; Houser Decl. ¶¶ 10, 15–19.

On September 16, 2021, Judge Sullivan of this Court issued an injunction, which, had it gone into effect as originally ordered on September 30, 2021, would have prohibited the federal government from expelling many of the Haitians in the CBP Encampment. *See Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 166 (D.D.C. 2021), *stayed pending appeal*, Case No. 21-5200 (D.C. Cir. Sept. 30, 2021) (Doc. No. 1916334). After this order was entered and before it was stayed, Defendants continued to expel migrants—and in fact did so at an accelerated pace. *See* Ex. 12, Immigration and Customs Enforcement ("ICE") Chief of Staff Email, at 7 (explaining that on September 16, 2021, the DHS Secretary "directed ICE to begin immediately conducting as many expulsion flights to Haiti as feasible . . . to alleviate the unprecedented circumstances in CBP's Del Rio Sector" and that DHS may ask "to increase Haitian flight frequency the week of September 20 above the twice daily cadence and/or possibly utilize larger aircraft"). As of September 30, 2021, Defendants had already expelled 6,085 Haitians by aircraft with additional flights expected.

Ex. 9 at 7. Plaintiffs and Class Members were expelled without receiving the required screenings for withholding of removal and CAT protection. Jozef Decl. ¶¶ 6–7, 9; Houser Decl. ¶¶ 15–17; James Doe Decl. ¶ 11; Eric Doe Decl. ¶ 14; Florence Doe Decl. ¶ 9. Defendants' actions in Del Rio caused one of the largest mass expulsions in U.S. history. *See* Ex. 9 at 2.

### D. Class Representative James Doe

Plaintiffs' proposed class representative, James Doe, crossed the Rio Grande into Del Rio, Texas in early September 2021. James Doe Decl. ¶ 7. Earlier, in Haiti, James was a student who volunteered on the political campaign of a parliamentary candidate, but he fled Haiti in fear for Argentina in 2016 due to his political involvement. *Id.* ¶¶ 3–5. James faced constant discrimination in Argentina for being Black and a foreigner, and he left to seek safety in the United States in 2021. *Id.* ¶ 5–6.

Upon arriving at the CBP Encampment, a U.S. immigration official gave James a numbered ticket and told him to wait until his number was called. *Id.* ¶ 7. James expected that when his number was called, he would be able to explain to U.S. officials why he was seeking safety in the United States. *Id.* Instead, when James's number was called on September 14 or 15, U.S. officials placed him on a bus and transported him to a detention center. *Id.* ¶ 10. James still expected he would have a chance to explain his situation and seek protections in the United States, but he was transported to two other detention centers over the subsequent 15 days, after which he was placed on a flight and summarily expelled to Haiti. *Id.* ¶¶ 10–13. James was never provided an opportunity to explain his situation or to seek withholding of removal or CAT protections. *Id.* ¶ 11. He was never advised of how to seek such protections and was never asked the questions required by Form I-867B. Second James Doe Decl. ¶ 7. James currently lives in Haiti, and he

remains afraid of political violence given his past involvement and upcoming Haitian elections. *Id.* ¶¶ 2, 5–6, 8.

## II.    Procedural Background

Plaintiffs filed a complaint against Defendants on December 20, 2021, asserting procedural and substantive due process claims under the Fifth Amendment and claims under the Administrative Procedure Act ("APA"). ECF No. 1. Defendants moved to dismiss, ECF No. 28, and while that motion was pending, the government announced that Title 42 would expire on May 11, 2023. On May 12, 2023, the Court issued a minute order directing Plaintiffs to show cause why the case was not moot. Minute Order (May 12, 2023). Plaintiffs filed a response on June 2, 2023, along with a motion for leave to file a supplemental complaint. ECF Nos. 53, 55.

The Court held a status conference on February 22, 2024. Minute Order (Feb. 12, 2024). At that conference, the Court denied the pending Motion to Dismiss without prejudice, Plaintiffs withdrew their motion for leave to supplement, and the Court granted Plaintiffs leave to file an amended complaint by March 8, 2024. Minute Order (Feb. 22, 2024).

Plaintiffs filed their amended complaint on March 18, 2024, which is now the operative complaint (subject to the Court's subsequent order of partial dismissal). ECF No. 75. The Amended Complaint sought relief for 16 named plaintiffs and organizational plaintiff Haitian Bridge Alliance. *Id.* Six of the named plaintiffs were located in either Haiti or Chile at the time of the Amended Complaint, and the remaining named plaintiffs had since come to the United States. *See id.* § V.E. Plaintiffs again asserted Fifth Amendment and APA claims, including claims alleging that Defendants violated Plaintiffs' rights to seek asylum, withholding of removal, and protections under the CAT. *Id.* at 99–116.

Defendants moved to dismiss the Amended Complaint in its entirety on May 17, 2024, arguing that no Plaintiff had Article III standing and that Plaintiffs could not state a claim upon which relief could be granted. ECF No. 82. On March 6, 2026, the Court granted the motion in part and denied it in part. ECF No. 104. The Court held that "the individual Plaintiffs who are still in Haiti have standing to press the Title 42 related claims." *Id.* at 10. The Court further held that Plaintiffs' procedural due process and APA claims survived Defendants' Motion to Dismiss insofar as they relate to Defendants' denial of the opportunity to apply for withholding of removal and CAT protections. *Id.*; Minute Order (Apr. 6, 2026). The Court directed Plaintiffs to file the instant Motion for Class Certification by August 3, 2026. ECF No. 111 at 2; Minute Order (July 8, 2026). Defendants filed an answer to the Amended Complaint on July 27, 2026. Answer (ECF No. 122).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 authorizes federal courts to determine "[a]t an early practicable time after a person sues" as a class representative "whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). To obtain class certification, plaintiffs must first satisfy the four Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)–(4); *see also D.L. v. District of Columbia*, 860 F.3d 713, 723 (D.C. Cir. 2017). Plaintiffs must then show that the case meets the requirements of one of Rule 23(b)'s subsections. *D.L.*, 860 F.3d at 723. Relevant here, Rule 23(b)(2) authorizes certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Upon certifying

a class, the Court must also appoint class counsel, considering four factors related to experience and adequacy of representation in so doing. Fed. R. Civ. P. 23(g).

## ARGUMENT

Plaintiff's proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(2). Courts in this District have repeatedly recognized that classes of noncitizens subject to restrictive immigration policies—such as the Title 42 Process—satisfy Rule 23(a) and (b)(2). *See, e.g.*, *P.J.E.S.*, 502 F. Supp. at 501–02, 509–10 (unaccompanied children subject to Title 42 expulsion policy); *Huisha-Huisha*, 560 F. Supp. 3d at 166 (families subject to Title 42 policy); *see also J.D.*, 925 F.3d at 1312–25 (pregnant noncitizen minors subject to abortion ban); *Ramirez*, 338 F. Supp. 3d at 42–50 (immigrant teens challenging transfers to ICE custody); *R.I.L-R*, 80 F. Supp. 3d at 179–83 (Central American mothers and children denied release from detention).

This Court should certify the following class:

> All persons who were in the CBP Encampment near the Del Rio Port of Entry between September 9 and 24, 2021, were expelled to Haiti on or between September 9, 2021 and December 31, 2021, have not been fully screened by Defendants for withholding of removal or CAT protections, and are physically outside the United States.

For purposes of this class definition, "fully screened" means (1) receiving the advisal and answering the preliminary questions on Form I-867A, *see* 8 C.F.R. § 235.3(b)(2); (2) being asked the questions on Form I-867B and having those answers recorded, *see id.*; and (3) where fear of return was expressed, referral to an asylum officer for a fear interview and completion of that interview, with the opportunity to appeal a negative determination, *see* 8 C.F.R. § 208.30(d)–(g); 8 C.F.R. § 208.31(c), (g).

Upon certifying the Class, this Court should appoint James Doe as class representative and Plaintiffs' counsel as class counsel.

- 13 -

## I.   Plaintiffs Satisfy Rule 23(a)'s Requirements.

### A.      The Class Is Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs "need not provide the exact number of potential class members," *N.S. v. Hughes*, 335 F.R.D. 337, 352 (D.D.C. 2020), and an "estimate" will satisfy "the numerosity requirement" so "long as there is a reasonable basis for the estimate provided," *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999).

The numerosity requirement of Rule 23(a)(1) is satisfied here. Defendants' own preliminary statistics indicate that, just between September 8 and 24, 2021, Defendants expelled at least 3,440 individuals to Haiti, pursuant to Title 42. Ex. 9 at 7.[8] Defendants expelled most, if not all, of these individuals without fully screening them for withholding of removal or CAT protections—indeed, the CBP Capio Memo instructed CBP *not* to fully screen noncitizens at the CBP Encampment. Ex. 7 at 2; *see also* Houser Decl. ¶¶ 15–19. That is consistent with James Doe's experience at Del Rio; he spoke with at least 50 individuals who, like himself, were not fully screened for withholding of removal or CAT protections. Second James Doe Decl. ¶ 12. Founder and Executive Director of organizational Plaintiff Haitian Bridge Alliance, Guerline Jozef, also observed the events at Del Rio and with her staff similarly encountered dozens of people who were deported to Haiti without being afforded the proper screening process. Jozef Decl. ¶¶ 6–7, 9.

Defendants' statistics, combined with the on-the-ground observations of Plaintiffs' declarants, provide a reasonable basis to conclude that there are thousands of Class Members. *See P.J.E.S.*, 502 F. Supp. 3d at 531 (finding numerosity met where the plaintiff cited "government

---

[8] This figure does not include Class Members removed from Del Rio and held in detention past September 30, 2021, before being expelled to Haiti shortly thereafter—again without access to withholding of removal or CAT procedures.

and news reports" providing statistics of border apprehensions). Courts in this District routinely treat classes of approximately 40 individuals as sufficiently large to satisfy the numerosity requirement. *Id.* ("Generally speaking, courts have found that a proposed class of at least forty members will satisfy this requirement.") (citation modified); *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 117 (D.D.C. 2017) (same). Accordingly, there can be no serious question that this Class is sufficiently numerous to satisfy Rule 23(a)(1). *See, e.g.*, *Garnett v. Zeilinger*, 301 F. Supp. 199, 206 (D.D.C. 2018) (finding numerosity satisfied when "[m]ost, if not all" of 4,328 households would be included in the class).[9]

### B.    The Claims Raise Common Questions of Fact and Law.

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that their claims depend on a "common contention" that is capable of classwide resolution. *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50 (citation modified). That is, commonality "exists when 'there are questions of law or fact common to the class.'" *D.L.*, 302 F.R.D. at 11–12 (quoting Fed. R. Civ. P. 23(a)(2)).

"Even a single common question will do." *Huisha-Huisha*, 560 F. Supp. 3d at 165 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350); *accord P.J.E.S.*, 502 F. Supp. 3d at 532 (same). "[W]here plaintiffs allege widespread wrongdoing by a defendant" based upon a "uniform policy or practice that affects all class members," the requisite common question exists and satisfies the commonality

---

[9] Besides the sheer number of Class Members, joinder is also impracticable here because Class Members are geographically dispersed across Haiti, their resources are limited, and they face numerous barriers to bringing individual suits. *See, e.g.*, Second James Doe Decl. ¶ 2; Florence Doe Decl. ¶ 3. For this additional reason, too, Rule 23(a)(1) is satisfied. *See J.D.*, 925 F.3d at 1323 (explaining that "the dispersion of class members across the country" and "their limited resources" are "non-numerical considerations that might make joinder impracticable").

requirement. *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014) (quoting *D.L.*, 302 F.R.D. at 12).

Here, all Class Members experienced a common injury, inflicted by the same policy implemented by the Defendants: Class Members were expelled to Haiti pursuant to Defendants' Title 42 Process, in violation of their statutory and procedural rights to seek withholding of removal and CAT protections. Courts in this district routinely conclude that commonality is satisfied under similar circumstances. For example, in certifying a class of migrant children who would be or were in fact "subjected to the Title 42 Process," a court in this District explained that commonality was met "because the challenged [CDC Orders invoking Title 42] are a uniform policy or practice that affects all class members." *P.J.E.S.*, 502 F. Supp. 3d at 509 (citation modified). Likewise, the court in *Huisha-Huisha* found that "common questions of law and fact" exist because "Plaintiffs are challenging the lawfulness of the Title 42 Process, which is a uniform policy that applies to each Plaintiff and all members of the proposed class." *Huisha-Huisha*, 560 F. Supp. 3d at 165.

Like the plaintiffs in *P.J.E.S.* and *Huisha-Huisha*, Plaintiffs here challenge a policy that was uniformly applied to each Plaintiff and all members of the Class, including James Doe. The common injury that ensued (deprivation of process), resulting from a uniform policy, raises common questions of law and fact—and will engender common answers, based on common proof—for all Class Members.

The Class's claims raise the following common questions:

(1) Did Defendants have a policy of expelling Haitian migrants who were at the CBP Encampment in Del Rio without fully screening them for withholding and CAT protections?

(2) Was Defendants' policy of expelling Haitian migrants without fully screening them for withholding or CAT protections applied to Class Members, resulting in their expulsion to Haiti without that screening?

(3) Was it unlawful for Defendants to expel Class Members without fully screening them for withholding and CAT protections?

These common questions can be answered through "common proof," which will lead to "common answers for each plaintiff." *Brown v. District of Columbia*, 928 F.3d 1070, 1080 (D.C. Cir. 2019); *see Thorpe*, 303 F.R.D. at 146–47 (commonality assesses whether the "resolution of these common contentions will generate common answers for the entire class"). Each of these common answers "will resolve an issue that is central to the validity of each one of the claims." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

*First*, the Court need not engage in any individualized inquiries to determine whether Defendants had a policy of expelling Haitian migrants at Del Rio without fully screening them for withholding and CAT protection. The Court, instead, can look to common proof—namely, Defendants' own reports and memoranda. For instance, the CBP Capio Memo directed CBP officers to expel noncitizens under the Title 42 Process without fully screening them, and even conceded that CBP officers were "not operating pursuant to [their] authorities" under U.S. immigration laws. Ex. 7 at 2. As the D.C. Circuit found in *J.D.*, commonality is satisfied where "the class presents 'common contention[s] . . . capable of classwide resolution," such that it would be "productive[]" and "economical" to consider the class's claims together. 925 F.3d at 1321. There, as here, "the class's core claim" challenged a policy that applied "on uniform grounds applicable to every member of the class." *Id.*

- 17 -

*Second*, the Court can easily resolve on a classwide basis whether this Title 42 Process of avoiding screenings in favor of summary expulsions was applied to Class Members. Defendants' own reports acknowledge that at least 4,435 Haitians were "processed for Title 42 expulsion to Haiti" and that over 6,000 Haitians were expelled by aircraft. Ex. 9 at 7. Plaintiffs will seek, via merits discovery, Defendants' bus and flight manifests in connection with these expulsions, as well as any Forms I-867A and I-867B and documentation of credible and reasonable fear interviews that exist for migrants on those manifests. Flight manifests will identify persons expelled to Haiti during the pertinent period, and bus manifests can be used to identify which of those persons had been in the CBP Encampment and were shipped to interim detention facilities before their expulsion. A comparison of these manifests to any Forms I-867A and I-867B Defendants produce will confirm the identities of Class Members—*i.e.*, those who were expelled without receiving the required screening.

Furthermore, the absence of required screening paperwork for migrants named on the manifests will serve as common proof that the requisite screenings did not take place. *See* Fed. R. Evid. 803(10)(A)(ii) (the absence of "a public record" can establish that "a matter did not occur . . . if a public office regularly kept a record or statement for a matter of that kind"); *United States v. M'Biye*, 655 F.2d 1240, 1241 (D.C. Cir. 1981) (applying Rule 803(10)). Applying Fed. R. Evid. 803(10)(A)(ii), federal appellate courts have allowed admission of evidence regarding the absence of "[r]ecords of noncitizens claiming fear of return" because those records "are 'regularly kept' by immigration authorities," and "some documentation … according to protocol, is supposed to be created." *United States v. Figueroa-Juarez*, No. 22-50085, 2023 WL 8053742, at *1 (9th Cir. Nov. 21, 2023) (quoting Fed. R. Evid. 803(10)(A)(ii)); *see also United States v. Urqhart*, 469 F.3d

745, 747 (8th Cir. 2006) (affirming admission of certificate of nonexistence of immigration record under Fed. R. Evid. 803(10)).

*Third*, it is a common legal question whether Defendants' expulsion of Class Members without fully screening them for withholding and CAT protections was unlawful. The Court's resolution of this common question as to one Class Member will resolve the merits as to all: "if any person in the class has a meritorious claim [that the government's denial of these screenings was unlawful], they all do." *P.J.E.S.*, 502 F. Supp. 3d at 532; *see also Huisha-Huisha*, 560 F. Supp. 3d at 165 (deeming commonality satisfied because "Plaintiffs are challenging the lawfulness of the Title 42 Process, which is a uniform policy that applies to each Plaintiff and all members of the proposed class"); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332 (D.D.C. 2018) (finding that "the allegation that the five ICE Field Officers [sic] are no longer providing the 'individualized determinations' of parole eligibility and procedural protections required by the Parole Directive" satisfied the commonality requirement). Thus, commonality is satisfied here.

### C.    James Doe's Claims are Typical.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This requirement is satisfied if 'the representative's claims are based on the same legal theory as the claims of the other class members" and if the class representative's "injuries arise from the same course of conduct that gives rise to the other class members' claims." *N.S.*, 335 F.R.D. at 354 (quoting *Coleman v. District of Columbia*, 306 F.R.D. 68, 83 (D.D.C. 2015)).

Class representative James Doe was unlawfully expelled from Del Rio to Haiti due to Defendants' implementation of the Title 42 Process, which deprived him of his procedural rights to seek withholding of removal and CAT protections. James Doe Decl. ¶¶ 10–13; Second James

- 19 -

Doe Decl. ¶ 7. As such, his claims are typical of those of the Class, which encompasses other individuals unlawfully expelled from Del Rio to Haiti pursuant to the same standard procedure of the Title 42 Process. *See P.J.E.S.*, 502 F. Supp. 3d at 532 (finding typicality met where class members' claims "stem from a unitary course of conduct—expulsion of unaccompanied non-citizen children from the United States under the Title 42 Process—and are based on the same legal theories"). Where "[a]ll challenge the same policy on the same grounds, and all seek the same remedy—invalidation of the Title 42 Process . . . the typicality requirement is met." *Huisha-Huisha*, 560 F. Supp. 3d at 165.

### D.    James Doe Will Fairly and Adequately Protect the Interests of the Class.

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Generally, this requires that "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class" and "the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997).

"[C]ourts have found that where, as here, the plaintiffs 'seek identical relief for all class members, . . . there are no conflicting interests that might derail certification on this prong [of Rule 23].'" *Huisha-Huisha*, 560 F. Supp. 3d at 166 (quoting *Coleman*, 306 F.R.D. at 84); *see* Am. Compl. ¶ 363 & Prayer (seeking identical relief for all class members). James Doe has submitted a declaration confirming that he has no interests antagonistic to the interests of the Class, and that he will vigorously prosecute the interests of the Class. Second James Doe Decl. ¶ 13. Plaintiffs' "counsel are 'willing and have the ability vigorously to litigate this case and to protect the interests of absent class members.'" *Huisha-Huisha*, 560 F. Supp. 3d at 166 (quoting *O.A. v. Trump*, 404 F.

Supp. 3d 109, 157 (D.D.C. 2019)). *See* Section III *infra.* As such, Rule 23(a)(4)'s adequacy requirement is satisfied.

## II. The Class Also Meets the Requirements of Rule 23(b)(2).

In addition to satisfying the prerequisites of Rule 23(a), plaintiffs must "demonstrate that their proposed class falls into one of the categories of class actions listed in Rule 23(b)." *D.L.*, 860 F.3d at 723. Here, Plaintiffs' Class meets the requirements of Rule 23(b)(2).

Rule 23(b)(2) sets forth two criteria for maintaining a class action. *First*, Defendants must have "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). "Action or inaction is directed to a class" so long as it is "based on grounds which have general application" to the class as a whole. 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:28 (June 2025 Update) (quoting Rules Advisory Committee Notes, 39 F.R.D. 69, 102 (1966)). One court in this district has described the requirement as a "low bar." *L.G.M.L. v. Noem*, 800 F. Supp. 3d 100, 122 (D.D.C. 2025).

That bar is easily cleared here. Defendants acted "on grounds that apply generally to the class" when they subjected every Class Member to the same challenged Title 42 Process—and as a result failed to fully screen them for withholding of removal and CAT protections and instead summarily expelled them to Haiti. Where "the gravamen of the claims . . . is that the government applied the allegedly illegal Title 42 Process to the putative class members," Rule 23(b)(2)'s requirement for generally applicable action is satisfied. *P.J.E.S.*, 502 F. Supp. 3d at 534; *see Huisha-Huisha*, 560 F. Supp. 3d at 166 (finding application of Title 42 to asylum-seekers to be "generally applicable" for purposes of Rule 23(b)(2) certification).

*Second*, "final injunctive relief or corresponding declaratory relief" must be "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In other words, certification under Rule

23(b)(2) is appropriate when "a single injunction" or declaration "provide[s] relief to each member of the class" from the defendant's systemic harms. *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin* (*RAICES*), 174 F.4th 81, 113 (D.C. Cir. 2026) (quoting *D.L.*, 860 F.3d at 726).

Plaintiffs seek declaratory and injunctive relief respecting the Class as a whole—including an order declaring the Title 42 Process unlawful, Am. Compl. (Prayer) at 124–25; *see P.J.E.S.*, 502 F. Supp. 3d at 534 (seeking the same regarding Title 42), and an injunction aimed at restoring Class Members' ability to avail themselves of the protections they were unlawfully denied, Am. Compl. (Prayer) at 124–25. This injunction will include appropriate relief directed at facilitating their return to the United States so that they may pursue those protections. *Id.*[10]

For avoidance of doubt, James Doe, on behalf of the Class, does not "ask[] for this Court to remedy discrete errors in their [specific immigration] determinations or to interfere with [Defendants'] discretionary decisionmaking." *Damus*, 313 F. Supp. 3d at 334; *see Thorpe*, 303 F.R.D. at 152 (certifying a 23(b)(2) class where "plaintiffs have repeatedly assured the Court that they are not seeking individualized relief"). Rather, as in *Huisha-Huisha*, the challenge is categorical. *See Huisha-Huisha*, 560 F. Supp. 3d at 166 (asylum-seekers' challenge to the

---

[10] While the Court need not address the merits question of what relief Class Members are in fact entitled to at this juncture, *see Thorpe*, 303 F.R.D. at 151–52, several courts, including the U.S. Supreme Court, have recognized that it can be appropriate to direct the United States to facilitate the return of unlawfully expelled migrants. *See J.G.G. v. Trump*, No. 25-766, 2026 WL 391937, at *2 (D.D.C. Feb. 12, 2026) (requiring government to facilitate deported class members' return to U.S. by providing commercial flight boarding letter); *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (requiring the government to facilitate the return of Abrego Garcia to "ensure that his case is handled as it would have been had he not been improperly sent to El Salvador"); *Walters v. Reno*, 145 F.3d 1032, 1050–51 (9th Cir. 1998) (ordering government to permit class members' return for immigration hearing following unlawful removal); *see also Grace v. Whitaker*, 344 F. Supp. 3d 96, 145 (D.D.C. 2018) (ordering removed plaintiffs' return to the United States for asylum proceedings because "[a] Court Order solely enjoining these [immigration] policies is meaningless for the removed plaintiffs who are unable to attend the subsequent interviews to which they are entitled").

application of Title 42 did not mean they sought individualized asylum determinations). That Plaintiffs' desired relief—the ability to pursue withholding of removal and CAT protections—may ultimately result in individualized immigration determinations has no bearing on the categorical challenge to the Title 42 Process that unlawfully foreclosed Plaintiffs' ability to even seek these protections in the first instance. *See, e.g.*, *O.A.*, 404 F. Supp. 3d at 157 (criticizing defendants for "conflat[ing] Plaintiffs' challenge to the categorical bar on eligibility for asylum—which applies equally to all members of the putative class—with each putative member of the class's unique interest in seeking asylum, which is not at issue in this case").

As the D.C. Circuit has explained, "Rule 23(b)(2) 'exists so that parties and courts . . . can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief.'" *RAICES*, 174 F.4th at 113 (quoting *D.L.*, 860 F.3d at 726). Accordingly, "courts have regularly certified [Rule 23(b)(2)] classes challenging immigration-related policies." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 61 (D.D.C. 2025) (collecting cases). Plaintiffs' claims arise from the systemic harms imposed by Defendants' application of the Title 42 Process to migrants in the CBP Encampment, and they may be remedied by a single order applicable to all Class Members. *See P.J.E.S.*, 502 F. Supp. 3d at 534; *Huisha-Huisha*, 560 F. Supp. 3d at 166. Certification is thus appropriate under Rule 23(b)(2).

### III.    Plaintiffs' Counsel Should be Appointed Class Counsel.

Upon certifying the Class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(g)(1); *see* Fed. R. Civ. P. 23(c)(1)(B). Pursuant to Rule 23(g), the Court must consider:

(1) "the work counsel has done in identifying or investigating potential claims in the action";

(2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action";

(3) "counsel's knowledge of the applicable law"; and

(4) "the resources that counsel will commit to representing the class."

Fed. R. Civ. P. 23(g)(1)(A). The Court may also take into account "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, James Doe is represented by well-respected public interest organizations with decades of experience litigating immigration-related matters, including immigration-related class actions involving constitutional and APA claims, *see* Declaration of Erik Crew ("Crew Decl.") ¶¶ 5–6; Declaration of Karen Tumlin ("Tumlin Decl.") ¶ 2; Declaration of Stephen Manning ("Manning Decl.") ¶¶ 6–7, as well as a law firm with substantial experience serving as plaintiffs' counsel in class action litigation involving regulatory, statutory, and federal constitutional rights, *see* Declaration of Stanley Young ("Young Decl.") ¶¶ 3–6. Counsel "have spent significant time and effort advancing those claims throughout this case's long history." *Morgan v. District of Columbia*, No. 10-1511, 2025 WL 2255228, at *8 (D.D.C. Aug. 7, 2025); Crew Decl. ¶ 12; Tumlin Decl. ¶ 10; Manning Decl. ¶¶ 16–17; Young Decl. ¶¶ 16–17. Collectively, counsel have the "extensive experience and knowledge of the applicable law" that will allow them to "fairly and adequately represent the class." *Gutierrez v. Noem*, No. 25-1766 2025 WL 3496390, at *9 (D.D.C. Dec. 5, 2025); *see, e.g.*, Crew Decl. ¶¶ 7, 9; Tumlin Decl. ¶¶ 3–9; Manning Decl. ¶¶ 2–12; Young Decl. ¶¶ 7–14. They also have committed and will continue to commit the substantial combined resources of all four organizations to continued representation of the Class. Crew Decl. ¶¶ 10, 12;

- 24 -

Tumlin Decl. ¶ 10; Manning Decl. ¶¶ 15, 17; Young Decl. ¶¶ 15, 17. Accordingly, this Court should appoint Plaintiffs' counsel[11] as class counsel for this litigation.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for class certification and enter an order (1) certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2); (2) certifying a Class defined as set forth at page 1 above; (3) appointing James Doe as class representative; and (4) appointing the undersigned Plaintiffs' counsel as class counsel.

---

[11] For the purposes of this motion, Plaintiffs seek to appoint as class counsel all attorneys who appear on the signature page: Erik Crew of Haitian Bridge Alliance; Karen C. Tumlin, Esther H. Sung, Vanessa Rivas-Bernardy, Laura Flores-Perilla, Hillary Li, Brandon Galli-Graves, and Emily Satifka of Justice Action Center; Stephen Manning, Rachel Landry, Jordan Cunnings, and Rosa Saavedra Vanacore of Innovation Law Lab; and Stanley Young, Alexander L. Schultz, Maura A. Sokol, Aurora L. Jaques, and Megan L. Pritchard of Covington & Burling LLP.

DATED: August 3, 2026

Respectfully submitted,

*/s/ Maura A. Sokol*

**Erik Crew\***
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: +1 949 603-7411

**Stanley Young** (CA00146)
syoung@cov.com
COVINGTON & BURLING, LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: +1 650 632-4704

**Alexander L. Schultz** (DC Bar No. 1618410)
aschultz@cov.com
COVINGTON & BURLING, LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: +1 424 332-4788

**Maura A. Sokol** (DC Bar No. 1672674)
msokol@cov.com
**Aurora L. Jaques** (DC Bar No. 90035472)
(*Pending Admission*)
ajaques@cov.com
**Megan L. Pritchard** (DC Bar No. 90027153)
(*Pending Admission*)
mpritchard@cov.com
COVINGTON & BURLING, LLP
850 Tenth Street, NW
Washington, DC 20001
Telephone: +1 202 662-5528

**Karen C. Tumlin** (CA00129*)*
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (CA00132)
esther.sung@justiceactioncenter.org
**Vanessa Rivas-Bernardy\***
vanessa.rivas-bernardy@justiceactioncenter.org
**Laura Flores-Perilla**\*
laura.flores-perilla@justiceactioncenter.org
**Hillary Li** (GA0052)
hillary.li@justiceactioncenter.org
**Brandon Galli-Graves\***
brandon.galli-graves@justiceactioncenter.org
**Emily Satifka\***
emily.satifka@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944
Facsimile: +1 323 450-7276

**Stephen Manning** (OR0024)
stephen@innovationlawlab.org
**Rachel Landry\***
rachel@innovationlawlab.org
**Jordan Cunnings\***
jordan@innovationlawlab.org
**Rosa Saavedra Vanacore** (MD0253)
rosa@innovationlawlab.org]
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 922-3042
Facsimile: +1 503 882-0281

\*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

- 26 -

- 27 -

## CERTIFICATE OF CONFERRAL

Plaintiffs hereby certify pursuant to LCvR 7(m) that on May 6, 2026, the parties met and conferred about proposed next steps in the case, including Plaintiffs' intention to file this Motion. Defendants indicated they would oppose the relief sought. *See* Joint Status Report, ECF No. 110 at 8, 10 (suggesting that "Plaintiffs should proceed to file their motion for class certification" and proposing a briefing schedule, including opposition, to the same). On July 30, 2026, Plaintiffs further conferred with counsel for Defendants via email and Defendants confirmed they oppose the motion.

DATED: August 3, 2026

Respectfully submitted,

*/s/ Maura A. Sokol*

**Erik Crew***
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: +1 949 603-7411

**Stanley Young** (CA00146)
syoung@cov.com
COVINGTON & BURLING, LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: +1 650 632-4704

**Alexander L. Schultz** (DC Bar No. 1618410)
aschultz@cov.com
COVINGTON & BURLING, LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: +1 424 332-4788

**Maura A. Sokol** (DC Bar No. 1672674)
msokol@cov.com
**Aurora L. Jaques** (DC Bar No. 90035472)
(*Pending Admission*)
ajaques@cov.com
**Megan L. Pritchard** (DC Bar No. 90027153)
(*Pending Admission*)
mpritchard@cov.com
COVINGTON & BURLING, LLP
850 Tenth Street, NW
Washington, DC 20001
Telephone: +1 202 662-5528

**Karen C. Tumlin** (CA00129*)*
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (CA00132)
esther.sung@justiceactioncenter.org
**Vanessa Rivas-Bernardy***
vanessa.rivas-bernardy@justiceactioncenter.org
**Laura Flores-Perilla***
laura.flores-perilla@justiceactioncenter.org
**Hillary Li** (GA0052)
hillary.li@justiceactioncenter.org
**Brandon Galli-Graves***
brandon.galli-graves@justiceactioncenter.org
**Emily Satifka***
emily.satifka@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944
Facsimile: +1 323 450-7276

**Stephen Manning** (OR0024)
stephen@innovationlawlab.org
**Rachel Landry***
rachel@innovationlawlab.org
**Jordan Cunnings***
jordan@innovationlawlab.org
**Rosa Saavedra Vanacore** (MD0253)
rosa@innovationlawlab.org]
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 922-3042
Facsimile: +1 503 882-0281

*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

- 28 -